**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

We Are America/Somos America )
Coalition of Arizona, <u>et al.</u>, )    No. CIV 06-2816 PHX RCB
                                 )
            Plaintiffs,          )              O R D E R
                                 )
        vs.                      )
                                 )
Maricopa County Board of         )
Supervisors, <u>et al.</u>,      )
                                 )
            Defendants.          )
_____ )

On November 21, 2006, Plaintiffs filed this action against Maricopa County Attorney Andrew Thomas, Maricopa County Sheriff Joseph Arpaio, the Maricopa County Board of Supervisors and its individual members, challenging the County Attorney and Sheriff's policy of prosecuting individual undocumented immigrants for conspiring to smuggle themselves in violation of Ariz. Rev. Stat. § 13-2319.  Compl. (doc. # 1).  Plaintiffs include five individual taxpayers who challenge Defendants' policy as an illegal diversion of taxpayer funds; six Mexican nationals who have been arrested, detained, and charged for conspiracy to violate Ariz. Rev. Stat.

1 § 13-2319 pursuant to Defendants' policy; and four different

2 community-based organizations.  Id. ¶¶ 5-15.

3     Currently before the Court are Plaintiffs' motion for class

4 certification (doc. # 20) and Defendants' motion to dismiss (doc.

5 # 32).  The motions have been fully briefed, and the Court finds

6 the matter suitable for decision without oral argument.  Having

7 carefully considered the arguments raised, the Court now rules.

8 **I.   BACKGROUND**

9     In review of a motion to dismiss, all allegations of material

10 fact in the complaint are accepted as true, with all reasonable

11 inferences drawn in favor of the nonmoving party.  Keams v. Tempe

12 Technical Inst., Inc., 39 F.3d 222, 224 (9th Cir. 1994); Everest &

13 Jennings, Inc. v. Am. Motorists Ins. Co., 23 F.3d 226, 228 (9th

14 Cir. 1994).  The relevant facts for purposes of Defendants' motion

15 to dismiss are as follows:

16     Under Arizona law enacted in 2005 it is a felony to engage in

17 human trafficking that involves the smuggling of aliens.  The

18 relevant statute provides in pertinent part as follows:

19           A. It is unlawful for a person to intentionally
          engage in the smuggling of human beings for
20           profit or commercial purpose.

21           . . .

22           . . .

23           D. For purposes of this section:

24           . . .

25           2. "Smuggling of human beings" means the
          transportation or procurement of transportation
26           by a person or an entity that knows or has
          reason to know that the person or persons
27           transported or to be transported are not United
          States citizens, permanent resident aliens or
28           persons otherwise lawfully in this state.

1  Ariz. Rev. Stat. § 13-2319.[1]  Defendant Thomas has issued a

2  statement declaring that, in his view, section 13-2319 applies not

3  only to the conduct of actual smugglers and human traffickers

4  accepting payment for transport, but also to individual

5  undocumented immigrants agreeing to pay for transport or on whose

6  behalf others have agreed to pay for transport.  Compl. (doc. # 1)

7  ¶ 40.  Defendant Thomas has declared a policy that, as the Maricopa

8  County Attorney, he will prosecute individual undocumented

9  immigrants for conspiring to violate section 13-2319 if they have

10 been transported for gain by a third party.  Id.  This policy is

11 the subject of Plaintiffs' action for declaratory and injunctive

12 relief.  Id.

13     In Plaintiffs' view, drawn from the legislative history and

14 subsequent public remarks by lawmakers, section 13-2319 was

15 intended only to criminalize the exploitative conduct of actual

16 smugglers, often referred to as "coyotes," and was not intended to

17 apply to individual undocumented immigrants paying for transport.

18 See id. ¶¶ 42-43.  Plaintiffs seek to enjoin the continued

19 implementation of Defendants' policy, and assert four different

20 claims for relief: (1) Defendants' policy is preempted by the

21 Immigration and Naturalization Act, 8 U.S.C. §§ 1101, et seq. (the

22 "Act"), (2) Defendants' policy violates their Fourth Amendment

23 rights to be free from unreasonable searches and seizures, (3)

24 Defendants' policy violates their Fourteenth Amendment right to due

25 process of law, and (4) Defendants' policy conflicts with Ariz.

