WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

We Are America/Somos America, )
Coalition of Arizona, *et al.* )
                              )
            Plaintiffs,       )      No. CIV-06-2816-PHX-RCB
                              )
        vs.                   )         O R D E R
                              )
Maricopa County Board of      )
Supervisors, *et al.*         )
                              )
            Defendants.       )
_____)

     The court assumes familiarity with the prior proceedings in
this action, which is challenging defendants' policy of prosecuting
individual undocumented immigrants for conspiring to smuggle
themselves in violation of Ariz. Rev. Stat. § 13-2319.[1]  In <u>We Are
America/Somos America Coalition of Arizona v. Maricopa County Board
of Supervisors</u>, 2007 WL 2775134 (D.Ariz. Sept. 21, 2007), the court
left open the possibility that it would decline to exercise its
jurisdiction based upon <u>Younger</u> abstention.  At that time, as the

_____

[1]     As the plaintiffs do, hereafter the court will refer to that policy as
the Maricopa Migrant Conspiracy Policy ("MMCP") or simply "the policy."

1  parties are well aware, the court's primary concern was the
2  requirement under Younger that the state proceedings implicate
3  important state interests.  In We Are America the court could not
4  definitively resolve that issue because the parties did not
5  consider the possibility of field preemption.  Therefore, the court
6  allowed supplemental briefing on that issue.

7      After the filing of those briefs, defendants advised the court
8  of State v. Barragan-Sierra, 2008 WL 2764611 (Ct. App. July 17,
9  2008).  In part because defendants deemed that decision "apropos"
10  to the remaining field preemption issue, Not. (doc. 50) at 2, the
11  court allowed plaintiffs to file a further supplemental brief
12  limited to the "impact, if any," of Barragan-Sierra upon that
13  issue.  Doc. 51 at 4.

14      In the meantime, plaintiffs filed an amended complaint ("FAC")
15  (doc. 45), which, as will be seen, necessitates revisiting the
16  issue of whether this action will interfere with ongoing state
17  judicial proceedings – another requirement for Younger abstention.
18  See Chandler v. State Bar of California, 2008 WL 901865, at *3
19  (N.D.Cal. March 31, 2008) (quoting Canatella v. California, 304
20  F.3d 843, 850 (9th Cir. 2002)) ("The Younger inquiry 'is triggered
21  only when the threshold for Younger abstention is present -- that
22  is, when the relief sought in federal court would in some manner
23  directly interfere with ongoing state proceedings.'") Additionally,
24  despite the fact that the parties did not address it, the court
25  must also consider Younger's potential applicability to the
26  taxpayer and community organization plaintiffs who are not parties
27  to any state proceedings.
28  . . .

***Background***

Focusing on the Mexican national plaintiffs who had been arrested, charged and detained for conspiracy to violate A.R.S. § 13-2319, and the putative class similarly defined, in We Are America this court expressly found that "[a]s *currently pled*, the relief sought by Plaintiffs will necessarily interfere with prosecutions already underway at the time this action was filed." We Are America, 2007 WL 2775134, at *3 (emphasis added).  In so holding, the court pointed out that "[i]t [wa]s evident from the complaint that at least six of the individual plaintiffs had been charged with violation of Ariz. Rev. Stat. § 13-2319 prior to the initiation of this action."  Id. (citing Compl. (Doc. #1) ¶¶ 9-10).  The court also stressed that "the prospective class that Plaintiffs seek to have certified includes '[a]ll individuals stopped, detained, arrested, incarcerated, prosecuted, or penalized for conspiring to transport themselves, and themselves only, in violation of Ariz. Rev. Stat. § 13-2319.'"  Id. (quoting Compl. (doc. #1) ¶ 25) (emphasis added by court)).  The court gave no credence to plaintiffs' argument that it "could fashion . . . relief in such a way that would not require enjoining any currently pending criminal cases," because "[p]laintiffs made no such distinction in their complaint."  Id. (citations omitted).  To reinforce that point, quoting directly from the complaint, the court noted the allegation that "'[i]f the relief prayed for is not granted, plaintiffs . . . will continue to be . . . prosecuted pursuant to an unconstitutional and unlawful policy.'"  Id. (quoting Compl. (doc. #1) ¶ 55).

Shortly after the issuance of We Are America, plaintiffs filed

their FAC.  The purpose of that complaint, in plaintiffs' words, is to "make clear that they seek no relief that would interfere with state proceedings filed before this action."  Pl. Supp. (doc. 52) at 5 n.5 (citation omitted).  To that end, in pleading "irreparable injury" in their FAC plaintiffs added the following language: "Plaintiffs do not, . . . , seek to enjoin or interfere with state proceedings that were underway before initiation of this case or otherwise would require abstention under Younger[.]" FAC (doc. 45) at 25, ¶ 51.  Plaintiffs similarly amended their prayer for relief. In particular, they now claim to be seeking declaratory relief "[o]nly to the extent [such] relief does not interfere with state proceedings that were underway before initiation of this case or otherwise require abstention under Younger[.]" Id. at 28, ¶ 3. Further, in seeking injunctive relief "restraining defendants . . . from *further* implementing the [policy]," again, plaintiffs explicitly allege that they are seeking such relief, "but *only* to the extent [it] does not interfere with state proceedings that were underway before initiation of this case or otherwise require abstention under Younger[.]" Id. at 29, ¶ 4 (emphasis added).

