Timothy J. Casey (013492)
SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
1221 East Osborn Road, Suite 105
Phoenix, Arizona 85014-5540
Telephone: 602-277-7000
Facsimile: 602-277-8663
timcasey@azbarristers.com
Counsel for Defendants Maricopa County Board of Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek, Max Wilson, and Mary Rose Wilcox, and Joseph M. Arpaio, Maricopa County Sheriff, and William G. Montgomery, Maricopa County Attorney

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| We Are America, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Maricopa County Board of Supervisors, et al.,<br><br>Defendants. | Cause No. CV06-2816-PHX-RCB<br><br>**DEFENDANTS' STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** |

Pursuant to Rule 56(b), Federal Rules of Civil Procedure, Defendants submit the following Statement of Facts in Support of their Motion for Summary Judgment:

1. Plaintiffs' First Claim for Relief is a federal preemption challenge to the validity of: (a) the Maricopa County Sheriff's Office's ("MCSO") policy of arresting individuals for, and detaining them under, the criminal charge of conspiring under Arizona's conspiracy statute, A.R.S. § 13-1003, to violate Arizona's criminal human smuggling statute, A.R.S. § 13-2319, when probable cause exists to do so; and (b) the Maricopa County Attorney's Office's ("MCAO") policy of charging and prosecuting persons for the state crime of conspiracy to violate Arizona's human smuggling statute. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at p. 3:8-10; pp. 25-26, ¶¶ 52-54.

2. Plaintiffs allege that the MCSO and MCAO's above-stated respective policies are expressly and impliedly preempted by the Immigration and Nationality Act, 8 U.S.C. §§

1101 *et seq.* ("INA") and, therefore, violative of the United States Constitution Art. I, § 8, cl. 3 (i.e., the power to regulate commerce with foreign nations) and Art. I, § 8, cl. 4 (i.e., the federal power to establish a uniform rule of naturalization). *Id.*

    3.    On January 18, 2007, Defendants moved to dismiss Plaintiffs' original Complaint for lack of standing and under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971). *See* Dkt#32.

    4.    Plaintiffs opposed the Motion (Dkt#32), including for the reason that *Younger* abstention was inapplicable when the challenged state policy is preempted by federal law. *See* Dkt#44:3 (no lines provided in original).

    5.    The Court previously determined, in the context of determining that abstention was appropriate, that federal preemption of the MCSO and MCAO's policies were not "readily apparent" pursuant to its analysis under *De Canas v. Bica*, 424 U.S. 351 (1976). *See* Order at Dkt#43 at p. 1:3-6 (addressing first *De Canas* test); p. 13:10-12 (addressing third *De Canas* test); 14:22-27 ("Although Plaintiff have not succeeded in establishing federal preemption under the first or third *De Canas* tests" the Court ordered additional briefing to address the second *DeCanas* test.); *see also* Order at Dkt#55 (addressing second *De Canas* test).

    6.    Plaintiffs' Second Claim for Relief contains a *facial* constitutional challenge to the validity of the MCSO and MCAO's respective policies of arresting, detaining, charging, and prosecuting persons for conspiracy to violate Arizona's human smuggling statute because such policies supposedly will necessarily result in unlawful searches and seizures. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at p. 26, ¶¶ 55-56.

    7.    Given the change in parties throughout this litigation, and the substantive rulings by the Court and the Ninth Circuit, the four remaining Plaintiffs <u>cannot</u> seek class certification. The four remaining Plaintiffs are the two organization plaintiffs, Arizona Hispanic Community Forum, and We Are America/Somos America, and two taxpayer plaintiffs, former state legislator David Lujan, and ASU sociology professor LaDawn Hagland. *See* Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