26

27 _____

28     [1]  The federal criminal offense of alien smuggling is defined in more detailed terms at 8 U.S.C. § 1824.

1  Rev. Stat. § 13-2319.  Compl. (doc. # 1) ¶¶ 56-64.

2  **II.   STANDARD OF REVIEW**

3          Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a

4  party to seek dismissal of a claim if the claimant failed to state

5  a claim upon which relief can be granted.  Fed. R. Civ. P.

6  12(b)(6).  Under Rule 12(b)(6), "dismissal for failure to state a

7  claim is improper unless 'it appears beyond doubt that the

8  plaintiff can prove no set of facts in support of his claim which

9  would entitle him to relief.'"  Schowengerdt v. Gen. Dynamics

10 Corp., 823 F.2d 1328, 1332 (9th Cir. 1987) (quoting Conley v.

11 Gibson, 355 U.S. 41, 45-46 (1957)).  Factual argument is

12 inappropriate in a Rule 12(b)(6) motion, which tests only the legal

13 sufficiency of the complaint.  Thus, in undertaking its analysis,

14 the Court must limit its "review to the contents of the complaint,

15 accepting the material factual allegations as true and construing

16 them in the light most favorable to the [non-movant]."  Id.

17 **III. DISCUSSION**

18         Defendants argue that this case should be dismissed on the

19 basis that Plaintiffs lack Article III standing, and, in the

20 alternative, urge the Court to refrain from hearing this matter

21 under the abstention doctrine set forth in Younger v. Harris, 401

22 U.S. 37 (1971).  Although the Younger abstention inquiry is

23 prudential in nature, it is appropriately considered as a basis for

24 decision prior to any determination regarding Article III standing.

25 Ruhrgas Ag v. Marathon Oil Co., 526 U.S. 574, 585 (1999).

26         Born out of principles of federalism and comity, the Younger

27 abstention doctrine is a jurisdictional issue requiring federal

28 courts to abstain from exercising jurisdiction over certain actions

1   when proceedings are pending in state court.  See Gartrell Constr.

2   Inc. v. Aubry, 940 F.2d 437, 441 (9th Cir. 1991); Steel Co. v.

3   Citizens for a Better Env't, 523 U.S. 83, 100 n.3 (1998).  Younger

4   abstention is appropriate when "(1) there are ongoing state

5   judicial proceedings; (2) the proceedings implicate important state

6   interests; and (3) the state proceedings provide the plaintiff with

7   an adequate opportunity to raise federal claims."  Meredith v.

8   Oregon, 321 F.3d 807, 816-17 (9th Cir. 2003) (citing Middlesex

9   County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432

10  (1982)); accord Gartrell Constr. Inc., 940 F.2d at 441.

11       Plaintiffs argue that the Younger abstention doctrine is not

12  appropriate in this case, because (1) they do not seek to enjoin

13  preexisting state prosecutions, (2) the proceedings brought

14  pursuant to Defendants' policy do not further vital state

15  interests, and (3) Plaintiffs do not have an adequate opportunity

16  to raise their federal defenses in the state proceedings.  Resp.

17  (doc. # 38) at 9-15.  Plaintiffs also claim that Younger abstention

18  should not apply, because the prosecutions brought pursuant to

19  Defendants' policy are undertaken in bad faith.  Id. at 15.  The

20  Court does not find any indication that the state's prosecutions

21  have been brought in bad faith or for purposes of harassment.

22  Accordingly, the Court will focus the balance of its inquiry on the

23  three elements required for Younger abstention.

24       **A. Ongoing Judicial Proceedings**

25       The critical question for purposes of Younger abstention is

26  "whether the state proceedings were underway before initiation of

27  the federal proceedings."  Kitchens v. Bowen, 825 F.2d 1337, 1341

28  (9th Cir. 1987) (internal quotation and citation omitted).