     In their supplemental memorandum directed to field preemption, almost as an afterthought, plaintiffs took the position that because their FAC does not seek "relief that would interfere with state proceedings filed before this action[,]" the "threshold condition for *Younger* abstention no longer exists, and this action should go forward regardless of whether preemption is readily apparent[.]" Pl. Supp. (doc. 52) at 5, n. 5.  In other words, plaintiffs reason that given the FAC, the interference aspect of Younger abstention is no longer present here.  Accordingly, there

1 is no need for the court to even reach the issue of field

2 preemption.  Given this recently espoused position by plaintiffs,

3 the court ordered defendants to file a response "limited to the

4 issues of (1) whether there is an ongoing state-initiated

5 proceeding; and (2) whether this federal court action would enjoin

6 the [state-initiated] proceeding or have the practical effect of

7 doing so, i.e., would interfere with the proceeding in a way that

8 <u>Younger</u> disapproves[,] so as to mandate abstention under <u>Younger</u>."

9 Doc. 53 at 2:10-14 (internal quotation marks and citation omitted).

10     On November 20, 2008, defendants timely filed their response.

11 As to the first inquiry, defendants simply responded: "Yes."  Def.

12 Supp. (doc. 54) at 2:7.  Defendants also responded affirmatively to

13 the second inquiry.  Offering no details, defendants contend that

14 allowing this federal action to proceed "would at worst enjoin, and

15 at best interfere with, on-going state initiated proceedings in a

16 way that <u>Younger</u> disapproves."  <u>Id.</u> at 2.  Defendants further

17 baldly assert that "the relief sought . . . will necessarily

18 interfere with the continuous stream of on-going state law

19 enforcement and state proceedings for the putative class members."

20 <u>Id.</u> at 2(citation omitted).  Moreover, plaintiffs' request, as

21 defendants put it, that the court "creatively fashion[]" relief in

22 such a way that "'otherwise [would not] require abstention under

23 <u>Younger</u>[,]'" is "simply not tenable[,]" from defendants'

24 standpoint.  <u>Id.</u> (quoting FAC at 28, ¶ 3).  Finally, defendants

25 accurately note that there are no procedural barriers in the

26 pending state court proceedings to raising any constitutional

27 challenges the "putative class members" may have to defendants'

28 policy.  <u>Id.</u>  Hence, defendants adhere to the view that <u>Younger</u>

abstention is proper in this case.

***Discussion***

## I. *Younger Abstention*

The Ninth Circuit has recognized the mandatory nature of Younger abstention such that "[d]istrict courts applying Younger must exercise jurisdiction except when specific legal standards are met, and may not exercise jurisdiction when those standards are met; there is *no discretion* vested in the district courts to do otherwise." Canatella v. California, 404 F.3d 1106, 1113 (9th Cir. 2005) (internal quotation marks and citation omitted) (emphasis added). As to the latter situation, the Ninth Circuit has repeatedly held that a "court *must* abstain under Younger if four requirements are met: (1) a state initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issue in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that Younger disapproves." San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose, 546 F.3d 1087, 1092 (9th Cir. 2008) (citations omitted) (emphasis added). The court will address these facts in light of the parties supplemental briefs and the filing of the FAC.

### A. *Ongoing State Initiated Proceeding*

As this court stated in We Are America, "[t]he critical question for purposes of Younger abstention is 'whether the state proceedings were underway before initiation of the federal proceedings.'" We Are America, 2007 WL 2775134, at *3 (quoting

1   <u>Kitchens v. Bowen</u>, 825 F.2d 1337, 1341 (9th Cir. 1987)).  "[A]

2   'charge' is generally a formal allegation of wrongdoing that

3   initiates legal proceedings against an alleged wrongdoer."  <u>Federal</u>

4   <u>Exp. Corp. v. Holowecki</u>, 128 S.Ct. 1147, 1161 (2008) (Thomas, J.,

5   dissenting).  "In criminal law, . . . a charge is defined as '[a]

6   formal accusation of an offense as a preliminary step to

7   prosecution.'"  <u>Id.</u> (quoting Black's Law Dictionary 248 (8th ed.

8   2004)).  Other "events" also may serve to "initiate adversary

9   criminal proceeding[s][,]" such as "preliminary hearing[s],

10  indictment[s], information[s], and arraignment[s]."  <u>Rothgery v.</u>

11  <u>Gillespie County, Tex.</u>, 128 S.Ct. 2578, 2599 (2008) (Thomas, J.,

12  dissenting).