(Dkt#34) at p. 3 (no lines provided in original) ("The … organization plaintiffs [i.e., Arizona Hispanic Community Forum and We Are America/Somos America] have never been proposed as class representatives."). Note Plaintiffs have never proposed the Plaintiffs Lujan and Hagland would, or could, serve as class representative. *See, e.g.*, Dkt Nos. 34 and 45. Indeed, they cannot be because neither Arizona Hispanic Community Forum nor Somos America are capable of being arrested, detained, charged and prosecuted under the MCSO and MCAO's policies, and their respective Rule 30(b)(6), F.R.C.P., representatives have never been arrested or charged under the policies. *See* Deposition of Arizona Hispanic Community Forum 30(b)(6) Representative Sharon Zapata, at p. 16:11-17 (describing that neither she nor any paid staff have every been arrested under the policies), attached as Exhibit A; *See* Deposition of Somos America Rule 30(b)(6) Representative Lydia Guzman, at p. 7:1 to 10:16 (describing the only "injury" to the organization or her), attached as Exhibit B. Professor Hagland also has never been arrested or charged under the policies. *See* Deposition of LaDawn Hagland at p.10:4 to 11:15 (describing her only injury as being a taxpayer for a policy she disagrees with), attached as Exhibit C.   Mr, Lujan does not allege, and Plaintiffs have offered no evidence, that he has ever been arrested or charged under the policies. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at¶ 13, p. 8:18-25.

8. Plaintiffs' Third Claim for Relief contains a *facial* constitutional challenge to the validity of the MCSO and MCAO's respective policies of arresting, detaining, charging, and prosecuting persons for conspiracy to violate Arizona's human smuggling statute because such policies supposedly result in the denial of due process. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at pp. 27-28, ¶¶ 57-58.

9. Plaintiffs' Fourth Claim for Relief is a state claim for relief containing a *facial* challenge to the validity of the MCSO and MCAO's respective policies of arresting, detaining, charging, and prosecuting persons for conspiracy to violate Arizona's human smuggling statute because such policies allegedly conflict with, and are not authorized by, A.R.S. §§ 13-2319 and 13-1003, "which were not intended to and do not impose criminal penalties against migrants transported by smugglers for gain. *See* Plaintiffs' Amended

Complaint for Declaratory and Injunctive Relief (Dkt#45) at p. 28, ¶¶ 59-60; p.28:13-16, §60.

10. This lawsuit is brought by the two remaining county taxpayers and two organizational Plaintiffs in order to challenge Defendants' policy of applying Arizona's criminal conspiracy statute, A.R.S. § 13-1003, to persons who conspire with a smuggler to violate Arizona's criminal human smuggling statute, A.R.S. § 13-2319. Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at p. 28, ¶¶ 59-60; p.28:13-16, §60. These plaintiffs are the organizations Hispanic Community Forum and We Are America/Somos America, former state legislator David Lujan, and ASU sociology professor LaDawn Hagland. *Id.* at title page of Amended Complaint after dismissals set forth in prior orders.

11. Plaintiffs do not challenge the constitutionality of either A.R.S. § 13-1003 or A.R.S. § 13-2319. *See*, in *toto* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45)].

12. Plaintiffs cannot seek class certification. *See* Plaintiffs' Reply in Support of Plaintiffs' Motion for Class Certification (Dkt#34) at p. 3 (no lines provided in original) ("The … organization plaintiffs [i.e., We Are America/Somos America] have never been proposed as class representatives."). Note Plaintiffs have never proposed the Plaintiffs Lujan and Hagland would, or could, serve as class representatives. *See, e.g.*, Dkt Nos. 34 and 45.]

13. Plaintiffs seek declaratory and injunctive relief. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at pp. 30-31.

14. Plaintiffs' First Claim for Relief alleges that Defendants' policy of arresting, detaining, charging, and prosecuting persons for conspiracy to violate Arizona's criminal human smuggling statute is preempted by federal law because the federal government has occupied the field of immigration and the policy conflicts with federal laws defining the legal status of non-citizens. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶¶ 45-47.

15. Plaintiffs allege that the Policy is expressly preempted by federal immigration law because it "is an impermissible attempt… to regulate immigration, and as such

unlawfully usurps the federal government's exclusive power to regulate immigration…." *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 53, p. 25:29 to 26:2; *see also* ¶ 45, p. 21:13-16 ("The [Defendants' policy] is an attempt to regulate conduct that the federal government has already prohibited as part of a comprehensive federal scheme: immigrant smuggling and unauthorized entry into the United States.").

16. To try to support this argument, Plaintiffs can offer only: (1) conjecture and speculation that defendant Joseph M. Arpaio and former Maricopa County Attorney Andrew P. Thomas adopted the Policy "to garner local and national media attention and further their political fortunes by impugning federal authorities' ability and resolve to control international immigration". *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 2, p. 4:1-5.

17. Plaintiffs also cite to statements allegedly made by Mr. Thomas to the media, stating that he was "frustrated… [with the] problem of illegal immigration that the government [of Mexico] is directly fomenting," and by Mr. Arpaio supposedly opining to the media that "[t]here are [too] many illegals trying to make it into [Maricopa] county]." *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 44, p. 21:26 to 22:1 (brackets in Plaintiffs' original).

18. MCAO Rule 30(b)(6) witness Ms. Vicki Kratovil, an MCAO Special Crimes Bureau Chief with 24 years of experience as a prosecutor working in the office regardless of who is the elected county attorney, testified that the MCSO files charges under the Policy solely "based on the determination that there's a likelihood of conviction of all elements of the offense." *See* Deposition of Vicki Kratovil at p. 72:13-24 (testifying to her 24 years of experience in the MCAO under county attorneys Tom Collins to William Montgomery); p.73: 1-12 (she is not a political appointee but a merit-protect employee that is a member of the professional prosecutorial staff of the MCAO); p. 18:13-18; p. 19:2-14 (grounds for charging under the Policy), attached as Exhibit D.

19. According to Prosecutor Vicki Kratovil of the MCSO, the central factor in prosecutions under the Policy is whether the accused person has committed an overt act under Arizona's criminal code.

| | | |
|---|---|---|
| Q. | Now, in the majority of cases where there's a charge of conspiracy to violate 13-2319, in addition to being unlawfully present in the United States, what else is the defendant accused of having done? |
| A. | He is accused of having reached an agreement to violate the smuggling statute and that one or more persons have, including himself, have done something towards that end, which is called an overt act. |
| Q. | In most cases of conspiracy to violate 13-2319, what is the overt act? |
| A. | The over acts is—well, it can be different in every case, you know every— |
| Q. | In the majority of cases? |
| A. | It's being in a vehicle, being smuggled into the United States, being in [a] drop house in the United States, having taken some conduct to bring themselves to Arizona illegally. |

*See* Exhibit D at p. 20:25 to 21:16; *see also* p. 23:13 to 24: 3 (discussing an overt act as "being in a vehicle, being transported… in Arizona."); p. 35:13-21.

20. Ms. Kratovil testified to the public benefit of the Policy:

| | |
|---|---|
| Q. | How does the public benefit from prosecuting non-smuggler migrants for conspiracy to violate 13-2319? |
| A. | What is the public benefit? |
| Q. | How does the public benefit, if it does at all. |
| A. | It does. I would – the prosecution of the conspirators to commit smuggling is similar to that of charging persons who commit – who possess illegal drugs. You cannot stop crime if you continue to have people who wish that criminal activity to be supplied. So simply stopping the smugglers when there is still a demand for smuggling does not stop this conspiracy to smuggle persons from coming into the United States. So to simply stop the smugglers does not keep the persons who want to be smuggled from finding other organization to sell them the same commodity [i.e., service]. Second of all, it hopefully works as a deterrent to keep smugglees from engaging in conduct that deleterious to their health because it [i.e., the act of smuggling] is a dangerous process that they go through and, if it deters some one from getting killed in the desert, that is a public benefit. |

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

*See* Exhibit D at p. 29:25 to 31:9

21.     Throughout the history of the Policy's enforcement from March 2006 to present, when a conspirator/smugglee is a juvenile without any prior felony convictions, the MCAO dismisses the juvenile's case. *See* Exhibit D at p. 54:20 to 55:4.