1   Although Plaintiffs now claim that the Court could fashion its
2   relief in such a way that would not require enjoining any currently
3   pending criminal cases, Defendants rightly point out that
4   Plaintiffs made no such distinction in their complaint. <u>See</u> Resp.
5   (doc. # 38) at 10-11; Reply (doc. # 42) at 6-8; <u>see also</u> Compl.
6   (doc. # 1) ¶ 55 ("If the relief prayed for is not granted,
7   plaintiffs . . . will continue to be . . . prosecuted pursuant to
8   an unconstitutional and unlawful policy."). Plaintiffs' assertion
9   that most of the putative class members were not subject to ongoing
10  state proceedings at the start of this litigation is similarly
11  unavailing. <u>See</u> Resp. (doc. # 38) at 10. It is evident from the
12  complaint that at least six of the individual plaintiffs had been
13  charged with violation of Ariz. Rev. Stat. § 13-2319 prior to the
14  initiation of this action. <u>See</u> Compl. (doc. # 1) ¶¶ 9-10.
15  Moreover, the prospective class that Plaintiffs seek to have
16  certified includes "[a]ll individuals stopped, detained, arrested,
17  incarcerated, <u>prosecuted</u>, or penalized for conspiring to transport
18  themselves, and themselves only, in violation of Ariz. Rev. Stat.
19  § 13-2319." <u>Id.</u> ¶ 25 (emphasis added). As currently pled, the
20  relief sought by Plaintiffs will by necessity interfere with
21  prosecutions already underway at the time this action was filed.
22      **B. Important State Interest Implicated**
23      There can be little question that a state has a vital interest
24  in the enforcement of its criminal laws. <u>See</u> <u>Pennzoil Co. v.</u>
25  <u>Texaco, Inc.</u>, 481 U.S. 1, 13 (1987). Nevertheless, Plaintiffs
26  maintain that there are no important state interests served by
27  Defendants' manner of interpreting and enforcing section 13-2319,
28  arguing that the policy of prosecuting individual migrants as

conspirators under the statute is both contrary to the legislative
intent of its sponsors and preempted by federal law in a manner
that is readily apparent.

### 1. Ultra Vires Interpretation of State Law

Plaintiffs maintain that Defendants' policy of prosecuting
migrants as conspirators under section 13-2319 constitutes an ultra
vires interpretation and enforcement of the state's alien smuggling
law.  See Resp. (doc. # 38) at 11-13.  In support of this argument,
Plaintiffs cite to legislative history suggesting that the bill's
sponsor intended for the law to provide an avenue for state
prosecutions of actual smugglers as distinguished from the persons
whom they transport.  Id. at 11-12.  Plaintiffs believe that their
view is also vindicated by the fact that Defendants are apparently
the only state law enforcement officers prosecuting migrants for
conspiracy to smuggle themselves in violation of Ariz. Rev. Stat. §
13-2319.

While these arguments would be appropriately received in
adjudicating the merits of some of Plaintiffs' claims, they do not
demonstrate such an abuse of prosecutorial discretion that would
impel the Court to conclude at this juncture that the state lacks
an important interest in Defendants' enforcement of its alien
smuggling law.  As Defendants point out, the actions of other state
law enforcement officials may be attributable to any number of
factors such as the availability of resources, and do not
exclusively lend themselves to the inferences Plaintiffs would draw
regarding the legality of Defendants' policies.  See Reply (doc. #
42) at 9 n.3.  Moreover, as the Ninth Circuit has observed,
arguments such as those asserted by Plaintiffs could easily be

1  raised "in any federal litigation in which a plaintiff seeks to

2  enjoin allegedly unconstitutional state proceedings, and, if

3  accepted, would render Younger a nullity."  See Worldwide Church of

4  God, Inc. v. California, 623 F.2d 613, 616 (9th Cir. 1980).

5  Accordingly, the Court approaches Plaintiffs' claim regarding

6  Defendants' allegedly ultra vires interpretation and enforcement of

7  Ariz. Rev. Stat. § 13-2319 with the same measured skepticism, and

8  finds it to be an insufficient basis to decline abstention.