13       Here, insofar as the six Mexican national plaintiffs are

14  concerned, it is uncontested that state proceedings were underway

15  before the commencement of this federal action.  On November 21,

16  2006, plaintiffs filed the complaint herein.  Roughly three months

17  earlier, however, as the FAC alleges, "in mid-August 2006,

18  defendants arrested, detained and charged" four of the Mexican

19  national plaintiffs "with conspiracy to violate Ariz. Rev. Stat. §

20  13-2319."  FAC (doc. 45) at 7, ¶ 9.  Prior to that, "in late May

21  2006," defendants also allegedly "arrested, detained, and charged"

22  the other two Mexican national plaintiffs "with conspiracy to

23  violate" that same statute.  <u>Id.</u> at 7, ¶ 10.  Obviously those

24  actions constituted the initiation of state criminal proceedings

25  against the six Mexican national plaintiffs – proceedings which

26  were underway before the initiation of this federal action.

27       ***B.  Plaintiffs Not Parties to State Proceedings***

28       What the parties seemingly fail to take into account is that

1  the six Mexican nationals are not the only plaintiffs in this

2  action.   The FAC also names as plaintiffs five individual

3  taxpayers, as well as four community based organizations

4  (collectively referred to herein as the "non-state party

5  plaintiffs").   No state court proceedings have been instituted,

6  much less are pending, against any of those plaintiffs however.

7        "As a general proposition, abstention is mandated under

8  Younger only when the federal plaintiff is actually a party to the

9  state proceeding; the doctrine does not bar non-parties from

10  raising constitutional claims in federal court, even if the same

11  claims are being addressed in a concurrent state proceeding

12  involving similarly situated parties."   Blackwelder v. Safnauer,

13  689 F.Supp. 106, 119 (N.D.N.Y. 1988), aff'd on question of

14  mootness, 866 F.2d 548 (2d Cir. 1989) (citing, Doran v. Salem Inn,

15  Inc., 422 U.S. 922, 928-29, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648

16  (1975)).   In other words, as the Ninth Circuit put, "the state

17  defendant's inability to bring a federal action because of a

18  pending state prosecution does not affect other potential federal

19  plaintiffs who are not themselves the subject of pending

20  prosecutions."   Ripplinger v. Collins, 868 F.2d 1043, 1049 n. 5 (9th

21  Cir. 1989) (citing Doran, 422 U.S. at 928-930, 95 S.Ct. at 2566-

22  67).   In light of the foregoing, on the face of it, application of

23  Younger is problematic as to the non-state party plaintiffs herein.

24        In Doran, one of the three plaintiffs was the subject of a

25  related state criminal prosecution, but the other two were not,

26  forcing the Supreme Court to confront the issue of under what

27  circumstances federal plaintiffs should be considered the same for

28  Younger purposes.   The plaintiffs in Doran were three separate

corporations, which operated topless bars in the same town.  All

three were represented by the same counsel and together filed a

federal court action challenging the constitutionality of a town

ordinance prohibiting topless dancing.  Two of the operators abided

by that ordinance until after the district court enjoined

enforcement of the ordinance.  In the meantime though, prior to the

issuance of that preliminary injunction, one bar operator resumed

the presentation of topless dancing.  As a result, the state issued

criminal summonses against the operator and its dancers.  Following

the town's appeal, the Second Circuit affirmed the granting of the

preliminary injunction as to all three plaintiffs.

       Explicitly rejecting the view "that all three plaintiffs

should automatically be thrown into the same hopper for Younger

purposes," the Supreme Court held, inter alia, that Younger barred

injunctive relief as to the plaintiff operator who was involved in

the state criminal prosecution.  Doran, 422 U.S. at 928, 95 S.Ct.

at 2566.  Younger did not, however, bar injunctive relief as to the

other two plaintiffs because "[n]o state proceedings were pending

against either [of them] at the time the District Court issued its

preliminary injunction."  Id. at 930, 95 S.Ct. at 2567.  In so

holding, the Court did recognize that "there plainly may be some

circumstances in which legally distinct parties are so closely

related that they should all be subject to the Younger

considerations which govern any one of them[.]"  Id. at 928, 95

S.Ct. at 2566; see also Hicks v. Miranda, 422 U.S. 332, 348-50, 95

S.Ct. 2281, 45 L.Ed.2d 2223 (1975) (err not to dismiss based upon

Younger where federal plaintiffs were later subject to state

criminal prosecution because their interests were "intertwined with

1  state criminal defendants, same lawyer represented both, and
2  federal action "sought to interfere with the pending state
3  prosecutions," and federal plaintiffs did not show that they could
4  not obtain relief or raise constitutional claims in state
5  proceedings).  Despite common legal counsel and "similar business
6  activities and problems," the Supreme Court found that the Doran
7  plaintiffs were not so "closely related," however, because "they
8  [we]re apparently unrelated in terms of ownership, control and
9  management."  Doran, 422 U.S. at 929, 95 S.Ct. at 2566.