22.     When an adult conspirator/smugglee is a pregnant female without any prior felony convictions, the MCAO expedites the proceedings in order to remove her from custody. *See* Exhibit D at p. 55:5-12.

23.     When an adult a conspirator/smugglee without any prior felony convictions pleads guilty to conspiracy to violate the human smuggling law, he or she is sentenced to unsupervised probation and usually the court orders them not to remain or return to the country illegally. *See* Exhibit D at p. 52:6-2; 58:2-6.

24.     When the defense attorney for the conspirator/smugglee delays, for whatever reason, the date for entry of a plea, the courts have generally given the accused a sentence of time already served and the accused is released from custody the same day of the plea entry. *See* Exhibit D at p. 58:13 to 60:9.

25.     While the length of time is of pre-sentencing detention can vary, it is the MCAO experience that it is generally 45 days of detention for most of the persons accused under the policy. *See* Exhibit D at p. 60:3-9.

26.     Only one person charged with conspiracy to commit smuggling has gone to trial over the last roughly seven years, the jury convicted the person, the trial judge overturned the conviction, and the Court of Appeals reversed. *See* Exhibit D at p. 56:3-25.

27.     Defendant Joseph M. Arpaio testified that the MCSO's enforcement of the Policy also is about enforcing Arizona's criminal code. *See* Deposition of Joseph M. Arpaio at p. 30:2-9; 38:2-19; 39:3 to p. 40:2, attached as Exhibit E.

28.     Defendant Joseph M. Arpaio testified that the county and its citizens benefit from the enforcement of the Policy by the simple "enforce[ment] [of] the laws that are on the books. So that's my duty to do that" and that "the people of this county know that the sheriff and the prosecutor are enforcing this law." *See* Exhibit E at p. 46:4-17.

29.     Plaintiffs are expected to argue that federal law impliedly preempts the Policy

because Congress "fully occupies the field [of immigration]." *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 54, lns. 9-10].

30.     Plaintiffs are expected to argue that the federal smuggling statutes, 8 U.S.C. §§ 1321-27 somehow show a "clear and manifest" Congressional intent to bar Arizona from regulating criminal activities involving the smuggling of aliens within its own borders. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 54, lns. 7-20.

31.     Plaintiffs allege that the Arizona Legislature did not intend to allow smuggled persons to be held liable for conspiracy to commit smuggling by relying on selected comments from three (3) legislators about A.R.S. § 13-2319. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶¶ 38-39.

32.     Plaintiffs' argue that the Policy violates the right against unreasonable search and seizure because Defendants stop, detain, and arrest "Plaintiffs and their class members … without reasonable suspicion or probable cause to believe they have committed any cognizable offense." *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 56 (a)-(c), lns. 1-16.

33.     The undisputed evidence shows that none of the Plaintiffs have ever been stopped, detained or arrested under the Policy. *See* Deposition of Arizona Hispanic Community Forum 30(b)(6) Representative Sharon Zapata, at p. 16:11-17 (describing that neither she nor any paid staff have every been arrested under the policies), attached as Exhibit A; *See* Deposition of Somos America Rule 30(b)(6) Representative Lydia Guzman, at p. 7:1 to 10:16 (describing the only "injury" to the organization or her), attached as Exhibit B. Professor Hagland also has never been arrested or charged under the policies. *See* Deposition of LaDawn Hagland at p.10:4 to 11:15 (describing her only injury as being a taxpayer for a policy she disagrees with), attached as Exhibit C. Mr, Lujan does not allege, and Plaintiffs have offered no evidence, that he has ever been arrested or charged under the policies. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at¶ 13, p. 8:18-25].

34.     None of the remaining Plaintiffs can serve as representatives of a class. See

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

SOF at ¶ 7.