9      **2. Federal Preemption that is Readily Apparent**

10      Plaintiffs also argue that Defendants' policy cannot serve an

11  important state interest, because it "intrude[s] into an area

12  reserved to the federal government by the United States

13  Constitution."  Id. at 13.  The Ninth Circuit has emphasized that

14  no significant state interest is served, and therefore Younger

15  abstention is unnecessary, where the state law at issue is

16  preempted by federal law in a manner that is "readily apparent."

17  Woodfeathers, Inc. v. Washington County, 180 F.3d 1017, 1021 (9th

18  Cir. 1999); Gartrell Constr. Inc., 940 F.2d at 441.  However,

19  because questions of federal preemption frequently abound in cases

20  where Younger abstention is sought, it is important for a court to

21  refuse to abstain only when the preemptive force of the federal law

22  at issue is readily discernable from the pleadings.  See Fresh

23  Int'l Corp. v. Agric. Labor Relations Bd., 805 F.2d 1353, 1361 (9th

24  Cir. 1986) (citation omitted).

25      Defendants believe that Plaintiffs' "charge of preemption is

26  attenuated at best," and are quick to point out that neither the

27  United States Department of Justice nor any federal agency has

28  sought intervention.  Reply (doc. # 42) at 9.  Much like

1   Plaintiffs' effort to portray Defendants' policies as being
2   unlawful by comparison to the conduct of other state law
3   enforcement officials, the Court does not see any significant
4   inferences that may be drawn from the apparent inaction of the
5   federal government to intervene in this case.  The decision of any
6   federal agency not to intervene in this case may be attributable to
7   a lack of resources-- just as Defendants have said in response to
8   Plaintiffs' argument regarding the conduct of other state law
9   enforcement officials-- or may simply reflect other political
10  motivations that are not relevant here.  But it does not bear upon
11  the question of federal preemption that the Court must address in
12  deciding whether it may decline to exercise jurisdiction under the
13  Younger abstention doctrine.

14      The supremacy of federal power in the field of immigration is
15  made clear by the Constitution and has been repeatedly recognized
16  by the Supreme Court.  See U.S. Const., art. I, § 8, cl. 4 and art.
17  II, cl. 6; De Canas v. Bica, 424 U.S. 351, 354 (1976); Hines v.
18  Davidowitz, 312 U.S. 52, 62 (1941).  However, it is equally well
19  settled that, "standing alone, the fact that aliens are the subject
20  of a state statute does not render it a regulation of immigration"
21  that is "per se preempted by th[e] [federal] constitutional power,
22  whether latent or exercised."  De Canas, 424 U.S. at 355.

23      Pursuant to the Supreme Court's decision in De Canas, federal
24  preemption of immigration-related state statutes and policies may
25  be shown in three ways.  First, federal law preempts any state
26  statute or policy that constitutes a regulation of immigration,
27  "which is essentially a determination of who should or should not
28  be admitted into the country, and the conditions under which a

1   legal entrant may remain . . . ." <u>Id.</u>  Second, even if the state

2   law or policy does not regulate immigration, it may be preempted if

3   Congress intended to "occupy the field" the state has attempted to

4   regulate, <u>i.e.</u>, if it was "the clear and manifest purpose of

5   Congress" to effect a "complete ouster of state power" that would

6   "preclude even harmonious state regulation touching on aliens in

7   general." <u>Id.</u> at 357.  Third, a state law or policy is preempted

8   if it "stands as an obstacle to the accomplishment and execution of

9   the full purposes and objectives of Congress." <u>Id.</u> at 363.

10       **I. First <u>De Canas</u> Test**

11       Plaintiffs maintain that Defendants, through their policy of

12  charging and prosecuting individual migrants for conspiring to

13  smuggle themselves in violation of section 13-2319, "ha[ve]