10      From the Ninth Circuit's standpoint, Doran "clarified that
11  when the federal plaintiff is not a party to the state court
12  action, a mere commonality of interest with a party to the state
13  litigation is not sufficient to justify abstention." Green v. City
14  of Tucson, 255 F.3d 1086, 1100 (9th Cir. 2001) (en banc), overruled,
15  in part, on other grounds by Gilbertson v. Albright, 381 F.3d 965
16  (9th Cir. 2004) (en banc).  Further, when Hicks and Doran are read
17  together, they demonstrate "the quite limited circumstances under
18  which Younger may oust a district court of jurisdiction over a case
19  where the plaintiff is not a party to an ongoing state
20  proceeding[.]" Id.  "Congruence of interests is not enough, nor is
21  identity of counsel, but a party whose interest is so intertwined
22  with those of the state court party that direct interference[2] with
23  the state court proceeding is inevitable may, under Younger, not
24  proceed." Id. (footnote added).

25

26      [2]  "Gilbertson did overrule Green's holding that direct interference is
a threshold requirement . . . of Younger abstention, but it left intact the more
27  general requirement that some interference with state court proceedings is a
necessary . . . element of the Younger doctrine." San Jose Silicon Valley, 546
28  F.3d at 1096 n.4 (internal quotation marks and citation omitted) (first ellipsis
in original).

1    After careful consideration, the court finds that although the
2  taxpayer and organizational plaintiffs are not parties to the state
3  proceedings, their interests are sufficiently intertwined with
4  those of the Mexican national plaintiffs, who are parties in state
5  court, so that they should be "subject to the *Younger*
6  considerations which may govern any one of them[.]" See Doran, 422
7  U.S. at 928, 95 S.Ct. at 2566.  Several factors inform the court's
8  analysis.  First, "it would be [practically] impossible for this
9  court to address" the claims of the taxpayer and organizational
10 plaintiffs "without resolving  issues at the heart of the . . .
11 state proceeding[s]" -- see Hindu Temple Society of North America
12 v. Supreme Court of State of New York, 335 F.Supp.2d 369, 376
13 (E.D.N.Y. 2004), aff'd without pub'd opinion, 142 Fed.Appx. 492 (2d
14 Cir. 2005) – the constitutionality of the MMCP and whether it
15 "actually conflicts with the federal government's regulation of
16 international migration[.]" See FAC (doc. 45) at 29, ¶ 3(b).
17 Second, there is no suggestion that the Mexican nationals "would
18 fail to adequately represent [the] interests [of the remaining
19 plaintiffs] in the state . . . proceeding[.]" See Spargo v. N.Y.
20 State Com'n, Judicial Conduct, 351 F.3d 65, 85 (2d Cir. 2003).
21 Moreover, if any of those prosecutions are appealed, nothing
22 precludes the non-Mexican national plaintiffs from seeking to
23 appear as *amici curiae* in accordance with 17 A.R.S. Rules Crim.
24 Proc., Rule 31.25 (West Supp. 2008); see, e.g., State v. Delk, 153
25 Ariz. 70, 734 P.2d 612 (App. 1986) (allowing City of Phoenix to
26 file an *amicus curiae* brief on the issue of whether Arizona's
27 "anti-plea bargain" provision violated the Arizona Constitution).
28 Thus, the court agrees with Judge Dearie's rationale in Hindu

1  <u>Temple</u> that "without more, . . . conjecture" that the non-Mexican

2  national plaintiffs could not have intervened [at some point] in

3  the state proceeding is insufficient to sidestep <u>Younger</u>."  <u>See</u>

4  <u>Hindu Temple</u>, 335 F.Supp.2d at 377.  Third, and perhaps most

5  significantly, as discussed below, the declaratory and injunctive

6  relief which plaintiffs are seeking would "interfere" in the state

7  proceedings because it would "enjoin . . . or otherwise involve

8  th[is] federal court[] in terminating or truncating" state

9  proceedings.  <u>See</u> <u>San Jose Silicon Valley</u>, 546 F.3d at 1096

10 (internal quotation marks and citation omitted).  Thus, although

11 the court is fully cognizant that "<u>Younger</u> should be applied

12 sparingly and cautiously to federal plaintiffs not parties to an

13 ongoing state action[,]" if the other <u>Younger</u> requirements are met

14 here, the court finds that "this is one of those limited

15 circumstances where it must abstain . . . , despite the presence of

16 plaintiffs not parties to the state action."  <u>See</u> <u>Hindu Temple</u>, 335

17 F.Supp.2d at 377 (citing <u>Green</u>, 255 F.3d 1086).

18      ***C.  Implication of Important State Interests***

19      At last the court is free to return to the unanswered issue in

20 <u>We Are America</u> – whether plaintiffs can show field preemption under

21 the second <u>DeCanas</u> test.  Plaintiffs have consistently taken the

22 position that federal immigration law preempts the MMCP and thus,

23 necessarily, that policy does not implicate an important state

24 interest.  From defendants' perspective neither the MMCP nor A.R.S.

25 § 13-2319 "intrude on, burden, or conflict with federal

26 [immigration] law[;]" hence plaintiffs cannot meet their burden of

27 establishing preemption here.