35.     There is no evidence that any person, including the named Plaintiffs or putative class members, did not receive "fair warning of the act which is made punishable by a crime," failed "to explain or define when a person is not lawfully in the state," or that any Plaintiff or putative class member has been "remove[ed] from the United States before they can defendant against [D]efendants' conspiracy criminal charges." *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 58 (a)-(c), lns. 1-7.

36.     Plaintiffs allege in their Fourth Claim for Relief that the Policy "conflicts with and is not authorized by" A.R.S. §§ 13-1003 and 12-2319 and therefore must be enjoined. *See* Plaintiffs' Amended Complaint for Declaratory and Injunctive Relief (Dkt#45) at ¶ 58 (a)-(c), lns. 1-7.

37.     The two remaining organizational Plaintiffs We Are America-Somos America ("WAA/SAC") and Arizona Hispanic Community Forum ("AHCF") claim standing because they allegedly provide voluntary social services and humanitarian aid to illegal migrants and maintain that their limited funds are being diverted while they aid illegal migrants charged under the Policy. *See* First Amended Complaint (Dkt#45) at ¶¶ 5-6.

38.     WAA/SAC is a loose association of like minded people that pays no taxes, owns no property, and exists "to empower the community, to educate the community, to engage the community with causes like the board of registration, specific engagements…. [and] [w]e do forums to educate the community about what's going on."   *See* Exhibit B at p. 5:5-23; 6:19-25.  WAA/SAC "really do[es]n't generate revenue." Exhibit B at p. 5:8-12.

39.     WAA/SAC has not had to divert any financial resources because of the Policy. Exhibit B at p. 8:14-17.  WAA/SAC has not stopped providing charitable assistance to anyone because of the Policy.  Exhibit B at p. 8:14 to 11:14.

40.     WAA/SAC's only 'injury" to it is its volunteers must focus on the Policy instead of other activities.  Exhibit B at p. 8:2-8.

41.     The AHCF also is a loose association that pays no taxes, owns no property, does not generate revenue, and does not have employees.  Exhibit A at p. 6:15 to 8:2; 8:18-21; 9:15-23.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional Corporation

9

42. The purpose of the AHCF is to "work as an advocacy group with the community for community members, but specifically Latino community members having to do, as I said, empowerment, as well as education. Exhibit A at p. 6:15-25.

43. The AHCF has not had to divert any financial resources because of the Policy. Exhibit A at 17:5-12.

44. The AHCF's only "injury" is that its members believe the Policy is bad public policy. Exhibit A at p. 15:13 to 16:10.

45. Plaintiff Professor LaDawn Hagland's injury is a generalized grievance that she does not like any tax money, incidental or otherwise, being used for governmental decisions she disagrees with as a matter of public policy, such as the Policy. Exhibit C at p. 10:4 to 11:25.

**RESPECTFULLY SUBMITTED** this 28th day of September, 2012.

SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

By: *s/Timothy J. Casey*
Timothy J. Casey, Esq.
1221 East Osborn Rd., Suite 105
Phoenix, Arizona 85014
Counsel for the Defendants

### CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

The Honorable Robert C. Broomfield
United States District Court
401 West Washington Street, SPC 61
Suite 626
Phoenix, Arizona 85003-2158

H. Michael Clyde
PERKINS COIE BROWN & BAIN P.A.
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Co-Counsel for Plaintiffs

1  Peter A. Schey
   Carlos Holguin
2  CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
   256 South Occidental Blvd.
3  Los Angeles, California 90057
   Co-Counsel for Plaintiffs
4
   Dan Ballecer
5  1095 East Indian School Road
   Phoenix, Arizona 85014
6
   Antonio Bustamante
7  1001 North Central Avenue
   Suite 660
8  Phoenix, Arizona 85014
   Co-Counsel for Plaintiffs
9
   *s/Eileen Henry*
10 Eileen Henry, Paralegal,
   SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
11