14  intruded into an area reserved to the federal government by the

15  United States Constitution."  Resp. (doc. # 38) at 13.  As an

16  initial matter, it should be repeated that the Constitution does

17  not of its own force require the preemption of all state laws

18  dealing with aliens.  <u>See De Canas</u>, 424 U.S. at 355.  The thrust of

19  Plaintiffs' argument appears to be that Defendants' manner of

20  enforcing the state's alien smuggling law constitutes an

21  impermissible regulation of immigration.  To support this position,

22  Plaintiffs cite to statements allegedly made by Defendants to the

23  media, expressing "frustrat[ion] . . . [with the] problem of

24  illegal immigration that the government [of Mexico] is directly

25  fomenting," and presenting the view that "[t]here are many illegals

26  trying to make it into [Maricopa] [C]ounty."  Resp. (doc. # 38) at

27  9; Compl. (doc. # 1) ¶ 48.  Regardless of Defendants' subjective

28  views, their opinions alone do not transform their policies and

1   official conduct into an impermissible regulatory scheme for

2   "determin[ing] . . . who should or should not be admitted into the

3   country."  See De Canas, 424 U.S. at 355.  Therefore, under the

4   first De Canas test, the Court cannot conclude that the preemption

5   of Defendants' policies is so readily apparent as to render

6   abstention under Younger improper.

7       **ii. Second De Canas Test**

8       Under the second De Canas test, Defendants' policies may still

9   be preempted if Congress intended to occupy the field that the

10  state has attempted to regulate.  See De Canas, 424 U.S. at 357.

11  Congressional intent to preclude state action may be inferred

12  "where the system of federal regulation is so pervasive that no

13  opportunity for state activity remains."  Gonzales v. City of

14  Peoria, 722 F.2d 468, 474 (9th Cir. 1983), overruled on other

15  grounds by Hodgers-Durgin v. De La Vina, 199 F.3d 1037 (9th Cir.

16  1999) (en banc); De Canas, 424 U.S. at 357.

17      In the present case, preemption under the second De Canas test

18  should be considered in the context of the statute Defendants'

19  policy is intended to enforce.  It is evident from the plain

20  language of section 13-2319 that the ambit of the state regulation

21  in question relates solely to the smuggling of aliens.[2]  Therefore,

22  the decisive inquiry is whether Congress intended to occupy the

23  _____

24      [2]  Under the statute, it is a felony "for a person to
    intentionally engage in the smuggling of human beings for profit or
25  commercial purpose."  Ariz. Rev. Stat. § 13-2319(A)-(C).  For
    purposes of the statute, the "[s]muggling of human beings" is defined
26  as "the transportation or procurement of transportation by a person
    or an entity that knows or has reason to know that the person or
27  persons transported or to be transported are not United States
    citizens, permanent resident aliens or persons otherwise lawfully in
28  this state."  Ariz. Rev. Stat. § 13-2319(D)(2).

1   field of regulating criminal activities involving the smuggling of

2   aliens.  This question should be distinguished from the issue

3   decided in <u>Gonzales v. City of Peoria</u>, 722 F.2d 468 (9th Cir.

4   1983).  In that case the Ninth Circuit held that state law

5   enforcement officers in Peoria, Arizona could enforce federal

6   criminal immigration statutes, provided they had the authority to

7   make such arrests under relevant state law.  <u>Gonzales</u>, 722 F.2d at

8   474-75.  The court concluded that Congress did not intend to occupy

9   the field of criminal immigration enforcement, relying on the

10  general rule that local police are not precluded from enforcing

11  federal crimes.  <u>Id.</u> at 474.  Moreover, it was clear from the

12  language and legislative history of the relevant federal statutes

13  that Congress did not intend to preclude state law enforcement

14  officers from enforcing federal criminal immigration statutes.  <u>Id.</u>

15  at 475.  By contrast, in the present case, the state is not

16  attempting to enforce any federal criminal immigration statutes--

17  instead, it has enacted its own criminal immigration statute, which

18  Defendants are enforcing pursuant to the policy challenged by

19  Plaintiffs.

20      In briefing the issue of federal preemption, the parties have

21  not addressed the important question raised by the second <u>De Canas</u>

22  test.  Accordingly, the Court will retain Defendants' motion to

23  dismiss under advisement pending the parties' decision to submit

24  supplemental briefing on the issue as permitted by this Order.

25      **iii. Third <u>De Canas</u> Test**

26      Plaintiffs argue that Defendants' policy "is also preempted

27  because it actually conflicts with federal law and policy."  Resp.