28      As this court previously framed it, "the decisive inquiry" in

1  terms of field preemption "is whether Congress intended to occupy

2  the field of regulating criminal activities involving the smuggling

3  of aliens." We Are America, 2007 WL 2775134, at *6.  Of the three

4  ways in which Congressional "intent to occupy a given field to the

5  exclusion of state law[]" can be shown,[3] plaintiffs are relying

6  only upon the third – "where the object sought to be obtained by

7  the federal law and the character of obligations imposed by it

8  . . . reveal the same purpose." Id. (internal quotation marks and

9  citation omitted). Schneidewind v. ANR Pipeline Co., 485 U.S. 293,

10 300, 108 S.Ct. 1145, 1150, 99 L.Ed.2d 316 (1988) (internal

11 quotation marks and citation omitted).  Plaintiffs contend that the

12 MMCP "impermissibly duplicates" federal immigration law in "object

13 and effect[.]" Pl. Supp. (doc. 44) at 1.  From plaintiffs'

14 viewpoint, that duplication stems from the fact that the MMCP

15 attempts to regulate "two types of conduct that the federal

16 government has already prohibited as part of a comprehensive

17 federal scheme: immigrant transportation for gain and unauthorized

18 entry into the United States." Id. Defendants concede that A.R.S.

19 § 13-2319 and the MMCP "may harmoniously duplicate" certain

20 provisions of the Immigration and Nationality Act ("INA"), but they

21 argue that such harmonious duplication is not sufficient to meet

22 plaintiffs' burden of proving implied preemption.  Def. Supp. (doc.

23 47) at 2.

24      Before addressing the merits, it is necessary to consider

25 defendants' contention that "state law is presumed not to be

26 ─────────────────

27     [3]     The other two ways are "where the pervasiveness of the federal
   regulation precludes supplementation by the States," and "where the federal
   interest in the field is sufficiently dominant[.]" Schneidewind, 485 U.S. at 300,
28 108 S.Ct. at 1150.

1  preempted[.]" Id. at 3.  To be sure, "[w]hen Congress legislates in

2  a field which the States have traditionally occupied . . . [courts]

3  start with the assumption that the historic police powers of the

4  State were not to be superseded by the Federal Act unless that was

5  the clear and manifest purpose of Congress." Chicanos Por La Causa,

6  Inc. v. Napolitano, 544 F.3d 976, 983 (9th Cir. 2008) (quoting,

7  inter alia, United States v. Locke, 529 U.S. 89, 108, 120 S.Ct.

8  1135, 146 L.Ed.2d 69 (2000)) (other citation omitted).  What

9  defendants conveniently overlook is that the converse is also true.

10 Courts "do not assume non-preemption 'when the State regulates in

11 an area where there has been a history of significant federal

12 presence.'" Id. (quoting Locke, 529 U.S. at 108) (emphasis added).

13 Clearly immigration is an area in which historically there has been

14 a significant federal presence.  See, e.g., DeCanas, 424 U.S. at

15 354 (citations omitted) ("Power to regulate immigration is

16 unquestionably exclusively a federal power."); United States v.

17 Valenzuela-Bernal, 458 U.S. 858, 864, 102 S.Ct. 3440, 73 L.Ed.2d

18 1193 (1982) ("The power to regulate immigration - an attribute of

19 sovereignty essential to the preservation of any nation- has been

20 entrusted by the Constitution to the political branches of the

21 Federal Government."); and Galvan v. Press, 347 U.S. 522, 531, 74

22 S.Ct. 737, 98 L.Ed. 911 (1954) ("that the formulation of

23 [immigration] policies] is entrusted exclusively to Congress has

24 become about as firmly imbedded in the legislative and judicial

25 tissues of our body politic as any aspect of our government").

26 Thus, despite defendants' contrary suggestion, they cannot avail

27 themselves of the "presumption against preemption[.]"  See Silvas

28 v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004 (9th Cir. 2008).

1  Even without the benefit of that presumption, however, for the
2  reasons set forth below, the court agrees with defendants that
3  plaintiffs' preemption argument is unavailing.

4        First, plaintiffs offer no legal authority to support the
5  broad proposition that simply because a state statute or policy may
6  be duplicative of federal law, it is necessarily preempted.
7  Indeed, in making that argument plaintiffs disregard the De Canas
8  Court's finding that there was no "specific indication in either
9  the wording or the legislative history of the INA . . . that
10  Congress intended to preclude even *harmonious* state regulation
11  touching on aliens in general[.]" De Canas, 424 U.S. at 358, 96
12  S.Ct. at 937-38 (footnote omitted) (emphasis added).  Moreover,
13  plaintiffs are not claiming that the MMCP is not harmonious with
14  the INA – only that it is duplicative.

15        Second, plaintiffs also fail to take into account the
16  demanding standard under De Canas to "justify th[e] conclusion[]
17  . . . that Congress, in enacting the INA, intended to oust state
18  authority to regulate . . . in a manner *consistent* with pertinent
19  federal laws."  Id. at 358, 96 S.Ct. at 937 (emphasis added).  In
20  fairly expansive language, the De Canas Court held that "[o]nly a
21  demonstration that *complete ouster* of state power including state
22  power to promulgate laws not in conflict with federal laws was the
23  *clear and manifest purpose* of Congress" will establish such
24  Congressional intent.  Id. (emphasis added).  Plaintiffs do not
25  even come close to meeting that standard.