28  (doc. # 38) at 13 n.21.  Under the third De Canas test, preemption

1    is readily apparent if a state law "stands as an obstacle to the

2    accomplishment and execution of the full purposes and objectives of

3    Congress."  Id. at 363.

4         As Plaintiffs have noted, federal immigration law permits

5    multiple categories of migrants to remain in the United States

6    while applying for lawful status although they may have entered

7    without inspection or documentation.  For example, aliens seeking

8    refugee or asylee status, see 8 U.S.C. §§ 1101(a)(42), 1157, 1158,

9    may not be removed from the country if the United States Attorney

10   General determines that such removal would threaten the life or

11   freedom of that alien.  See 8 U.S.C. § 1231(b)(3).  Similarly, the

12   Attorney General may adjust certain battered spouses and children

13   to lawful status and cancel their removal.  See 8 U.S.C. §§ 1154,

14   1229b(b)(2).

15        In Plaintiffs' view, Defendants' policy of charging and

16   prosecuting migrants for conspiracy to smuggle themselves in

17   violation of Ariz. Rev. Stat. § 13-2319, without regard to the

18   possibility of such status determinations, impedes the Attorney

19   General's accomplishment and execution of the objectives set out by

20   Congress in the Immigration and Naturalization Act.  To better

21   evaluate the merits of this argument it is necessary to elaborate

22   on the process by which an alien may become ineligible for those

23   favorable status determinations.  Generally, the commission of an

24   "aggravated felony" renders an alien ineligible for the withholding

25   or cancellation of removal pursuant to a status determination by

26   the Attorney General.  See, e.g., 8 U.S.C. §§ 1229(b)(2)(A)(iii)-

27   (iv) and (C), 1231(b)(3)(B)(ii).  For purposes of the Immigration

28   and Naturalization act, Congress has defined specific categories of

1  offenses that qualify as "aggravated felonies," including

2         [the] offense described in [8 USCS §
3         1324(a)(1)(A) or (2)] (relating to alien
       smuggling), <u>except in the case of a first
       offense for which the alien has affirmatively</u>
4      <u>shown that the alien committed the offense for
       the purpose of assisting, abetting, or aiding</u>
5      <u>only the alien's spouse, child, or parent (and
       no other individual) to violate a provision of</u>
6      <u>this Act.</u>

7  8 U.S.C. § 1101(a)(43)(N) (emphasis added).

8         Although Ariz. Rev. Stat. § 13-2319, particularly as enforced
9  pursuant to Defendants' policy, provides no such exception to the
10 imposition of state felony liability, the Court is not convinced
11 that the state law stands as an obstacle to the accomplishment of
12 the full purposes of the federal immigration laws.  For the special
13 purpose of deciding whether an applicant has committed a
14 disqualifying "aggravated felony," there is no reason that the
15 Attorney General's status determination cannot take into account
16 the same exception set forth at 8 U.S.C. § 1101(a)(43)(N), which is
17 merely a definitional statute, with respect to any alien smuggling
18 convictions under Ariz. Rev. Stat. § 13-2319.  Therefore, the Court
19 cannot find that Defendants' policy is preempted in a manner that
20 is readily apparent on account of these perceived conflicts with
21 federal law and policy.

22        Although Plaintiffs have not succeeded in establishing federal
23 preemption under either the first or third <u>De Canas</u> tests, the
24 Court will retain the motion under advisement, as indicated above,
25 pending the parties' decision to submit supplemental briefing on
26 the second <u>De Canas</u> test for federal preemption in the area of
27 immigration.

28 . . .

1   **C. Opportunity to Raise Federal Defenses in State Proceedings**

2          Plaintiffs argue that <u>Younger</u> abstention is also

3   inappropriate, because they believe that state proceedings will not

4   provide an adequate opportunity to raise their federal defenses.

5   Resp. (doc. # 38) at 14-15.

6          Plaintiffs fail to explain why the state courts would be

7   incompetent to adjudicate the merits of their federal defenses.