26        In that respect, the present case is remarkably similar to
27  Barragan-Sierra.  There, a defendant who had been convicted of
28  conspiracy to smuggle himself in violation of A.R.S. § 13-2319

1 challenged his conviction on several grounds, including preemption.

2 In addressing defendant's preemption argument in the context of the

3 second _DeCanas_ test, the Court explained that defendant did "not

4 point[] to any specific indication in the INA or its history that

5 Congress intended to preclude harmonious state regulation touching

6 on the smuggling of illegal aliens in particular." _Barragan_, 2008

7 WL 2764611, at *11 (citing _DeCanas_, 424 U.S. at 358). Likewise,

8 the Court dismissed defendant's "reference to the limits on the

9 role of states in enforcement of the federal immigration law[,]"

10 finding that it had "no applicability to [A.R.S. § 13-2319], which

11 is a state law designed to punish human smuggling for profit." _Id._

12 Thus, the _Barragan-Sierra_ Court found that defendant did not meet

13 his burden of showing preemption. _Id._ (citation omitted).

14     Plaintiffs are grasping at straws in their unsuccessful

15 attempt to diminish the import of _Barragan-Sierra_. First, they

16 contend that this court is not bound by that state court

17 interpretation of federal law which, at most, has only "persuasive

18 value." Pl. Supp. Memo. (doc. 52) at 2 (internal quotation marks

19 and citation omitted). Second, plaintiffs believe that _Barragan-_

20 _Sierra's_ analysis of field preemption "is simply too cursory to

21 persuade." _Id._ Third, plaintiffs assert that by enacting 8 U.S.C.

22 §§ 1321-28, "Congress has enacted legislation aimed at the very

23 issue addressed by the MMCP: the transportation of unauthorized

24 entrants." _Id._ at 4. None of these reasons persuade this court to

25 disregard _Barragan-Sierra_, however.

26     Just as in _Barragan-Sierra_, plaintiffs have not met their

27 burden of showing, either based upon the language or the

28 legislative history of the INA, that "Congress intended to preclude

1  harmonious state regulation touching on the smuggling of illegal

2  aliens in particular."  See Barragan-Sierra, 2008 WL 2764611, at

3  *11 (citing DeCanas, 424 U.S. at 358). Given that "[t]he central

4  concern of the INA is with the terms and conditions of admission to

5  the country and the subsequent treatment of aliens *lawfully* in the

6  country[,]" plaintiffs' inability to meet that burden of proof is

7  not surprising.  See DeCanas, 424 U.S. at 359 (emphasis added).

8      In addition to arguing impermissible duplication, relying upon

9  three supposedly factually "similar" cases where "[c]ourts [h]ave

10  [f]ound [f]ield [p]reemption[,]" plaintiffs urge this court to also

11  find field preemption.  See Pl. Supp. (doc. 44) at 4.  Those cases

12  are each readily distinguishable, however, and thus do nothing to

13  advance plaintiffs' field preemption argument in this case.

14      The court in League of United Latin American Citizens v.

15  Wilson, 997 F.Supp. 1244 (C.D. Cal. 1997) ("LULAC II") did hold

16  that Congress occupied the field of regulating post-secondary

17  education benefits to aliens by enacting, *inter alia*, the Personal

18  Responsibility and Work Opportunity Reconciliation Act ("PRA").

19  The court in LULAC II further held that that federal legislation

20  preempted a California initiative, which included a provision

21  denying public post-secondary education benefits to illegal aliens.

22  Critical to the court's finding of field preemption in LULAC II was

23  the language of the PRA.  By "careful[ly] designati[ng] . . . the

24  limited instances in which states have the right to determine alien

25  eligibility for state or local public benefits[,]" the court found

26  that Congress "manifest[ed]" its "intention to displace state power

27  in the area of regulation of public benefits to immigrants[.]" Id.

28  at 1255.

1     Here, plaintiffs assert that "the INA, like the MMCP, makes it

2  unlawful to 'transport[], or move[] or attempt[] to transport or

3  move' undocumented immigrants."  Pl. Supp. (doc. 44) at 2 (quoting

4  8 U.S.C. § 1324(a)(1)(A)(ii)) (footnote omitted).  Plaintiffs

5  further assert that the "purpose" of the INA "is to prohibit

6  'transport[ation] [of] an undocumented alien to any place in the

7  United States.'"  Id. (quoting H.R. Rep. No. 990682 at 66 (1986), *as*

8  *reprinted in* 1986 U.S.C.C.A.N. 5649, 5670).  These general

9  statements are not, however, similar to the statute at issue in

10 LULAC II, the PRA, which "define[d] the full scope of permissible

11 state legislation in the area of regulation of government benefits

12 and services to aliens."  LULAC II, 997 F.Supp. at 1255.   Thus, in

13 contrast to LULAC II, plaintiffs have not pointed to any specific

14 language either in the INA itself or the legislative history

15 thereto manifesting a Congressional intent to "displace state

16 power" in the area of smuggling illegal aliens.