8   They suggest that in the context of a putative class action such as

9   this the Court should be more willing to find the state proceedings

10  inadequate to eliminate the threat to the entire class.  <u>See id.</u> at

11  14 (citing <u>Riley v. Nev. Super. Ct.</u>, 763 F. Supp. 446, 451 (D. Nev.

12  1991)).  However, the holding of the case on which Plaintiffs rely

13  was not predicated on the class action context.  Rather, it was

14  based on unique circumstances, not applicable here, in which the

15  plaintiff class was challenging the rules of the Nevada courts.

16  <u>Riley</u>, 763 F. Supp. at 451.  In the instant case, Plaintiffs do not

17  challenge any rules of the Arizona courts that would render them an

18  inadequate forum for the resolution of their federal defenses.

19         Plaintiffs also complain that the possibility of inconsistent

20  lower court rulings somehow denies them an adequate safeguard for

21  their federal constitutional rights.  Resp. (doc. # 38) at 14.

22  Plaintiffs have simply observed one reason that many judicial

23  systems have developed higher courts of review.  It does not,

24  however, render the state courts inadequate or incompetent to hear

25  their federal defenses.

26         Finally, Plaintiffs maintain that, as a practical matter, many

27  members of the putative class may enter guilty pleas to end their

28  incarceration as they await trial.  <u>Id.</u> at 15.  The fact that

1  Plaintiffs may choose not to avail themselves of their federal

2  defenses in the state courts does not render them an inadequate

3  forum.  In sum, Plaintiffs have failed to demonstrate any reason

4  why they could not adequately present their federal claims in the

5  state proceedings.

6  **IV.    CONCLUSION**

7          Because it appears that <u>Younger</u> abstention may be required,

8  pending the parties' decision to submit supplemental briefing on

9  federal preemption under the second <u>De Canas</u> test, the Court need

10  not address questions of Article III standing at this time.[3]  For

11  the same reason, it may prove unnecessary to resolve the issues of

12  class of certification that have been raised by Plaintiffs.

13  Therefore,

14          IT IS ORDERED that Defendants' motion to dismiss (doc. # 32)

15  is GRANTED in part and DENIED in part.

16          IT IS FURTHER ORDERED permitting Plaintiffs, if they choose,

17  to file within 15 (fifteen) days from the date of entry of this

18

19  _____

20          [3]  The Court notes that the case could not be dismissed in its
entirety solely on the basis of standing.  For instance, the
municipal taxpayer plaintiffs have sufficiently pled the injury of
21  improper expenditures of municipal funds.  <u>See</u> <u>Cammack v. Waihee</u>, 932
F.2d 765, 770 (9th Cir. 1991) (concluding "that municipal taxpayer
22  standing simply requires the 'injury' of an allegedly improper
expenditure of municipal funds.").  Plaintiffs have alleged that they
23  object to Defendant Maricopa County's use of tax funds for the
arrest, detainment, prosecution, and imprisonment of migrants for
24  conspiracy to smuggle themselves in violation of Ariz. Rev. Stat. §
13-2319.  Compl. (doc. # 1) ¶¶ 11, 13-15.  While Defendants may be
25  correct that arrests, detainments, and prosecutions will not increase
the fixed salary expenditures for the employees carrying out those
26  duties, the same cannot be said for the additional incremental costs
of housing and feeding individuals in the county jails.  Therefore,
27  Plaintiffs have pled sufficient facts to demonstrate their standing
as municipal taxpayers.

28

- 16 -

1   Order a brief addressing the applicability of the second <u>De Canas</u>

2   test, discussed at Part III.B.2.ii, <u>supra</u>, to the issue of federal

3   preemption.  If Plaintiffs file a supplemental brief on the second

4   <u>De Canas</u> test, Defendants may file a brief addressing the same

5   issue within 10 (ten) days from the date of filing of Plaintiffs'

6   supplemental brief.  Further briefing is not permitted unless

7   hereafter allowed by the court.

8       IT IS FURTHER ORDERED that Plaintiffs' motion for class

9   certification (doc. # 20) is DENIED without prejudice.

10      DATED this 20th day of September, 2007.

13   _____

14      Robert C. Broomfield
        Senior United States District Judge

16   Copies to counsel of record

- 17 -