17     Plaintiffs' reliance upon Hines v. Davidowitz, 312 U.S. 52, 61

18 S.Ct. 399, 85 L.Ed. 581 (1941), is similarly misplaced.   There,

19 Pennsylvania enacted an alien registration statute which was

20 "identical" to a federal alien registration act.  Id. at 61, 61

21 S.Ct. at 401.  The Court held that the federal act, which "provided

22 a standard for alien registration in a single integrated and all-

23 embracing system[,]" preempted that Pennsylvania statute.  Id. at

24 74, 61 S.Ct. at 408.  The primary reason for finding preemption

25 there was the fact that the state law was "an obstacle to the

26 accomplishment and execution of the full purposes and objectives of

27 Congress."  Id. at 68, 61 S.Ct. at 404 (footnote omitted).

28     In contrast, the INA is not such a "single integrated and all-

1  embracing system" pertaining to the smuggling of aliens. Indeed,

2  plaintiffs would be hard-pressed to make such an argument given

3  that the MMCP, at least on the face of it, appears to fill the

4  interstices of the INA.  The MMCP fills those interstices by

5  allowing for the prosecution of individual undocumented immigrants

6  conspiring to smuggle themselves; the INA does not include a

7  similar provision.   Moreover, plaintiffs do not assert that the

8  challenged MMCP policy is in any way an "obstacle to the

9  accomplishment and execution of the full purposes and objectives of

10  Congress" as evinced in the INA.   Lozano v. City of Hazleton, 496

11  F.Supp.2d 477 (M.D.Pa. 2007) is likewise distinguishable.   The

12  Lozano court did not address the third Schneidewind scenario for

13  establishing field preemption – "'the object sought to be obtained

14  by the federal law and the character of obligation imposed by it

15  reveal the same purpose.'" Id. at 521 (quoting Schneidewind, 485

16  U.S. at 300).  This omission is significant because, as mentioned

17  earlier, this third scenario is the *only* way in which the

18  plaintiffs herein are endeavoring to show field preemption.

19  Therefore, because Lozano's discussion of duplication was in the

20  context of conflict preemption – a form of preemption to which the

21  plaintiffs herein do not even allude –[4] it has no bearing on the

22  present case.   In short, despite plaintiffs' assertion to the

23  contrary, the court does not find that any of these three cases are

24

25         [4]    The court recognizes "that the categories of preemption are not rigidly
   distinct."  See Crosby v. National Foreign Trade Council, 530 U.S. 363, 372 n. 6,
   120 S.Ct. 2288, 2294 n. 6, 147 L.Ed.2d 352 (2000) (internal quotation marks and
26  citation omitted).  Nonetheless, as noted above, plaintiffs do not even hint at
   conflict preemption, which would require a showing that it would "be impossible for
27  a private party to comply with both state and federal law, . . . , and where under
   the circumstances of [a] particular case, [the challenged state law] stands as an
   obstacle to the accomplishment and execution of the full purposes and  objectives
28  of Congress."  See id. (internal quotation marks and citations omitted).

- 19 -

1 sufficiently analogous so as to warrant a finding of field

2 preemption here.

3      After *We Are America*, plaintiffs were left with field

4 preemption as the only basis for finding that no important state

5 interests are implicated here.  Having found that plaintiffs did

6 not meet their burden of proof on that discrete issue,[5] it stands

7 to reason that they have not overcome the fact, as this court

8 previously recognized, that there is "little question that a state

9 has a vital interest in the enforcement of its criminal laws."  See

10 We Are America, 2007 WL 2775134, at *3 (citing Pennzoil Co. v.

11 Texaco, Inc., 481 U.S. 1, 13 (1987)).

12      ***D.  Interference***

13      "The final *Younger* requirement is that the federal suit would

14 'interfere' with the ongoing state proceeding (i.e., enjoin or have

15 the *practical effect* of enjoining the proceeding)."  See San Jose

16 Silicon Valley, 546 F.3d at 1095 (internal quotation marks and

17 citation omitted) (emphasis added).  "As the Supreme Court has

18 held, 'the mere potential for conflict in the results of

19 adjudications does not, without more, warrant staying exercise of

20 federal jurisdiction[.]'"  AmerisourceBergen Corp. v. Roden, 495

21 F.3d 1143, 1151 (9th Cir. 2007) (quoting Colo. River Water

22 Conservation Dist. v. United States, 424 U.S. 800, 816, 96 S.Ct.

23 1236, 47 L.Ed.2d 483 (1976)).  Thus, "[c]oncurrent consideration,

24 not abstention, [wa]s the solution," in AmerisourceBergen, where

25 there was merely a potential for conflict between the state and

26

27      [5]    As the party asserting preemption, plaintiffs had the burden of proof.
See Jimeno v. Mobil Oil Corp., 66 F.3d 1514, 1526 n.6 (9th Cir. 1995).

28

1   federal actions if a post-judgment motion or counterclaim were

2   filed in state court.  Id.

3        Here, the interference goes far beyond the potential for

4   conflicting results.  Rather, as will be seen, the "practical

5   effect" of granting plaintiffs the declaratory and injunctive

6   relief which they are seeking would be to enjoin state criminal

7   proceedings - the very conduct which Younger proscribes.

8        In their FAC, plaintiffs purport to frame the relief which

9   they are seeking in such a way as to circumvent Younger, and the

10  interference element in particular.  As mentioned at the outset, in

11  their FAC plaintiffs' prayer for relief seeks declaratory relief

12  "[o]nly to the extent [that] relief does not interfere with state

13  proceedings that were underway before initiation of this case or

14  otherwise require abstention under Younger[.]" FAC (doc. 45) at ¶

15  3.  Likewise, plaintiffs are seeking to enjoin defendants and

16  others "from further implementing the [MMCP], but only to the

17  extent such injunctive relief does not interfere with state

18  proceedings that were underway before initiation of this case or

19  otherwise require abstention under Younger[.]" Id. at 29, ¶ 4.

20  Plaintiffs do not suggest how this could be accomplished though.

21       The court concurs with defendants' observation that "[t]here

22  is simply no meaningful or legal way in which plaintiffs can bring

23  their proposed class action lawsuit, which seeks injunctive [and

24  declaratory] relief against state law enforcement activities and

25  ongoing state judicial proceedings, without obtaining some form of

26  relief which necessarily interferes with some aspect of the ongoing

27  state judicial proceedings against the putative class members."

28  Resp. (doc. 49) at 2.  The court also finds persuasive defendants'

1   argument that "plaintiffs' 'carve-out' exceptions for ongoing state

2   proceedings existing before the date of the [FAC] are artificial

3   and illusory . . . because A.R.S. § 13-2319 and defendants'

4   policies are enforced daily." Id.   This is all the more so given

5   that just last month defendants reiterated that "[p]utative class

6   members of this federal . . . action *currently* are involved in

7   ongoing state initiated judicial proceedings." Def. Supp.

8   Authority (doc. 54) at 2:14-15 (emphasis added).   Thus, the court

9   finds, as defendants point out, that "the relief sought by

10  plaintiffs for the putative class will necessarily interfere with

11  the continuous stream of on-going state law enforcement and state

12  proceedings[.]" Resp. (doc. 49) at 2.

13        The present case is analogous to San Jose Silicon Valley where

14  the Ninth Circuit recently found that the interference element of

15  Younger had been met.   There, local political organizations were

16  challenging the constitutionality of a city code limiting the

17  amount of campaign contributions.   Prior to the commencement of

18  that federal lawsuit, the plaintiffs had been publicly reprimanded

19  and one of the defendants, the Elections Commission, decided to

20  assess penalties against plaintiffs at a future date.   Plaintiffs

21  sought, among other things, a declaratory judgment that the statute

22  was unconstitutional.   They also sought to enjoin defendants from

23  enforcing that code provision against them "or any others similarly

24  situated[;]" and "from levying any civil penalty or *future*

25  administrative sanction against [them] for alleged violations" of

26  the code.   San Jose Silicon Valley, 546 F.3d at 1091 (emphasis

27  added).   The court granted plaintiffs a permanent injunction

28  "precluding them from enforcing the statute[,]" which effectively

1  "prohibit[ed] the Elections Commission from imposing the fine

2  against Plaintiffs."  Id. at 1095.  The Ninth Circuit held that

3  "[t]he relief sought . . . would 'interfere' with the Elections

4  Commission's proceeding because it would enjoin . . . or otherwise

5  involve the federal courts in terminating or truncating the

6  Elections Commission's proceeding."  Id. at 1095-96 (internal

7  quotation marks, citation and footnote omitted).

8       The same result would occur here if the court were to grant

9  plaintiffs a judgment declaring the MMCP unconstitutional.  Clearly

10  such a declaration would terminate, or at a minimum truncate, state

11  judicial proceedings in direct contravention of Younger.

12  Therefore, try as they might, plaintiffs are unable to circumvent

13  Younger through "artful" pleading.  See Carson v. Heineman, 240

14  F.R.D. 456, 525 (D.Neb. 2007) ("[P]laintiffs' artful pleading and

15  lack of specificity should not serve to circumvent the principles

16  of comity protected by Younger abstention[.]")

17       To conclude, because all four elements necessary for Younger

18  abstention are present here, the court hereby GRANTS defendants'

19  motion to dismiss on that basis (doc. 32).  See San Jose Silicon

20  Valley, 546 F.3d at 1092 (a "court must abstain under Younger if

21  [the] four requirements are met").

22       IT IS ORDERED that defendants' motion to dismiss (doc. #32) is

23  GRANTED in its entirety.

24       DATED this 12th day of January, 2009.

25

26

27  _____

28  Robert C. Broomfield
     Senior United States District Judge

- 23 -

Copies to counsel of record