CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguin (Cal. Bar No. 90754)
Peter A. Schey (Cal. Bar No. 58232)
256 S. Occidental Blvd.
Los Angeles, CA  90057
Telephone:  213.388.8693 ext. 104
Facsimile:  213.386.9484
Email: pschey@centerforhumanrights.org
      crholguin@centerforhumanrights.org

H. Michael Clyde (Az. Bar No. 009647)
PERKINS COIE BROWN & BAIN P.A.
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile: 602.648.7000
Email: MClyde@perkinscoie.com

Attorneys for Plaintiffs

*Additional counsel listed on continuation page*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| WE ARE AMERICA/SOMOS AMERICA COALITION OF ARIZONA; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARICOPA COUNTY BOARD OF SUPERVISORS, *et al.*,<br><br>Defendants. | No. CV06-2816-PHX-RCB<br><br>PLAINTIFFS' SUPPLEMENTAL EXHIBITS RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT PT. 1 [EXHIBITS 8-14]<br><br>Hon. Robert C. Broomfield |

/ / /

1

*Plaintiffs counsel continued:*

2

3

RAY VELARDE (TX BAR # 20539950)
LULAC NATIONAL LEGAL ADVISER

4

1216 Montana

5

El Paso, TX 79902
Telephone: (915) 373-6003

6

Email: rayvelarde2003@yahoo.com

7

8

DAN BALLECER (AZ BAR #15616)

9

1095 E. Indian School Road
Phoenix, AZ 85014

10

Telephone: (602) 277-0044
Facsimile: (602) 277-1097

11

Email: dballecer@cox.net

12

13

ANTONIO BUSTAMANTE (AZ BAR #7256)

14

1001 N. Central Avenue Suite 660
Phoenix, AZ 85014

15

Telephone: (602) 277-0044
Facsimile: (602) 277-1097

16

Email: antonio_b@qwest.net

17

18

*Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28

INDEX TO SUPPLEMENTAL EXHIBITS

| No. | Description | Page |
|-----|-------------|------|
| 8 | *Valle del Sol, et al. v. Whiting, et al.*, No. CV 10-1061-PHX-SRB (September 5, 2012) (order granting in part and denying in part motion for preliminary injunction) ................................ | 1 |
| 9 | Deposition of Lydia Guzman, August 31, 2012 ......................... | 14 |
| 10 | Deposition of Sharon Zapata, August 30, 2012........................... | 32 |
| 11 | Joseph M. Arpaio's Responses to Plaintiffs' Supplemental Requests for Admissions, etc., December 16, 2011 ................................ | 75 |
| 12 | Maricopa County Attorney's Responses to Plaintiffs' Supplemental Requests for Admissions, etc., January 9, 2012 ................................ | 85 |
| 13 | Joseph M. Arpaio's Responses to Plaintiffs' First Requests for Admissions, etc., December 16, 2011 ................................ | 95 |
| 14 | Maricopa County Attorney's Responses to Plaintiffs' First Requests for Admissions, etc., January 9, 2012 ................................ | 122 |
| 15 | Maricopa County's Responses to Plaintiffs' Supplemental Requests for Admissions, etc., December 16, 2011 ................................ | 154 |
| 16 | Maricopa County's Responses to Plaintiffs' First Requests for Admissions, etc., December 16, 2011 ................................ | 164 |
| 17 | Declaration of David Lujan, October 26, 2012........................... | 189 |
| 18 | Maricopa County Justice System Annual Activities Report Fiscal Year 2011, *available at* www.maricopa.gov/CriminalJustice/pdf/Annual/FY 2010_2011.pdf. ................................ | 193 |
| 19 | Deposition of LaDawn Haglund, August 31, 2012.................................... | 212 |

20      Maricopa County Annual Business Strategies FY
        2013 Adopted Budget, *available at*
        www.maricopa.gov/Budget/pdf/ABS2013CADOPT
        ED.pdf.................................................................................................238

21      Maricopa County Budget FY 2013, *available at*
        www.maricopa.gov/Budget/pdf/MCBS.PDF .............................................241

22      Declaration of Lydia Guzman, October 29, 2012......................................265

October 29, 2012.                                CENTER FOR HUMAN RIGHTS AND
                                                 CONSTITUTIONAL LAW
                                                 Carlos R. Holguín
                                                 Peter A. Schey

                                                 By s/ Carlos Holguin
                                                    Carlos Holguin
                                                    256 S. Occidental Blvd.
                                                    Los Angeles, CA  90057

                                                 *Attorneys for Plaintiffs*

/ / /

Exhibit 8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valle del Sol, et al., | No. CV 10-1061-PHX-SRB |
| Plaintiffs, | **ORDER** |
| vs. | |
| Michael B. Whiting, et al., | |
| Defendants. | |

At issue is Plaintiffs' Motion for Preliminary Injunction ("4th PI Mot.") (Doc. 723). The Court also resolves Intervenor Defendants Janice K. Brewer and the State of Arizona's ("Defendants") Motion to Strike, Request for Judicial Notice, and Notice Re Evidentiary Hearing on Plaintiffs' Motion for Preliminary Injunction ("Defs.' Mot.") (Doc. 741) and Plaintiffs' Motion for Temporary Restraining Order in Event Injunction in *United States v. Arizona* Is To Be Dissolved ("Pls.' TRO Mot.") (Doc. 717).

## I.    BACKGROUND

This Court's Order of October 8, 2010, which is incorporated fully herein, contains a full account of the facts of this case. (*See* Doc. 447, Oct. 8, 2010, Order at 1-4.) The pertinent details are briefly summarized here. Plaintiffs bring a variety of challenges to Arizona's Senate Bill 1070 ("S.B. 1070"), the "Support Our Law Enforcement and Safe

Neighborhoods Act," which was signed into law by Governor Brewer on April 23, 2010.[1] In this Motion, Plaintiffs seek to enjoin two of S.B. 1070's provisions: Subsection 2(B) and the portion of Section 5 creating Arizona Revised Statutes ("A.R.S.") § 13-2929. (*See* 4th PI Mot. at 1.)

Subsection 2(B) requires law enforcement officers to make a reasonable attempt, when practicable, to determine an individual's immigration status during any lawful stop, detention, or arrest where reasonable suspicion exists that the person is unlawfully present in the United States. A.R.S. § 11-1051(B). Subsection 2(B) also requires that all persons who are arrested have their immigration status verified prior to release. *Id.* Section 5 of S.B. 1070 creates A.R.S. § 13-2929, which provides that it is unlawful for a person who is in violation of a criminal offense to: (1) transport or move or attempt to transport or move an alien in Arizona in furtherance of the alien's unlawful presence in the United States; (2) conceal, harbor, or shield or attempt to conceal, harbor, or shield an alien from detection in Arizona; and (3) encourage or induce an alien to come to or live in Arizona. *Id.* § 13-2929(A)(1)-(3). In order to violate A.R.S. § 13-2929(A), a person must know or recklessly disregard the fact that the alien is unlawfully present in the United States. *Id.* Violation of A.R.S. § 13-2929 is a class 1 misdemeanor. *Id.* § 13-2929(F).

S.B. 1070 had an effective date of July 29, 2010; on July 28, 2010, the Court preliminarily enjoined certain provisions of the law from taking effect in the related case *United States v. Arizona*, CV 10-1413-PHX-SRB. The Court concluded that Subsection 2(B) was preempted by federal immigration law and preliminarily enjoined it from taking effect. *United States v. Arizona*, 703 F. Supp. 2d 980, 993-98, 1008 (D. Ariz. 2010), *aff'd*, 641 F.3d 339 (9th Cir. 2011), *aff'd in part, rev'd in part*, 132 S. Ct. 2492 (2012). The Court rejected the United States' two challenges to A.R.S. § 13-2929, which were that it was an improper regulation of immigration and that it violated the dormant Commerce Clause. *Id.* at 1002-04.

---

[1] In this Order, the Court refers to Senate Bill 1070 and House Bill 2162 collectively as "S.B. 1070," describing the April 23, 2010, enactment as modified by the April 30, 2010, amendments.

No preliminary injunction issued as to A.R.S. § 13-2929. The Ninth Circuit Court of Appeals upheld this Court's conclusions as to Subsection 2(B). *United States v. Arizona*, 641 F.3d at 346-54. Arizona appealed to the United States Supreme Court, and on June 25, 2012, the Supreme Court reversed with respect to Subsection 2(B), ruling that there is "a basic uncertainty about what the law means and how it will be enforced," so "it would be inappropriate to assume [Subsection] 2(B) will be construed in a way that creates a conflict with federal law." *See Arizona v. United States ("Arizona")*, 132 S. Ct. at 2507-10. On August 8, 2012, the Ninth Circuit Court of Appeals issued its mandate, returning the case to this Court for "further proceedings consistent with the opinion and judgment of the Supreme Court." *See United States v. Arizona*, No. 10-16645, 2012 WL 3205612, at *1 (9th Cir. Aug. 8, 2012).

While the United States only challenges S.B. 1070 on the grounds that it is preempted by federal law, Plaintiffs in this case bring a variety of other claims. Pertinent to this Motion, Plaintiffs argue that, in addition to being preempted, Subsection 2(B) also violates the Fourth Amendment and the Equal Protection Clause. (4th PI Mot. at 1-2.) Plaintiffs also make different arguments with respect to A.R.S. § 13-2929. Where the United States only argued that the provision was an improper regulation of immigration and violated the dormant Commerce Clause, Plaintiffs here assert that it is field and conflict preempted by federal immigration law. (*Id.* at 2-3.) Plaintiffs now move for a preliminary injunction as to Subsection 2(B) and A.R.S. § 13-2929. (*Id.* at 1.) Defendants oppose Plaintiffs' Motion. (Doc. 731, Defs.' Resp. to 4th PI Mot. ("Resp.") at 1.)

## II.    LEGAL STANDARDS AND ANALYSIS

### A.    Preliminary Injunction Standard

Plaintiffs seek to preliminarily enjoin the enforcement of Subsection 2(B) of S.B. 1070 and A.R.S. § 13-2929, as enacted by Section 5 of S.B. 1070. (4th PI Mot. at 1.) "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."

4

1   *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

2       **B.      Likelihood of Success on the Merits**

3           **1.      Subsection 2(B)**

4       Plaintiffs seek a preliminary injunction as to Subsection 2(B) on the grounds that it

5   is preempted by federal law and violates the Fourth Amendment and the Equal Protection

6   Clause. (*See* 4th PI Mot. at 1-2.) Intervenor Defendants argue that the Supreme Court's

7   opinion in *Arizona*, 132 S. Ct. at 2507-10, forecloses any further preenforcement challenges

8   to Subsection 2(B). (Resp. at 3; *see also* Hr'g Tr. 23:14-24:5, Aug. 21, 2012 ("Hr'g Tr.").)

9       In *Arizona*, the Supreme Court concluded that Subsection 2(B) was not preempted on

10  its face. 132 S. Ct. at 2510. The Court held,

11          The Federal Government has brought suit against a sovereign State to
            challenge the provision even before the law has gone into effect. There is a
12          basic uncertainty about what the law means and how it will be enforced. At
            this stage, without the benefit of a definitive interpretation from the state
13          courts, it would be inappropriate to assume [Subsection] 2(B) will be
            construed in a way that creates a conflict with federal law.
14

15  *Id.* The Court further stated that "[t]his opinion does not foreclose other preemption and

16  constitutional challenges to the law *as interpreted and applied after it goes into effect*." *Id.*

17  (emphasis added). Plaintiffs argue that the Supreme Court did not have before it the record

18  that exists in this case, demonstrating that Subsection 2(B) "will be implemented in precisely

19  the manner that the Supreme Court deemed unconstitutional." (4th PI Mot. at 1.)

20      While the Supreme Court did state that "it is not clear at this stage and on this record

21  that the verification process would result in a prolonged detention," the Court went on to

22  conclude that it was improper to enjoin Subsection 2(B) "before the state courts had an

23  opportunity to construe it and without some showing that enforcement of the provision in fact

24  conflicts with federal immigration law and its objectives." *Arizona*, 132 S. Ct. at 2509-10.

25  In a pair of cases challenging similar laws enacted in Georgia and Alabama, the Eleventh

26  Circuit Court of Appeals concluded that the Supreme Court's holding in *Arizona* barred

27  preenforcement facial challenges to the laws on preemption and other grounds. *See Ga.*

28  *Latino Alliance for Human Rights ("GLAHR") v. Governor of Ga.*, No. 11-13044, 2012 WL

1    3553612, at *12-13 (11th Cir. Aug. 20, 2012); *United States v. Alabama*, Nos. 11-14532, 11-

2    14674, 2012 WL 3553503, at *8-9 (11th Cir. Aug. 20, 2012).

3         This Court will not ignore the clear direction in the *Arizona* opinion that Subsection

4    2(B) cannot be challenged further on its face before the law takes effect. As the Supreme

5    Court stated, Plaintiffs and the United States may be able to challenge the provision on other

6    preemption and constitutional grounds "as interpreted and applied after it goes into effect."

7    *See Arizona*, 132 S. Ct. at 2510. Plaintiffs have not shown that they are likely to succeed on

8    their facial challenges to Subsection 2(B) because of the conclusions of the Supreme Court

9    in *Arizona*.[2]

10        Plaintiffs also request that the Court certify a question to the Arizona Supreme Court

11   as to whether Subsection 2(B) authorizes additional detention beyond the point a person

12   would otherwise have been released, in order to determine that person's immigration status.

13   (4th PI Mot. at 10 & n.2.) The Arizona Supreme Court has jurisdiction to answer questions

14   certified to it by a federal court if the question "may be determinative of the cause then

15   pending in the certifying court." A.R.S. § 12-1861; *see also In re Price Waterhouse Ltd.*, 46

16   P.3d 408, 409 (Ariz. 2002) (stating that § 12-1861 is jurisdictional).

17        The Court declines to follow the unusual procedure of certifying a question to the state

18   supreme court at this juncture. In the Court's view, such action should be taken sparingly and

19   only where resolution of a particular question of state law is necessary for the progression

20   of a federal case. *See Stollenwerk v. Tri-West Health Care Alliance*, 254 F. App'x 664, 668-

21   69 (9th Cir. 2007) (declining to certify a question to the Arizona Supreme Court where the

22   question was not determinative of the action at bar). At this point, such a question has not

23   presented itself, either in the briefing or through the Court's own analysis and consideration

24   of this issue. As stated at the hearing on Plaintiffs' Motion, Plaintiffs' proposed question

25

26   [2] As a result of this conclusion, Defendants' Motion is rendered moot. The court does not rely

27   on any of the evidence Defendants seek to strike, nor is it necessary to take judicial notice
     of the documents Defendants submit or to conduct an evidentiary hearing. (*See* Defs.' Mot.

28   at 1.) Defendants' Motion is denied as moot.

1    "would not be productive of any answer that [the Court does not] already know." (Hr'g Tr.

2    38:21-22.) Given the Supreme Court's ruling, the Arizona Supreme Court would be faced

3    with the same issue that bars this Court's consideration of Plaintiffs' facial challenges to

4    Subsection 2(B). Without a set of as-applied facts, the Supreme Court has held that it would

5    be speculative to decide as a matter of law that Subsection 2(B) will be enforced in an

6    unconstitutional manner. Therefore, the Court declines to certify a question to the Arizona

7    Supreme Court.

8                        **2.      A.R.S. § 13-2929**

9         Plaintiffs also seek to enjoin A.R.S. § 13-2929, created by a portion of Section 5 of

10   S.B. 1070. (4th PI Mot. at 36-43.) A.R.S. § 13-2929 makes it illegal for a person who is in

11   violation of a criminal offense to: (1) transport or move or attempt to transport or move an

12   alien in Arizona in furtherance of the alien's unlawful presence in the United States; (2)

13   conceal, harbor, or shield or attempt to conceal, harbor, or shield an alien from detection in

14   Arizona; and (3) encourage or induce an alien to come to or live in Arizona. A.R.S. § 13-

15   2929(A)(1)-(3). In order to violate A.R.S. § 13-2929(A), a person must also know or

16   recklessly disregard the fact that the alien is unlawfully present in the United States. *Id.*

17   Plaintiffs argue that A.R.S. § 13-2929 should be enjoined because it is both field and conflict

18   preempted by federal immigration law. (4th PI Mot. at 37.)

19        The Supremacy Clause of the United States Constitution makes federal law "the

20   supreme law of the land." U.S. Const. art. VI, cl. 2. The Supreme Court has consistently

21   ruled that the federal government has broad and exclusive authority to regulate immigration,

22   supported by both enumerated and implied constitutional powers. While holding that the

23   "[p]ower to regulate immigration is unquestionably exclusively a federal power," the

24   Supreme Court concluded that not every state enactment "which in any way deals with aliens

25   is a regulation of immigration and thus per se preempted by this constitutional power,

26   whether latent or exercised." *De Canas v. Bica*, 424 U.S. 351, 354-355 (1976).

27        Federal preemption can be either express or implied. *Gade v. Nat'l Solid Wastes

28   Mgmt. Ass'n*, 505 U.S. 88, 98 (1992). There are two types of implied preemption: field

preemption and conflict preemption. *Id.* Field preemption occurs "[w]hen Congress intends federal law to 'occupy the field.'" *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Conflict preemption describes a situation in which "it is impossible for a private party to comply with both state and federal law" or where the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 372-73 (quotations and citations omitted). An actual, as opposed to hypothetical or potential, conflict must exist for conflict preemption to apply. *Chicanos Por La Causa, Inc. v. Napolitano*, 558 F.3d 856, 863 (9th Cir. 2009), *aff'd sub nom. Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968 (2011).

The Court previously rejected two arguments in favor of invalidating A.R.S. § 13-2929 made by the United States in *United States v. Arizona*, namely that the provision was an improper regulation of immigration and that it violated the dormant Commerce Clause. 703 F. Supp. 2d at 1002-04. The Court also rejected the United States' argument, made in a footnote, that A.R.S. § 13-2929 conflicts with federal immigration law because it does not contain an exception for certain religious groups for contact with volunteer ministers and missionaries. *Id.* at 1002 n.18. Plaintiffs here advance a different set of theories. (*See* 4th PI Mot. at 37-43.) Plaintiffs argue that A.R.S. § 13-2929 "conflicts with the purposes and objectives of the relevant federal law, criminalizes more conduct than its federal counterpart, and imposes additional penalties beyond those approved by the federal scheme." (*Id.* at 37-38.)

In *GLAHR* and *Alabama*, the Eleventh Circuit Court of Appeals examined two analogous provisions and concluded that they were preempted. *See GLAHR*, 2012 WL 3553612, at *8-11; *Alabama*, 2012 WL 3553503, at *9-12. The *GLAHR* court held that the Immigration and Nationality Act ("INA") "provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens." 2012 WL 3553612, at *8. Indeed, pursuant to 8 U.S.C. § 1324, it is a federal crime to transport or move an unlawfully present alien within the United States; to conceal, harbor, or shield an unlawfully present alien from detection; or to encourage or induce a person to "come to,

enter, or reside in the United States" without authorization. *See* 8 U.S.C. § 1324(a)(1)(A)(ii)-(iv). It is also unlawful to conspire or aid in any of these acts. *Id.* § 1324(a)(1)(A)(v). While state officials are authorized to make arrests for these violations of federal law, the federal government retains exclusive jurisdiction to prosecute them, subject to evidentiary rules set forth in the statute. *Id.* §§ 1324(c)-(d), 1329.

Citing *De Canas*, the Eleventh Circuit Court of Appeals concluded, "In the absence of a savings clause permitting state regulation in the field, the inference from these enactments is that the role of the states is limited to arrest for violations of federal law." *GLAHR*, 2012 WL 3553612, at *8. The court in *GLAHR* situated § 1324 within a larger context of federal provisions, finding the overall scheme to be "comprehensive" and illustrative of "an overwhelmingly dominant federal interest in the field." *See id.* Analogizing to the Supreme Court's analysis of S.B. 1070's Section 3, the Eleventh Circuit Court of Appeals concluded that "[t]he INA comprehensively addresses criminal penalties for [the actions described in § 1324] undertaken within the borders of the United States, and a state's attempt to intrude into this area is prohibited because Congress has adopted a calibrated framework within the INA to address this issue." *Id.* at *9. Accordingly, the *GLAHR* court found that Georgia's harboring provision was field preempted. *Id.* The court went on to determine that Georgia's law "presents an obstacle to the execution of the federal statutory scheme and challenges federal supremacy in the realm of immigration," thus concluding that it is also conflict preempted. *Id.* The *GLAHR* court found that federal enforcement priorities conflicted with Georgia state officials' priorities in such a way that the state law was impermissibly in conflict with federal law. *Id.* at *9-10. Following its own reasoning in *GLAHR*, the Eleventh Circuit Court of Appeals came to the same conclusion regarding a very similar provision of Alabama law. *See Alabama*, 2012 WL 3553503, at *9-12.

The Court follows the reasoning of the Eleventh Circuit Court of Appeals with respect to analogous provisions of Georgia and Alabama law and concludes that A.R.S. § 13-2929 is field and conflict preempted. Federal immigration law creates a comprehensive system to regulate the transportation, concealment, movement, or harboring of unlawfully present

9

1    people in the United States. *See* 8 U.S.C. §§ 1324, 1329; *GLAHR*, 2012 WL 3553612, at *8.

2    In crafting federal regulation of these activities, Congress permitted state law enforcement

3    officials to arrest for violations of federal law, but did not allow for state regulation in the

4    field. *See* 8 U.S.C. § 1324(c*)*; *De Canas*, 424 U.S. at 363. Federal law creates a detailed

5    framework governing the actions of people who come to the United States without

6    authorization and the people who help them. *See GLAHR*, 2012 WL 3553612, at *8 (citing

7    8 U.S.C. §§ 1323, 1325, 1327-28). "The federal government has clearly expressed more than

8    a peripheral concern with the entry, movement, and residence of aliens within the United

9    States," leaving no room for state legislation in the field. *See id.* (quotation omitted).

10   Therefore, the Court finds that A.R.S. § 13-2929 is field preempted.

11         A.R.S. § 13-2929 also "presents an obstacle to the execution of the federal statutory

12   scheme and challenges federal supremacy in the realm of immigration." *See id.* at *9. By

13   vesting enforcement discretion with state officials rather than federal officials, A.R.S. § 13-

14   2929 conflicts with federal law and is preempted. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S.

15   396, 427 (2003) ("California seeks to use an iron fist where the President has consistently

16   chosen kid gloves.") . Further, "[p]ermitting the State to impose its own penalties for the

17   federal offenses here would conflict with the careful framework Congress adopted." *Arizona*,

18   132 S. Ct. at 2502. It is immaterial to this analysis that S.B. 1070 might have the same goal

19   as federal immigration law or incorporate some of the same substantive standards: "States

20   may not enter, in any respect, an area the Federal Government has reserved for itself." *See*

21   *id*. For these reasons, A.R.S. § 13-2929 is also conflict preempted. Plaintiffs have shown that

22   they are likely to succeed on the merits of their claim with respect to this provision.

23         **C.    Irreparable Harm**

24         The Supreme Court has repeatedly recognized the "basic doctrine of equity

25   jurisprudence that courts of equity should not act . . . when the moving party has an adequate

26   remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v.*

27   *Harris*, 401 U.S. 37, 43-44 (1971). Thus Plaintiffs have the burden to show that, absent a

28   preliminary injunction, there is a likelihood–not just a possibility–that it will suffer

- 9 -

1    irreparable harm. *Winter*, 555 U.S. at 22.

2          The Ninth Circuit Court of Appeals has stated "'that an alleged constitutional

3    infringement will often alone constitute irreparable harm.'" *Monterey Mech. Co. v. Wilson*,

4    125 F.3d 702, 715 (9th Cir. 1997) (quoting *Assoc. Gen. Contractors of Cal., Inc. v. Coal. for*

5    *Econ. Equal.*, 950 F.2d 1401, 1412 (9th Cir. 1991)). Indeed, if an individual or entity faces

6    the imminent threat of enforcement of a preempted state law and the resulting injury may not

7    be remedied by monetary damages, the individual or entity is likely to suffer irreparable

8    harm. *See Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 381 (1992) (stating that a

9    federal court may properly enjoin "state officers 'who threaten and are about to commence

10   proceedings, either of a civil or criminal nature, to enforce against parties affected [by] an

11   unconstitutional act, violating the Federal Constitution'" (quoting *Ex parte Young*, 209 U.S.

12   123, 156 (1908)); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350,

13   366-67 (1989) (suggesting that irreparable injury is an inherent result of the enforcement of

14   a state law that is preempted on its face); *United States v. Arizona*, 641 F.3d at 366

15   (concluding that the Court did not abuse its discretion in determining that irreparable harm

16   would ensue if Arizona were to implement preempted provisions of S.B. 1070). The Court

17   finds that Plaintiffs are likely to suffer irreparable harm in the absence of an injunction

18   running to A.R.S. § 13-2929 because it is preempted by federal law.

19          **D.      Balance of the Equities and Public Interest**

20          Plaintiffs have the burden to show that the balance of equities tips in their favor and

21   that a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20. "A preliminary

22   injunction is an extraordinary remedy never awarded as of right." *Id*. at 24. "In each case,

23   courts 'must balance the competing claims of injury and must consider the effect on each

24   party of the granting or withholding of the requested relief,'" paying particular attention to

25   the public consequences. *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S.

26   531, 542 (1987)).

27          The Ninth Circuit Court of Appeals has "found that 'it is *clear that it would not be*

28   *equitable or in the public's interest to allow the state . . .* to violate the requirements of

                                          - 10 -

1  federal law, especially when there are no adequate remedies available . . . . In such

2  circumstances, the interest of preserving the Supremacy Clause is paramount.'" *United States*

3  *v. Arizona*, 641 F.3d at 366 (quoting *Cal. Pharmacists Ass'n v. Maxwell-Jolly*, 563 F.3d 847,

4  852-53 (9th Cir. 2009)). Likewise, in this instance, the Court finds that it would not be

5  equitable or in the public interest to permit the enforcement of a preempted provision of state

6  law, such as A.R.S. § 13-2929. Accordingly, Plaintiffs have satisfied this factor. (*See* 4th PI

7  Mot. at 47-49.)

8  **III.    CONCLUSION**

9        Plaintiffs have not shown that they are likely to succeed on their facial challenges to

10  Subsection 2(B) as a result of the Supreme Court's opinion in the related case. Plaintiffs have

11  shown that they are likely to succeed as to the merits of their claim that A.R.S. § 13-2929 is

12  preempted. Plaintiffs have further shown that they are likely to suffer irreparable harm in the

13  absence of an injunction and that the balance of the equities and the public interest favor an

14  injunction as to A.R.S. § 13-2929.[3]

15        **IT IS THEREFORE ORDERED** granting in part and denying in part Plaintiffs'

16  Motion for Preliminary Injunction (Doc. 723).

17        **IT IS FURTHER ORDERED** preliminarily enjoining the enforcement of A.R.S. §

18  13-2929.

19        **IT IS FURTHER ORDERED** denying as moot Intervenor Defendants Janice K.

20  Brewer and the State of Arizona's Motion to Strike, Request for Judicial Notice, and Notice

21  Re Evidentiary Hearing on Plaintiffs' Motion for Preliminary Injunction (Doc. 741).

22  / / /

23  / / /

24  / / /

25

26  [3] Plaintiffs moved for a temporary restraining order in the event the Court did not rule on

27  their Motion for a Preliminary Injunction before the injunction in the federal government's
    case was dissolved. (Pls.' TRO Mot. at 1-2.) The Court's conclusions in this Order render

28  Plaintiffs' TRO Motion moot.

- 11 -

12

1     **IT IS FURTHER ORDERED** denying as moot Plaintiffs' Motion for Temporary

2  Restraining Order in Event Injunction in *United States v. Arizona* Is To Be Dissolved (Doc.

3  717).

4

5     DATED this 5th day of September, 2012.

6

7

8                    Susan R. Bolton

9                 United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 9

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

We Are America, et al.,                  )
                                         )
        Plaintiffs,                      )
                                         ) No.
vs.                                      ) CV06-2816-PHX-RCB
                                         )
Maricopa County Board of                 )
Supervisors, et al.,                     )
                                         )
        Defendants.                      )
                                         )

DEPOSITION OF LYDIA GUZMAN

Phoenix, Arizona
August 31, 2012
10:47 a.m.

REPORTED BY:
TAMARA H. HOWARD, RPR, CRR
Certified Court Reporter
Certificate No. 50156

PREPARED FOR:
ASCII/COPY

2

```
 1                         I N D E X

 2

 3    WITNESS                                      PAGE

 4    LYDIA GUZMAN

 5         Examination by Mr. Casey                    4

 6

 7

 8

 9                     E X H I B I T S

10    Deposition

11    Exhibits:      Description                  Marked

12            (No Exhibits Marked For Identification.)

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Lydia Guzman - August 31, 2012

3

1          DEPOSITION OF LYDIA GUZMAN was taken on

2     August 31, 2012, commencing at 10:47 a.m. at the law

3     offices of Schmitt, Schneck, Smyth, Casey & Even, P.C.,

4     1221 East Osborn Road, Suite 105, Phoenix, Arizona, before

5     TAMARA H. HOWARD, a Certified Court Reporter in the State

6     of Arizona.

7

8     COUNSEL APPEARING:

9          Schmitt, Schneck, Smyth, Casey & Even, P.C.
           By:  Mr. Timothy J. Casey
10         1221 East Osborn Road
           Suite 105
11         Phoenix, Arizona  85014

12         Center for Human Rights and Constitutional Law
           By:  Mr. Carlos R. Holguin
13         256 South Occidental Boulevard
           Los Angeles, California  90057
14

15

16

17

18

19

20

21

22

23

24

25

Lydia Guzman - August 31, 2012

4

1                    LYDIA GUZMAN,

2    a witness herein, having been first duly sworn by the

3    Certified Court Reporter to speak the truth and nothing

4    but the truth, was examined and testified as follows:

5

6                    EXAMINATION

7    BY MR. CASEY:

8        Q.    Please tell me your full name.

9        A.    Lydia Guzman.

10       Q.    You and I have met before, have we not?

11       A.    Yes.

12       Q.    We met on the Melendez v. Arpaio case?

13       A.    That's correct.

14       Q.    In the Melendez v. Arpaio case, you were a

15   representative of Somos America?

16       A.    That is correct.

17       Q.    And you gave a deposition about Somos America and

18   its role during that case?

19       A.    That's correct.

20       Q.    I want to go over a few things.

21             What is Somos America?

22       A.    Somos America is a coalition of organizations

23   that come together to educate the community, to empower

24   the community, and to talk or engage the community.

25       Q.    Is it organized legally as like a corporation, a

5

1   non-profit, anything like that?

2        A.   We did file something with the Corporation

3   Commission and we are in the process of trying to obtain

4   a non-profit.

5        Q.   Right now is it still a loose association of

6   like-minded people?

7        A.   That's correct.

8        Q.   How do you generate revenues?

9        A.   Well, we really don't generate revenues.  Anytime

10  we have an event where there are going to be some

11  expenses, we do, like, pass the hat.  A small little

12  fundraiser.

13       Q.   Does Somos America have a taxpayer identification

14  number?

15       A.   No.

16       Q.   Does it own any real estate in Maricopa County?

17       A.   No.

18       Q.   Does it own any buildings at all in Maricopa

19  County?

20       A.   No.

21       Q.   Does it pay any property taxes in Maricopa

22  County?

23       A.   No.

24       Q.   And right now, as I understand it, you are trying

25  to obtain some type of tax-exempt status?

6

1      A.    Yes.

2      Q.    Are you doing that with the IRS as well?

3      A.    We obtained a lawyer so that we are --

4      Q.    What is your role with Somos America?

5      A.    I currently sit on the board of directors and I'm

6  a past president as well as one of the founding officers.

7      Q.    When was Somos America founded?

8      A.    It was founded in, I believe it was, 2005, 2006.

9      Q.    And how long were you president?

10     A.    I was president for two-and-a-half years.

11     Q.    What years were those?

12     A.    If I remember correctly, they were somewhere in

13  the time of 2009 and 2010.

14     Q.    Have you been on the board of directors since

15  Somos America was founded?

16     A.    That's correct.

17     Q.    So since 2005 or so?

18     A.    That's correct.

19     Q.    What is the organizational mission of Somos

20  America?

21     A.    Oh, I don't know the exact words, but our purpose

22  is to empower the community, to educate the community, to

23  engage the community with causes like the board of

24  registration, specific engagements.  We do forums to

25  educate the community about what's going on.

7

1       Q.   How has Somos America itself as an organization

2   suffered injury because of the Maricopa County attorney or

3   the Maricopa County Sheriff's Office deciding to apply

4   Arizona's criminal conspiracy statute to the Arizona human

5   smuggling law?

6       A.   Whenever there's these types of arrests, you

7   know, what we do is we obtain a list of the folks that are

8   arrested and we try to have volunteers go and interview

9   some of the folks in the jails.

10              We also work collaboratively with different

11   attorneys, the consulate.  We share that information with

12   the consulate's office.

13       Q.   What consulate's office?

14       A.   Sometimes the groups that are arrested come from

15   Guatemala.  Sometimes they come from Mexico.  So we work

16   with them.

17              And the way that we are affected is -- I

18   mean, we could be doing -- we could be doing other stuff,

19   you know, the stuff that I described earlier.

20       Q.   So Somos America has been affected because

21   instead of doing empowerment with the community, educating

22   the community, and --

23              And what was the third thing you do?

24       A.   We educate, we empower, we engage them.

25       Q.   Let me ask my question again since I have got the

8

1    third thing.

2                 Are you telling me, Ms. Guzman, that

3    essentially the injury to Somos America is that your

4    volunteers now focus their volunteer time and attention on

5    people that are arrested, detained, and charged with

6    conspiracy to violate human smuggling instead of engaging

7    in empowerment, educating, and engaging the community?

8        A.    That's right.

9        Q.    Have you at Somos America -- and you understand

10   you are here today for Somos America?

11       A.    That's right.

12       Q.    So when I say "have you," I'm talking about Somos

13   America.

14                 Has Somos America been forced to divert any

15   financial resources because of what my clients are doing?

16       A.    No, not financial resources, but definitely loss

17   of volunteer resources, and those are very precious to us.

18       Q.    Has Somos America had to stop providing any

19   charitable assistance to anyone because of my client's

20   policies?

21       A.    Things have definitely slowed.  I know that in

22   the past when we do a civic engagement or when we do

23   things where we have to pass the hat, like, voter

24   registration, we have to apply it to a specific community.

25                 We also a couple of times would come across

9

1    families that were in need and we would help them out

2    maybe if it had to do with buying groceries or something

3    simple.

4            And because of this, a lot of that has

5    stopped.  Our volunteers are spread out so thin right now

6    and this is --

7    Q.   Let me break it down a little bit more and see if

8    I can be precise.

9            Has Somos America changed its delivery of

10   any social services to migrants as a result of what my

11   clients are doing?

12   A.   You know, Somos America has slowed down in the

13   forums that we would do in the community.  You know, some

14   of the things that we normally would schedule more -- we

15   would like to schedule more forums, but we have had to

16   tone that back, because we don't have the volunteers to

17   help us put those together anymore.

18   Q.   And I appreciate what you are telling me.

19           Other than slowing down, the empowering the

20   community, the educating the community, and engaging the

21   community, has my client's decision to apply the

22   conspiracy statute to the criminal human smuggling statute

23   changed in any way the actual social services that Somos

24   America has provided to migrants?

25   A.   Well, I'm sure that some of our members, because

10

1    we are a coalition of organizations and some of our

2    members do provide social services, I'm absolutely sure

3    that -- because I engage everybody within this in trying

4    to get some help, and I'm sure that they are affected as

5    well.

6        Q.   I understand that.

7             As you sit here today, are you aware of any

8    change in the level of your members of Somos America

9    providing social services because of what my clients are

10   doing in this case?

11       A.   Yes.  I know as an organization Somos America has

12   been affected because we can't do what we used to do.  We

13   can't do a lot of -- we would like to have more of our

14   members to go out and do -- be more involved in -- on the

15   voter registration efforts that are taking place here in

16   town.

17            All of the forums that have to do with --

18   you know, everything has to be place, because when the

19   sheriff comes up with a press release saying that he did

20   another arrest like this, then we immobilize to see what

21   we can do to respond to this.

22       Q.   Does Somos America spend money on social services

23   to migrants?

24       A.   Not as a coalition.

25       Q.   Does Somos America spend money on humanitarian

11

1    assistance to migrants?

2        A.    No.  Not cash money, no.

3        Q.    Does Somos America provide some sort of

4    charitable assistance, financial charitable assistance to

5    migrants?

6        A.    Can you repeat that question?

7        Q.    Sure.

8              Does Somos America provide financial

9    charitable assistance to migrants?

10       A.    I'm not sure if this is -- if this is what you

11   are asking, but a couple of times through one of our

12   member organizations they ask for things like shoes.  So,

13   you know, we do shoe drives.  We do specific types of

14   drives where they ask.  Not monetarily.  Just donation.

15       Q.    Do you believe that Somos America's

16   organizational mission has been frustrated because of my

17   clients applying the conspiracy statute to the human

18   smuggling statute?

19       A.    Oh, very much so.

20       Q.    Explain to me how so.

21       A.    When we mobilize a response to these types of

22   arrests, we have to engage the assistance of lawyers that

23   are members of our coalition and the lawyers put

24   themselves out and do volunteer -- they have meetings

25   with, like, the different consulates, and the lawyers

12

1    often, as members of our coalition, offer to assist in

2    interviewing some of the folks that are arrested when they

3    can be doing stuff to help our coalition on some of our

4    other things with our mission.

5        Q.    Is Danny Ortega part of your coalition?

6        A.    That's correct.

7        Q.    I was just at Danny's office the other week in a

8    deposition.

9              Is Danny one of the types of lawyers that

10   will help you folks at Somos America?

11       A.    Yes.

12       Q.    So what you are saying is that Danny Ortega as a

13   member, instead of helping Somos empower the community,

14   educate the community, and engage the community, will be

15   spending his time on legal matters associated with

16   applying the criminal statute to the human smuggling

17   statute?

18       A.    That's correct, along with some of our other

19   members as well.

20       Q.    Other than your volunteers being involved with

21   individual people charged with conspiracy, how else is

22   the frustration of the organizational mission occurring?

23       A.    We are a volunteer-based organization.  And so

24   when you ask -- when we ask for volunteers to do

25   something, it's very difficult for us to also ask them to

13

1    still participate in some of our other activities we would

2    like to do with the empowerment, the civic engagement with

3    voter registration drives or even forums, community

4    forums.

5              So asking them to do that on top of other

6    things is -- has become quite burdensome on our

7    volunteers.  So we have had to scale back, and this is the

8    frustration that we feel that we are responding to this.

9        Q.   Have you yourself ever visited anyone in the

10   Maricopa County jail that's been charged with conspiracy

11   to violate the human smuggling statute?

12       A.   Yes, I have.

13       Q.   How many times have you done that?

14       A.   Twice.

15       Q.   Why did you do that?

16       A.   Well, I wanted to see how they were treated.  I

17   wanted to hear firsthand.  I wanted them to know what they

18   were facing.

19              And on another occasion, I was there -- I'm

20   not sure if I can talk too much about it, but I was there

21   when we first engaged in this lawsuit to talk to some of

22   the folks that we asked them to be in it.

23       Q.   Okay.  Thank you.

24              You said you wanted to learn how they were

25   treated.  How were they treated?

14

1      A.    They were treated fairly.  They were scared,

2  though.  They were confused and they didn't understand.

3      Q.    They didn't understand what?

4      A.    That they were facing criminal charges, that they

5  were going to be charged with a crime when they are just

6  victims of this whole economic mess.

7      Q.    Can you identify for me what services Somos

8  America itself provides to migrants that are detained or

9  incarcerated in Maricopa County jails?

10      A.    I think I would like that question more specific.

11  Folks that are facing this situation?

12      Q.    Yes.  That's specifically all I'm talking about.

13  Not about anything else involving Arpaio and crime

14  suppression sweeps, operations.

15            Solely about migrants detained or

16  incarcerated in Maricopa County jails because they have

17  been charged with conspiracy to violate the human

18  smuggling statute, and specifically what resources has

19  the organization delivered to those migrants?

20      A.    Aside from the visits, you know, if it's not

21  myself, other members of the coalition, it's trying to

22  offer a hand with respect to who can we contact?  Maybe a

23  family member maybe back in their country or finding out

24  what country they are from so we can notify the consulate.

25  Obtaining that type of information.  That's one of the

15

1    services.

2              Another type of service is some of the

3    members of our coalition are faith leaders and they go to

4    offer support.  Just, you know, emotional support.  A

5    little faith sometimes helps in areas like this.

6              And I think for the most part the rest of

7    the services that we offer to some of those folks is just

8    making sure that they -- we ask them questions, for

9    example, if there are any medical needs that they need, if

10   they are diabetic or if they need some sort of medication

11   so we can bring that to the attention of the consulate's

12   office so the consulate can talk to the jail personnel.

13             MR. CASEY:  I promised I wasn't going to be

14   very long.  I'm sorry to bring you down for this, but I

15   needed to ask you those questions, but that's all I have

16   for you.

17             And because you and I went over much longer

18   in the Melendez case the history about Somos America, I

19   have asked you everything I need for this.

20             Thank you very much for your time and

21   patience.

22             The court reporter, you are familiar enough,

23   will type this up in a booklet form.  Before you and your

24   lawyer leave, you need to let her know whether you want to

25   read and sign it or waive it.  That's entirely up to you.

Lydia Guzman - August 31, 2012

16

1    She's good, but she might makes mistakes.

2                    MR. HOLGUIN:   We would like to read and

3    sign.

4                    (Deposition concluded at 11:07 a.m.)

5

6

7

8                                LYDIA GUZMAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Lydia Guzman - August 31, 2012

17

```
 1   STATE OF ARIZONA    )
                         ) ss.
 2   COUNTY OF MARICOPA  )

 3        I HEREBY CERTIFY that the foregoing deposition was

 4   taken by me pursuant to Notice; that I was then and there

 5   a Certified Reporter for the State of Arizona and, by

 6   virtue thereof, authorized to administer an oath; that the

 7   witness before testifying was duly sworn by me to testify

 8   to the whole truth and nothing but the truth; that the

 9   questions propounded by counsel and the answers of the

10   witness thereto were taken down by me in shorthand and

11   thereafter transcribed through computer-aided

12   transcription under my direction, and that the foregoing

13   typewritten pages contain a full, true, and accurate

14   transcript of all proceedings had upon the taking of said

15   deposition, all done to the best of my skill and ability.

16             I FURTHER CERTIFY that I am in no way

17   related to nor employed by any of the parties hereto, nor

18   am I in any way interested in the outcome hereof.

19             DATED at Phoenix, Arizona, this 6th day of

20   September, 2012.

21

22                       TAMARA H. HOWARD
                         Certified Reporter
23                       Certificate No. 50156

24

25
```

Exhibit 10

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF ARIZONA

We Are America, et al.,          )
                                 )
     Plaintiffs,                 )
                                 )
vs.                              ) No.
                                 ) CV06-2816-PHX-RCB
Maricopa County Board of         )
Supervisors, et al.,             )
                                 )
     Defendants.                 )
                                 )

DEPOSITION OF SHARON ZAPATA

Phoenix, Arizona
August 30, 2012
2:09 p.m.

REPORTED BY:
TAMARA H. HOWARD, RPR, CRR
Certified Court Reporter
Certificate No. 50156

PREPARED FOR:
ASCII/COPY

Sharon Zapata - August 30, 2012

2

1                          I N D E X

2

3    WITNESS                                      PAGE

4    SHARON ZAPATA

5          Examination by Mr. Casey                4

6          Examination by Mr. Holguin             33

7          Further Examination by Mr. Casey       39

8

9

10                      E X H I B I T S
     Deposition
11   Exhibits:      Description                 Marked

12              (No Exhibits Marked For Identification.)

13

14

15

16

17

18

19

20

21

22

23

24

25

Sharon Zapata - August 30, 2012

3

1                     DEPOSITION OF SHARON ZAPATA was taken on

2      August 30, 2012, commencing at 2:09 p.m. at the law

3      offices of Schmitt, Schneck, Smyth, Casey & Even, P.C.,

4      1221 East Osborn Road, Suite 105, Phoenix, Arizona, before

5      TAMARA H. HOWARD, a Certified Court Reporter in the State

6      of Arizona.

7

8      COUNSEL APPEARING:

9              Schmitt, Schneck, Smyth, Casey & Even, P.C.
               By:  Mr. Timothy J. Casey
10             1221 East Osborn Road
               Suite 105
11             Phoenix, Arizona  85014

12             Center for Human Rights and Constitutional Law
               By:  Mr. Carlos R. Holguin
13             256 South Occidental Boulevard
               Los Angeles, California  90057
14

15

16

17

18

19

20

21

22

23

24

25

Sharon Zapata - August 30, 2012

4

1                     SHARON ZAPATA,

2    a witness herein, having been first duly sworn by the

3    Certified Court Reporter to speak the truth and nothing

4    but the truth, was examined and testified as follows:

5

6                     EXAMINATION

7    BY MR. CASEY:

8        Q.    Please tell us your full name.

9        A.    Sharon Zapata, Z-A-P-A-T-A.

10       Q.    Ma'am, my understanding is that you are here

11   today as a representative of an organization entitled

12   Arizona Hispanic Community Forum?

13       A.    Yes, sir.

14       Q.    And you understand Arizona Hispanic Community

15   Forum is a named plaintiff in the lawsuit that we are

16   addressing here today?

17       A.    Yes, sir.

18       Q.    If I just call it The Forum --

19             What do you refer to it as?

20       A.    The Forum is fine.

21       Q.    Okay.  And Ms. Zapata --

22             Am I saying it correctly?

23       A.    Yes.

24       Q.    -- have you ever had your deposition taken

25   before?

5

1     A.    I have.

2     Q.    In what context?

3     A.    I was a witness in two different divorce

4  proceedings.

5     Q.    Your own divorce proceeding?

6     A.    No, sir.

7     Q.    Let me cover some of the ground rules with you

8  that your lawyer may have talked to you about them

9  beforehand.

10          We have a great court reporter here, but she

11  is only human, and she is taking down everything that you

12  and I will say or your lawyer will say verbatim.

13          Although, she's great and very talented, she

14  can only take down one of us talking at a time.  So you

15  will need to let me finish my question, even though you

16  are going to know where I'm going with it, before you

17  begin your answer; is that agreeable?

18     A.    Yes.

19     Q.    And I will need to let you finish your answer

20  before I ask you another question; fair?

21     A.    Fair.

22     Q.    The other thing, and you are doing great so far,

23  is you are using word responses.  In a normal conversation

24  I may fully understand if you give me an uh-huh or a

25  huh-uh, but it won't come across as an answer in the

6

1    record we have.

2              So if I say, "Is that a yes?  Was that a

3    no?" I'm not doing that to badger you, ma'am.  I'm simply

4    getting a clear record.

5        A.   I understand.

6        Q.   If at any time you do not understand my question,

7    just let me know, ask me to rephrase it, repeat it, and I

8    will be glad to do that.  Okay?

9        A.   Okay.

10       Q.   If for whatever reason I ask you a question and

11   you give me an answer, I'm going to assume you understood

12   my question; is that fair to you?

13       A.   Yes.

14       Q.   Let me learn a little bit about The Forum.

15             What type of organization is The Forum?

16       A.   The Forum is an advocacy organization.  We have

17   been in place for 25 years.  This year was our 25th

18   anniversary.

19       Q.   Congratulations.

20       A.   Thank you.

21             We work as an advocacy group promoting

22   empowerment within the community for community members,

23   but specifically Latino community members having to do

24   with, as I said empowerment, as well as education.  So

25   those are our primary goals.

7

1      Q.   Is The Forum a corporation?  Is it a partnership?

2  Is it a limited liability company?  Is it a non-profit?

3  What type of legal status do you understand it has?

4      A.   Actually, none of the above.  It is a forum.  It

5  brings members together to speak about issues and then to

6  make decisions on whether we want to act on those issues.

7      Q.   I am going to put words in your mouth and you

8  tell me if it's fair.

9           Is it correct for me to characterize The

10  Forum as a loose association of people or organizations

11  that have like-minded interests?

12      A.   Yes.  And specifically, individuals.

13      Q.   The Forum is not a corporation; correct?

14      A.   It is not.

15      Q.   It is not a non-profit?

16      A.   It is not.

17      Q.   It is not registered, for example, with the

18  Arizona Secretary of State's office?

19      A.   Correct, it is not.

20      Q.   It is not registered, for example, with the

21  Arizona Corporation Commission?

22      A.   It is not.

23      Q.   How does The Forum obtain revenue or money?

24      A.   We do not.  We do have membership dues that we

25  require so that you can place a vote, but that dues is

Sharon Zapata - August 30, 2012

8

1    really used to pay for our website or -- it's a very small

2    amount.

3        Q.    Does The Forum have a website?

4        A.    We do.

5        Q.    What is that website address?

6        A.    It's AZH -- you are testing me -- CF dot org.

7        Q.    Now, I will tell you I did some research on this.

8    You may want to check, because if I entered that

9    correctly, I came up with a website that appeared to have

10   Chinese print on it.

11       A.    It may be that the website is down, because I do

12   not believe that the administrator has probably hit it for

13   a while.

14       Q.    It appeared to have a screen of a very idealistic

15   American countryside, but then it appeared to have what

16   looked like to me as Chinese letters.

17       A.    Thank you for telling me.

18       Q.    Does The Forum employ anybody?

19       A.    We do not.

20       Q.    Is it all volunteer workers?

21       A.    It is all volunteer, yes.

22       Q.    Do you have a full-time job?

23       A.    I do not.

24       Q.    Are you employed part-time?

25       A.    I am currently now employed part-time.

9

1    Q.    Who are you employed by?

2    A.    Telesoft Corp.

3    Q.    What do you do there?

4    A.    I'm the manager of the mobility services

5  department.

6    Q.    And when you say "part-time," explain how many

7  hours a week you work in that business?

8    A.    I would say approximately 20 to 25 maybe.  It

9  varies.

10    Q.    What do you do with them?

11    A.    I manage a team of six people who provide

12  mobility service answers to customers.

13    Q.    I think I know the answer to this, so bear with

14  me.

15          Does The Forum have, to your knowledge, a

16  taxpayer identification number?

17    A.    We do not.

18    Q.    Does The Forum own any real estate in Maricopa

19  County?

20    A.    We do not.

21    Q.    Does The Forum own any buildings in Maricopa

22  County?

23    A.    We do not.

24    Q.    Does The Forum rent any buildings in Maricopa

25  County?

10

1      A.    No, sir.

2      Q.    Does The Forum pay any property taxes in Maricopa

3    County?

4      A.    No, sir.

5      Q.    What is your role with The Forum that you are

6    here today -- I mean, I know you are a representative

7    today, but what's your general role with The Forum?

8      A.    I'm currently the president of The Forum.

9      Q.    Congratulations on that.

10            That means you do all the work; is that

11    correct?

12     A.    Correct.

13     Q.    How long have you been president?

14     A.    As of September it will be four years.

15     Q.    Who are the other officers of The Forum?

16     A.    We have three other officers.  We have a vice

17    president, a treasurer, and a secretary.

18     Q.    Who is the vice president currently?

19     A.    Her name is Linda Brown.

20     Q.    And who is the treasurer?

21     A.    Greg Mares.

22     Q.    How do you spell that last name?

23     A.    M-A-R-E-S.

24     Q.    And who is currently the secretary?

25     A.    The secretary is Polo Martinez.

Sharon Zapata - August 30, 2012

11

1      Q.    And could you spell the first name?

2      A.    P-O-L-O.

3      Q.    Are you bilingual?

4      A.    Yes.

5      Q.    How does someone become a member of The Forum?

6      A.    We have open membership, and it's usually through

7   invitation by other members.

8      Q.    How many members currently does The Forum have?

9      A.    Currently today, paid membership is somewhere

10   between 27 and 35.

11      Q.    Did you say 27 to 35?

12      A.    Yes, paid members.

13      Q.    And are the dues structured in any particular

14   way?

15      A.    They are due every September.

16      Q.    Once a year?

17      A.    Yes.

18      Q.    And how much are the dues per member?

19      A.    They are now $25 per member.

20      Q.    As the president for The Forum, what is your

21   2012 operating budget?

22      A.    We do not have an operating budget.

23      Q.    Have you ever, during your four years as

24   president, had an operating budget?

25      A.    No, sir.

12

1    Q.   So each one of these 27 to 35 paid members will

2  pay per year $25 to contribute to The Forum?

3    A.   Currently, yes.

4    Q.   What is the purpose for that $25 contribution to

5  The Forum?

6    A.   If there are, you know, costs as far as a

7  website, costs that would be -- where we would donate to

8  different scholarship funds.  And then we also are members

9  of other coalitions.  So they are forced to pay those

10  types of dues.

11    Q.   Are the members individual persons like yourself?

12    A.   Yes.

13    Q.   Are there any corporations that are members?

14    A.   No, sir.

15    Q.   Are there any non-profits that are members?

16    A.   No, sir.

17    Q.   Are there any, what I will call loosely,

18  organizational members?

19    A.   No, sir.

20    Q.   Any clubs that are members?

21    A.   No, sir.

22    Q.   So far we have gone through eight months of 2012.

23         In the first eight months of 2012, can you

24  tell me what The Forum has spent money on?

25    A.   I believe, to my recollection, that we did spend

13

1    money on a renewal of our website.   I would say

2    approximately $500 to scholarships.   So students who were

3    in need to complete tuition would come to us.   And maybe

4    less than another $100 to join other coalitions or

5    organizations.

6        Q.    In 2012, the first eight months so far, has The

7    Forum spent any money delivering services to incarcerated

8    migrants?

9        A.    No, sir.

10       Q.    In the first eight months of 2012, has The Forum

11   delivered any social services of any type to migrants?

12       A.    Yes, sir.

13       Q.    Then let me rephrase the question.

14              Has The Forum spent any money in the first

15   eight months of 2012 to deliver social services to any

16   migrants?

17       A.    No, sir.

18       Q.    Has The Forum spent any money to deliver any

19   humanitarian assistance to migrants in the first eight

20   months of 2012?

21       A.    No, sir.

22       Q.    Let me go back just a little bit and ask you

23   broadly:   During the four years of your presidency of The

24   Forum, has The Forum spent any money delivering social

25   services and humanitarian assistance to migrants?

14

1      A.    No, sir.

2      Q.    In the four years of your presidency, has The

3   Forum spent any money delivering services to incarcerated

4   migrants?

5      A.    No, sir.

6      Q.    What precisely is the organizational mission of

7   The Forum?

8      A.    Specifically, again, to advocate on behalf of the

9   Latino community specifically dealing with issues in the

10  community of empowerment as well as education.

11     Q.    And when you say advocate for issues, who makes

12  the decisions about what issues are worthy of your

13  organization advocating for?

14     A.    All of the paid membership.

15     Q.    Is it done by a vote?  Is it done by consensus?

16  How is it done?

17     A.    It is done by a vote and we do follow Robert's

18  Rules.

19     Q.    Now, when you mention you do things involving

20  empowerment, that's a very broad term.

21            What do you mean when you say you do things

22  as an organization for the empowerment particularly of

23  Latino members of our community?

24     A.    Specifically, during my presidency, we have

25  addressed the issue or any issue that comes to our

15

1    attention that involves migrants.

2        Q.   Your lawyer may make an objection if he believes

3    there's something wrong with what I'm saying, but in this

4    case, do you understand that at least one of the central

5    issues is Maricopa County officials applying a criminal

6    statute, a criminal conspiracy statute, to an Arizona

7    human smuggling statute?  Do you understand that?

8        A.   Yes.

9        Q.   Tell me what is The Forum's position about

10   whether it is good policy or bad policy to apply that

11   conspiracy statute to the human smuggling statute?

12       A.   We unanimously as a forum disagree.

13       Q.   Have you ever heard the expression, "What is your

14   dog in the fight?"  Have you ever heard anything like

15   that?

16       A.   I have not.

17       Q.   When I grew up and someone said, "I don't have a

18   dog in the fight," I don't have an interest, I don't have

19   any vested imminent active interest in what's going on.

20            I am trying to understand what specifically

21   is the dog that you have in the fight about whether or not

22   a criminal conspiracy statute ever is applied to the human

23   smuggling statute?

24       A.   Well, first of all, as I said, we work with the

25   immigrant community and, obviously and naturally in many

16

1    times, we have extremely close relationships either by

2    blood or by just being fellow community members who are

3    much like us and have the same belief systems, et cetera.

4                And then it's -- you know, I would say the

5    biggest is just the issue of human rights and justice.

6        Q.   So do I understand it correctly that The Forum

7    has taken the position as a matter of human rights and

8    justice it's bad policy to apply the conspiracy statute to

9    the human smuggling statute?

10       A.   Yes.

11       Q.   Have you ever been charged with conspiracy to

12   violate the human smuggling statute?

13       A.   No, sir.

14       Q.   To the best of your knowledge, has any paid

15   member of The Forum ever been charged with conspiracy to

16   violate the human smuggling statute?

17       A.   No, sir.

18       Q.   How do you believe The Forum has suffered an

19   injury because of what my clients are doing in applying

20   the Arizona criminal conspiracy statute to the Arizona

21   human smuggling statute?

22       A.   It has deterred us and limited us from helping

23   that particular -- those people from that community who we

24   were able to assist previously, and not through money, et

25   cetera, but through recommending resources, et cetera,

1    and, you know, also we spent time visiting -- as an

2    organization, as a forum, we had members who visited

3    incarcerated persons, et cetera.  So that's definitely

4    limited that function of the organization.

5         Q.   You have told me that, to your knowledge, during

6    the past four years, The Forum has not spent any money

7    relative to migrants; is that right?

8         A.   That is correct.

9         Q.   So it's a true statement, is it not, that The

10   Forum has not been forced to divert any financial

11   resources; true?

12        A.   That is true.

13        Q.   What you are telling me is that somehow what my

14   clients have done are causing you folks to spend more time

15   referring migrants to other organizations?

16        A.   Well, we are actually not.  Because of this, we

17   haven't been in a position to be able to provide resource

18   information.

19        Q.   Explain for me how that is.  I don't understand.

20        A.   So because of the number of persons who are

21   arrested, incarcerated, or because of the fear of victims

22   coming out to say "I need assistance," we have not been

23   able to provide those types of resources.

24                  So in referring migrant persons to food

25   banks, for additional help so that they can maintain their

18

1    dignity.

2         Q.    So this policy has prevented you from, and your

3    members from, referring migrants to such places as a food

4    bank, for instance?

5         A.    That would be one example, yes.

6         Q.    Can you give me other examples of other things

7    that you have not been able to do?

8         A.    As it relates to -- can you be more specific?

9         Q.    Sure.

10               You mentioned that your mission has been

11   limited, did I understand that correctly?

12        A.    Yes.

13        Q.    What I'm trying to find out is:  How has the

14   mission of The Forum been limited by what my clients are

15   doing?  And you gave me one example that for whatever

16   reason, and we will talk about that, you have been unable

17   to refer migrants or other people to food banks to

18   maintain their dignity; am I correct so far?

19        A.    Correct.

20        Q.    What are the other limitations on The Forum's

21   mission that have occurred as a result of what my clients

22   are doing?

23        A.    It's going to sound broad, but definitely just to

24   be able to provide resource-type information.  And so when

25   I say that, to be a little more specific, is we felt

Sharon Zapata - August 30, 2012

19

1    comfortable and able to provide information to family

2    members of the incarcerated.

3              So we can provide information as it related

4    to children's education, different programs that were

5    specific for children.  And just to provide information

6    especially if they were U.S. citizen children or other

7    U.S. citizen members of families.

8        Q.   How is it that my client's application of the

9    Arizona criminal conspiracy statute to the Arizona human

10   smuggling statute prevents you from providing resources of

11   certain types of information, such as children's

12   education?

13       A.   Because of access to the persons who are directly

14   being affected or those persons who have -- who are

15   sitting in the jails and/or prisons.  So we haven't had as

16   free access to those individuals.

17       Q.   Now, are you saying you have no access

18   whatsoever?

19       A.   No, I did not say that.

20       Q.   What you are saying is your access somehow has

21   been reduced?

22       A.   It has been reduced and we feel -- the feeling is

23   that it has been limited because of these types of

24   incarcerations.

25       Q.   In the four years you have been president of The

Sharon Zapata - August 30, 2012

20

1  Forum, have you actually gone to any Maricopa County jail

2  and attempted to provide any advise-giving or

3  information-giving?

4      A.   No, sir.

5      Q.   But do I understand that you are telling me that

6  some of your 27 to 35 paid members have?

7      A.   Yes, sir.

8      Q.   And what you are telling me is that some of those

9  members have not had the same level of access to

10  incarcerated migrants as they have had in the past?

11      A.   Correct.

12      Q.   And how, in your judgment, Ms. Zapata, is that

13  related to my clients applying the conspiracy statute to

14  the human smuggling statute?

15      A.   First of all, as I said, we do not agree with the

16  statute.

17           Secondly, it is of our, as an organization

18  through a vote, it is of our -- it's a statement actually

19  that we make often, is that we do not agree that it is

20  part of local law enforcement's position to be involved in

21  something that should be a federal issue and that is

22  regulated by federal enforcement.

23           And so because of that, we have had to

24  divert and change with the oncoming of SB 1070, et cetera,

25  we have had to divert some of our internal resource to

21

1    work on other issues that just seem to continue to grow

2    out of legislation that has been passed like this.

3        Q.   And let me share with you that I believe one

4    thing that's great about our country is we can have

5    differences of opinions and not lob grenades at each

6    other.

7                But one of the things I'm trying to

8    understand is how have my client's application of one

9    statute to another statute prevented your members from

10   visiting people in a Maricopa County jail as frequently as

11   they desire to?

12       A.   Because we have a smaller membership, we had to

13   re-adjust many of those resources.  And they are all

14   volunteer.  So we have used their time in working on other

15   issues that affect the migrant community and that have

16   been anti-migrant.

17       Q.   For example, what you told me was SB 1070 has

18   diverted the attention of your members?

19       A.   It's one example, yes.

20       Q.   And I appreciate that, and bear with me on this,

21   Ms. Zapata, how has my client's application of the

22   conspiracy statute to the human smuggling statute

23   prevented your members from seeing people, migrants, in

24   the Maricopa County jail?

25       A.   I will answer exactly the same way again, because

22

1    we have had to change some of our re- -- we have had to

2    move our resources into other areas that we feel are

3    anti-migrant.  We have not been able to continue to spend

4    the time that we feel we had spent in the past and we

5    would potentially continue to spend working with these

6    individuals.

7         Q.   Can you give me any number of times during the

8    course of your presidency that members have gone to the

9    Maricopa County jail and tried to provide some sort of

10   advice, render service to migrants charged with conspiracy

11   to commit human smuggling?

12        A.   My understanding from the individuals who have

13   visited, I would say definitely more than 50 and I guess I

14   would say less than 100.

15        Q.   Who are those individuals that provided you that

16   information that led to your understanding?

17        A.   The two persons that I can recall sharing that

18   information, the first one is Roberto Reveles and the

19   second, then, would be Irene Chavez.

20        Q.   What do you remember Mr. Reveles telling you?

21        A.   About several times going into the Fourth Avenue

22   jail and visiting with incarcerated persons there and

23   trying to answer their questions.  Many of them being

24   unable to speak English.

25             So answering their questions, making sure

23

1    they understood why they were there, understand the

2    treatment that they were receiving or not receiving.

3              And then much of it being the person

4    incarcerated, very worried about their family members that

5    were at home and trying to make sure that communications

6    were sent to those family members.

7        Q.    The other person, Irene --

8        A.    Chavez.

9        Q.    What did Ms. Chavez tell you?

10       A.    Much of the same.  Except the majority of her

11   visits were with female persons, and so some of those,

12   just because differences from male/female, there were

13   slight differences.

14       Q.    Did Ms. Chavez tell you that because of anything

15   my clients were doing in applying the conspiracy statute

16   to the human smuggling statute that they were unable to

17   fully provide the information they wanted to the migrant

18   person incarcerated?

19       A.    No, sir.

20       Q.    Did Roberto --

21       A.    Reveles.

22       Q.    Did Mr. Reveles share with you that anything my

23   clients were doing, applying the conspiracy statute to the

24   human smuggling statute, was in any way frustrating his

25   ability to relay information to incarcerated migrants?

24

1       A.    Yes.

2       Q.    What did he share with you in that regard?

3       A.    What he had shared, that several of the men that

4    he would speak to did not understand the charge.

5       Q.    Did he share with you the nature or the basis of

6    their lack of understanding, why they did not understand

7    the charge?

8       A.    He mentioned because of the language barrier.

9       Q.    When you say "he," you are talking about

10   Mr. Reveles?

11      A.    Yes.

12      Q.    Was saying that for whatever reason the

13   incarcerated migrant, because of the English/Spanish,

14   Spanish/English language barrier in the jail, did not

15   fully understand what they were charged with?

16      A.    Yes, sir.

17      Q.    Okay.  Thank you for that clarification.

18            Other than what you recall from Ms. Chavez

19   and Mr. Reveles, any other people that you remember

20   sharing with you any type of frustration about

21   communicating information to incarcerated migrants?

22      A.    Not that I recall.

23      Q.    How long have you been with and involved in The

24   Forum?

25      A.    Actively for the last 12 years.

Sharon Zapata - August 30, 2012

25

1      Q.    Were you involved somewhat less actively before

2  that?

3      A.    Yes, sir.

4      Q.    Are you an Arizona native?

5      A.    I am.

6      Q.    Where are you from?

7      A.    Phoenix.

8      Q.    I'm a Tempe man.

9            Is there anything that you can identify for

10  me now that The Forum is unable to do because of what my

11  clients are doing compared to what The Forum could do

12  before the application of the conspiracy statute to the

13  human smuggling statute?

14     A.    Can you repeat that one more time?  I'm sorry.

15     Q.    There's really nothing magical about it.  I'm

16  sort of looking at before my client started applying the

17  smuggling statute with the conspiracy statute and after.

18            And since you have been involved actively

19  with The Forum for the last 12 years, I would like to kind

20  of get a gauge for:  Is there anything that The Forum

21  cannot do now since my clients are applying the conspiracy

22  statute to the human smuggling statute that it could do,

23  say, before 2005?

24     A.    Not that I have not already mentioned as it

25  relates to resource time, et cetera.

26

1      Q.   The mission of The Forum that you articulated so

2   far in this deposition, is there anything about what my

3   clients are doing in applying the conspiracy statute to

4   the human smuggling statute that is making it more

5   difficult for The Forum to achieve its mission?

6      A.   Again, because of the advocacy of the empowering

7   of the community and education, et cetera, it's become

8   difficult to make sure that all of our resources are able

9   to work on all anti-migrant issues.

10      Q.   Because there are, in your judgment, so many

11   anti-migrant issues you are spread thin?

12      A.   Yes.

13      Q.   There's no increased cost because you haven't

14   spent money on migrants relative to this particular

15   application of the conspiracy statute to the human

16   smuggling statute?

17      A.   Not hard cost as it relates to migrants.

18      Q.   My statement is correct?

19      A.   Yes.  If you are talking money, yes.

20      Q.   But what you are talking is the intangible costs

21   of a person finding it more difficult to help people?

22      A.   Right.  Their time, et cetera, yes.

23      Q.   What are the anti-migrant laws or policies that

24   you believe are affecting the mission of The Forum?

25      A.   SB 1070, 287(g), secure communities, ethnic

1   studies, HB 2281.

2       Q.   I'm sorry.  What was --

3       A.   That is the ethnic studies bill, HB 2281.

4       Q.   What else?

5       A.   I can't recall the specific name assignments for

6   the bills, but bills as they relate to the impoundment of

7   automobiles, the ability to receive cash -- I should say

8   money, fees when suing, et cetera.

9            I'm trying to think of the numbers of the

10  bills.  That's all I can think of right now.

11      Q.   Sounds like you may follow legislature?

12      A.   That's part of our responsibility to the

13  community, yes.

14      Q.   The things that you just have gone over are all

15  things or items in your judgment that affect the

16  accomplishment of The Forum's organizational mission?

17      A.   Correct.

18      Q.   I understand SB 1070 because I read the paper and

19  watch the television like everyone else.

20            What is it about 287(g) that you believe

21  affects the accomplishment of The Forum's organization

22  achievement?

23      A.   The ability to go into the community and speak to

24  persons who may not be documented who are victims of

25  crime, et cetera, and their reluctance to speak to us or

1   anyone, especially law enforcement.

2                 So many times the suggestion from us would

3   be "This is an issue that needs to be reported to law

4   enforcement."  And specifically with MCSO, they are not

5   willing to speak.

6        Q.   And you understand, do you not, the 287(g)

7   program is the federal program whereby local police

8   officers are trained by ICE and certified to serve as

9   federal immigration officers?

10       A.   It was, yes.

11       Q.   And you understand that as to the MCSO, that

12  field authority was stripped in October of 2009?

13       A.   Yes.

14       Q.   So that's not an issue anymore, is it?

15       A.   When you have members, though, of law

16  enforcement, local law enforcement who are still using

17  that, it is.

18       Q.   Using 287(g)?

19       A.   Yes.  And that training and those relationships,

20  yes.

21       Q.   So it's your belief that even though officers may

22  be no longer with 287(g) authority, they are still acting

23  as if they have 287(g) authority?

24       A.   It is my feeling and many persons, yes.

25       Q.   What is the next thing you mentioned, secure

1  committee?

2      A.   Secure communities.

3      Q.   What is that?

4      A.   That's also much like 287(g), but a slightly

5  different takeoff.  And this is really related to victims

6  within communities are unwilling now to come out and speak

7  about them.

8              So, for instance, if there is an

9  altercation, some type of physical violence at a home, et

10 cetera, they are now -- victims are afraid.  And not just

11 necessarily migrant victims, but persons of color are

12 leery about reporting that to law enforcement.

13             And so at times those types of altercations

14 can become larger and they may have ties to things we

15 don't want in the community, like gang violence, et

16 cetera.

17             So this is something that people are really

18 afraid of and is still being followed today, not just

19 here, but ...

20     Q.   Let me ask you a different question.

21             Do you have an opinion as to who is involved

22 in human smuggling into the state of Arizona?

23     A.   Yes.

24     Q.   What is that opinion?

25     A.   My opinion is there are some persons who elect to

1    make money off of taking advantage of persons who are in

2    desperate need.

3        Q.   Do you have an opinion whether or not the

4    narcotics organizations, the criminal syndicate often

5    called the cartel, the cartels from south of the border,

6    are involved in human smuggling into Arizona?

7        A.   I believe it's possible.  I would say that's my

8    opinion.

9        Q.   Does The Forum take any position on the

10   treatment -- have you ever heard of the smugglees being

11   called pollo?

12       A.   Yes.

13       Q.   You understand they are the smugglees?

14       A.   Yes.

15       Q.   And the coyotes are the smugglers?

16       A.   Yes.

17       Q.   Am I pronouncing is correctly?

18       A.   Yes.  I understood.

19       Q.   You are very patient.

20            Does The Forum ever take any position on

21   when a coyote tells a pollo, "$2,500 gets you from your

22   location in your foreign country to the Location B in the

23   United States," and once they get here, the price goes up

24   and they are held against their will.

25            Does The Forum ever take any position on

1   that type of behavior?

2       A.    The Forum has not taken a position on that.

3       Q.    Do you have an opinion on that?

4       A.    I do.

5       Q.    What is that opinion?

6       A.    My opinion is that it's horrific.

7       Q.    It's extortion, isn't it?

8       A.    Yes.

9       Q.    And you have seen news account where people are

10  held against their will, haven't you?

11      A.    I have, yes.

12      Q.    You understand what a drop house is?

13      A.    I do.

14      Q.    Does The Forum take any position on the treatment

15  of migrants that are held against their will in human

16  smuggling drop houses?

17      A.    Yes, sir.

18      Q.    What is that position?

19      A.    That is that it should not happen.  It's

20  horrible.  Those people are victims and should be treated

21  as victims.

22      Q.    Do I understand, based on what you told me about

23  287(g), that it's The Forum's position that the federal

24  government should not enter into 287(g) programs with

25  local law enforcement anywhere in the United States?

1      A.   It is, yes.

2      Q.   I read something about what you described as

3   ethnic studies, HB 2281, House Bill 2281.

4                What exactly is that?

5      A.   It's a bill that was just passed in the

6   legislature basically ceasing all ethnic study-type

7   programs.  Mexican-American studies was one.

8                And it began in Tucson.  Tucson is

9   probably where you hear the most about it, but it is a

10  state law.

11               And so programs that were developed in the

12  Tucson area to make sure that heritage, culture, et

13  cetera, of people of color are no longer allowed to be

14  taught in the junior and high school programs.

15     Q.   And how does that House Bill 2281 adversely

16  affect the organizational mission of The Forum?

17     A.   We are very pro-education.  And much of what we

18  want to ensure is that Latino students specifically are

19  allowed to read about their heritage, read about heroes

20  from our community just as well as reading about U.S.

21  history.

22               MR. CASEY:  Off the record for a second.

23               (Discussion had off the record.)

24               MR. CASEY:  Back on.

25               Those are the questions I have for you.

33

1              Thank you very much for your time and for

2    your patience and explaining some of these things to me

3    that I didn't fully understand.

4              What happens now is the court reporter types

5    everything up, question, answer, question, answer in a

6    booklet form.  It's actually ready in 14 to 21 days.

7    That's been my experience.

8              You have the right to read it and make sure

9    it was taken down accurately and conveys that which you

10   intended it to convey.  That's a right you and your lawyer

11   must decide on.  But before you leave the room today, you

12   need to tell the reporter whether you are going to waive

13   or read and sign.

14              MR. HOLGUIN:  I have some questions, but can

15   we take a short bathroom break and then we will come back?

16              MR. CASEY:  Sure.

17              (Recess taken.)

18

19                       EXAMINATION

20   BY MR. HOLGUIN:

21       Q.   Ms. Zapata, could you tell me when The Forum was

22   founded, the year in which it was founded?

23       A.   1987.

24       Q.   What was the organizational mission of The Forum

25   at its founding?

34

1      A.   At its founding it was primarily related to

2   educational issues.

3      Q.   What sort of educational issues?

4      A.   As it related to the Latino community and

5   ensuring that students were receiving textbooks, that --

6   if they qualified for the school lunch programs, that they

7   were involved there.  For getting parents information as

8   it related to the importance of attending meet the teacher

9   night.  And then just kind of monitoring the district as

10   it relates to any racial discrimination with a student or

11   a teacher.

12      Q.   When did The Forum become concerned with issues

13   related to international migration?

14      A.   I would say that was with Prop 200, which was in

15   2004.

16      Q.   What did that proposition provide, as best you

17   recollect?

18      A.   As best I recollect it brought forth the issue of

19   undocumented persons potentially receiving state benefits

20   that are only for U.S. citizens.

21      Q.   And what was the next issue relating, if there

22   was one, to migrants that The Forum became involved in?

23      A.   The next one, I would say, is 2006 when the issue

24   of comprehensive immigration really came to the forefront

25   and our involvement there and with other coalitions

35

1    related to that.

2         Q.   And the next issue involving migrants that The

3    Forum became concerned about?

4         A.   I would say the next one as it relates to the

5    issue of smugglees being able to be arrested and tried for

6    smuggling themselves.

7         Q.   Let me ask this:  Of The Forum's resources,

8    taking The Forum's resources as a whole, what percentage

9    would you estimate is financial and what percentage is in

10   other forms?

11        A.   I would say 99 percent is all related to

12   volunteer, non-financial from The Forum.

13        Q.   Now, do you consider The Forum's resources vast

14   or limited?

15        A.   Financial resources?

16        Q.   Resources in general.  All resources.

17        A.   I would say they are limited.

18        Q.   Now, when The Forum began to work on migration

19   issues, did it do less work, more work, or the same work

20   on the other civil-rights-type issues that you described

21   earlier at its founding?

22        A.   When it first started, I would say the same or

23   more work on migrant issues.

24        Q.   But my question is:  What about the work on the

25   educational and civil rights issues, what impact did

36

1    Proposition 200 have on The Forum's work in these other

2    areas, the work that it had taken on at its founding?

3        A.    Less work.

4        Q.    And when Maricopa County began prosecuting

5    non-smuggler migrants for conspiracy to smuggle themselves

6    or transport themselves, what did that do to the other

7    work that The Forum was involved with at the time?

8        A.    We definitely decreased the other work.

9        Q.    Now, what's your understanding of when I say the

10   application of the conspiracy statute to the smuggling

11   statute, what do you understand that to mean?

12       A.    Can you repeat that?

13       Q.    The application of the conspiracy statute to the

14   anti-smuggling statute.

15       A.    I think you need to explain that to me.

16       Q.    If I say prosecuting non-smuggler migrants for

17   conspiracy to transport themselves, do you understand what

18   I'm saying?

19       A.    Yes.

20       Q.    What is The Forum's position on the advisability

21   of convicting non-smuggler migrants and essentially

22   convicting them of criminal conspiracy, is that The

23   Forum's position that that deters smuggling, has no

24   effected on smuggling, or increases the amount of

25   smuggling?

37

1      A.    What was the what first?

2      Q.    That it deters smuggling, decreases smuggling,

3  believes it's the same, or encourages smuggling?

4      A.    Remains the same.

5      Q.    Does The Forum meet in public buildings when it

6  has its meetings?

7      A.    It does, yes.

8      Q.    Does The Forum rely on local police to keep the

9  public peace while the meetings are going on?

10      A.    We would expect them to, yes.

11      Q.    Has The Forum experienced any disruption in its

12  meetings from breaches of the public peace?

13      A.    We have not.

14      Q.    Has The Forum experienced difficulties in having

15  members attend its meetings due to worries about the

16  public peace?

17      A.    Yes, we have.

18      Q.    And in what way?

19      A.    In two ways.  Just because being in a public

20  environment, there's always the worry from members who

21  either have family members or connections with

22  undocumented persons, there's the feeling that it's not a

23  safe and inviting environment and, therefore, they don't

24  feel like they can invite their families.

25              The other would be just in itself what The

38

1  Forum has come to stand for within the community and it's

2  advocacy.

3      Q.   Why do Forum members believe there's some threat

4  to themselves or family members from attending the

5  meetings?

6      A.   They think through a lot of the anti-migrant

7  issues that continue to come up, there's always a fear

8  that if you are a victim, you are not going to be listened

9  to, et cetera.  So it causes fear for people not to either

10  want to come to a meeting or be as involved in the

11  meeting.

12      Q.   Do Forum members live in Maricopa County?

13      A.   They do, yes.

14      Q.   Do you know whether they pay property taxes?

15      A.   Yes, they do.

16      Q.   Do they also pay sales taxes in Maricopa County?

17      A.   Yes.

18      Q.   Now, Forum members who you testified earlier have

19  visited, Mr. Reveles among others, who have visited

20  persons in Maricopa County custody, were those individuals

21  there because they had been arrested and charged with

22  conspiracy to smuggle themselves?

23      A.   I believe there were some, yes.

24      Q.   Now, to your knowledge, did Mr. Reveles and other

25  members spend money in, for example, paying for

39

1    transportation to get to the Maricopa County facility?

2        A.    Yes.   Mr. Reveles definitely did.   Personal

3    money, yes.

4                    MR. HOLGUIN:   I have no further questions.

5                    MR. CASEY:   Ma'am, I have a few follow-ups

6    based on your lawyer's questions.

7

8                         EXAMINATION

9    BY MR. CASEY:

10       Q.    What public buildings does The Forum hold its

11   meetings in?

12       A.    Over the last four years during my presidency we

13   have been at ASU downtown.   We have been at the former

14   SCIU offices on Seventh Street.   We have been at Phoenix

15   College.   We currently meet at an office building that

16   houses an organization, Mi Familia Vota.   We have also met

17   at Macayo's restaurants.

18       Q.    Which one?

19       A.    On Central.

20                    Denny's restaurant on Seventh Street and

21   Camelback, and Coco's on Seventh Street and McDowell.

22       Q.    How often does The Forum meet?

23       A.    At a minimum, monthly.

24       Q.    Next subject was you were talking with your

25   lawyer about the resources, and it's my understanding that

Sharon Zapata - August 30, 2012

40

1   it's your testimony that you described out of 100 percent

2   of The Forum's resources, 1 percent is financial and 99

3   percent is the time of the volunteers or the volunteers'

4   work?

5       A.   Yes.

6       Q.   What you believe is that along with SB 1070,

7   287(g), secure communities, ethnic studies, HB 2281 issues

8   regarding receiving money and impoundment of automobiles,

9   my client's policy in this case has also diverted some of

10  your members time spent doing work?

11      A.   Can you repeat that?  I'm sorry.

12      Q.   Your testimony is that your clients have had --

13  strike that.

14            Your testimony is that The Forum's members

15  have had their volunteer time diverted because of what my

16  clients are doing?

17      A.   Yes.

18      Q.   You would also agree with me that your members

19  have had their volunteer time diverted because of SB 1070

20  issues?

21      A.   Yes.

22      Q.   You would agree with me that your members have

23  had their time diverted because of 287(g) issues?

24      A.   Yes.

25      Q.   You would agree with me that your members have

41

1   had their time diverted because of the secure community

2   issues?

3       A.   Yes.

4       Q.   You would agree with me that your members have

5   had their time diverted because of ethnic studies/HB 2281

6   issues?

7       A.   Yes.

8       Q.   You would agree with me finally that your

9   volunteers, your members have had their time frustrated,

10  diverted, or limited because of issues of automobile

11  impoundment and receiving money?

12      A.   Yes, sir.

13              MR. CASEY:  Those are all the questions.

14  Thank you.

15              MR. HOLGUIN:  No further questions.

16              MR. CASEY:  Read and sign or waive?

17              MR. HOLGUIN:  Read and sign.

18              (Deposition concluded at 3:18 p.m.)

19

20

21

22                   SHARON ZAPATA

23

24

25

42

```
 1   STATE OF ARIZONA    )
                         ) ss.
 2   COUNTY OF MARICOPA )

 3        I HEREBY CERTIFY that the foregoing deposition was

 4   taken by me pursuant to Notice; that I was then and there

 5   a Certified Reporter for the State of Arizona and, by

 6   virtue thereof, authorized to administer an oath; that the

 7   witness before testifying was duly sworn by me to testify

 8   to the whole truth and nothing but the truth; that the

 9   questions propounded by counsel and the answers of the

10   witness thereto were taken down by me in shorthand and

11   thereafter transcribed through computer-aided

12   transcription under my direction, and that the foregoing

13   typewritten pages contain a full, true, and accurate

14   transcript of all proceedings had upon the taking of said

15   deposition, all done to the best of my skill and ability.

16              I FURTHER CERTIFY that I am in no way

17   related to nor employed by any of the parties hereto, nor

18   am I in any way interested in the outcome hereof.

19              DATED at Phoenix, Arizona, this 5th day of

20   September, 2012.

21

22                         TAMARA H. HOWARD
                           Certified Reporter
23                         Certificate No. 50156

24

25
```

# Exhibit 11

1   Timothy J. Casey (#013492)
     SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
2   1221 East Osborn Road, Suite 105
     Phoenix, AZ 85014-5540
3   Telephone: (602) 277-7000
     Facsimile:  (602) 277-8663
4   timcasey@azbarristers.com
     Counsel for Defendants Maricopa County Board of
5   Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek,
     Max Wilson, and Mary Rose Wilcox, Joseph Arpaio,
6   Maricopa County Sheriff and Defendant Maricopa County
     Attorney William Montgomery

7

8              **IN THE UNITED STATES DISTRICT COURT**

9                **IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| We Are America, et al., | Cause No. CV06-2816-PHX-RCB |
|         Plaintiffs, | |
| v. | **DEFENDANT JOSEPH M. ARPAIO'S RESPONSES TO PLAINTIFFS' SUPPLEMENTAL REQUEST FOR ADMISSIONS, PRODUCTION OF DOCUMENTS AND INTERROGATORIES** |
| Maricopa County Board of Supervisors, et al., | |
|         Defendants. | Requests for Admissions 62-75; Requests for Documents 22-31; Interrogatory 6. |

     Defendant Maricopa County Sheriff Joseph M. Arpaio ("Arpaio") hereby responds to

Plaintiffs' <u>Supplemental</u> Request for Admissions, Production of Documents and

Interrogatories as follows:

                    **PREFATORY OBJECTIONS**

     A.    Arpaio objects to the definitions, instructions, and/or requirements set forth by

the Plaintiffs in their discovery requests to the extent they attempt to impose duties upon this

defendant beyond that which are required by Rules 33, 34, and 36, Federal Rules of Civil

Procedure.  Arpaio states that these Responses are provided pursuant to the Federal Rules of

Civil Procedure.

     B.    Arpaio objects to the definitions of the terms "YOU" and "YOUR" as set forth

in Plaintiffs' Definitions and as used in this discovery.  The definitions are over-broad and

improperly seeds from this Answering Defendant information from other agencies and

persons of Maricopa County that are beyond the personal knowledge and information of this Answering Defendant. Accordingly, when Arpaio responds to discovery requests with the terms "YOU" and "YOUR," Plaintiffs are hereby placed on express notice that Arpaio is responding on behalf of himself, the Maricopa County Sheriff's Office ("MCSO") under his elected leadership, and in good-faith reliance on information provided to him by authorized personnel of the MCSO.

## REQUESTS FOR ADMISSIONS

62.    Admit that the Maricopa County Sheriff's Office (MCSO) spends tax revenues to jail persons arrested for conspiring to transport themselves in violation of A.R.S. § 13-2319.

ADMIT __X___        DENY _____

63.    Admit that the MCSO spends tax revenue to train MCSO deputies to detect and arrest persons who conspire to transport themselves in violation of A.R.S. § 13-2319.

ADMIT __X___        DENY _____

64. Admit that the MCSO spends tax revenue to transport persons arrested for conspiring to transport themselves in violation of A.R.S. § 13-2319.

ADMIT __X___        DENY _____

65.    Admit that the expense of operating MCSO jails is covered, in whole or in part, by revenues derived from taxes levied upon Maricopa county property owners and/or other county taxpayers.

ADMIT __X___        DENY _____

66.    Admit that the expense of training MCSO deputies to detect and arrest persons who conspire to transport themselves in violation of A.R.S. § 13-2319 is covered, in whole or in part, by revenues derived from taxes levied upon Maricopa county property owners and/or other county taxpayers.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

2

77

**ADMIT __X____**          **DENY _____**

67.   Admit that the expense of MCSO's transporting persons arrested for conspiring to transport themselves in violation of A.R.S. § 13-2319 is covered, in whole or in part, by revenues derived from taxes levied upon Maricopa County property owners and/or other county taxpayers.

**ADMIT __X____**          **DENY _____**

68.   Admit that the Maricopa County Attorney's Office (MCAO) spends tax revenues to prosecute persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

69.   Admit that the MCAO spends tax revenue to train personnel to prosecute persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

70.   Admit that the MCAO spends tax revenue to defend the MARICOPA CONSPIRACY POLICY.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

71.   Admit that the Maricopa County Board of Supervisors appropriates funds for the operations of the MCSO.

**ADMIT __X____**          **DENY _____**

3

78

1       72.   Admit that the Maricopa County Board of Supervisors appropriates funds for

2    the operations of the MCAO.

3            **ADMIT** _____         **DENY** _____

4    **RESPONSE**:

5        This Request is not directed to this Answering Defendant and, therefore, he is unable
     to admit or deny the Request.

6

7       73.   Admit that the Maricopa County Board of Supervisors has authority to oversee

8    the operations of the MCSO.

9            **ADMIT** _____         **DENY** \_X\_\_\_\_

10      74.   Admit that the Maricopa County Board of Supervisors has authority to oversee

11   the operations of the MCAO.

12           **ADMIT** _____         **DENY** _____

13   **RESPONSE**:

14       This Request is not directed to this Answering Defendant and, therefore, he is unable
     to admit or deny the Request.

15

16      75.   Admit that the Maricopa County Board of Supervisors supports, acquiesces in,

17   and/or condones the MARICOPA CONSPIRACY POLICY.

18           **ADMIT** _____         **DENY** \_X\_\_\_\_

19

20           **REQUESTS FOR PRODUCTION OF DOCUMENTS**

        22.   Please produce for inspection and copying all documents showing tax revenues

21   funding operations of the MCSO for the current fiscal year.

22   **RESPONSE:**

23       This Request seeks documents that are not relevant and not reasonably calculated to
     lead to the discovery of admissible evidence. In addition, this Request is overly broad

24   and unduly burdensome in its scope and the manpower and time it would take to

25   search for potentially responsive documents. With the foregoing objection stated, if
     Plaintiffs will set forth in writing the factual and legal basis that they believe makes

26   this Request pertinent to the issues in this litigation, this Answering Defendant will

27   agree to timely consider the same and determine whether to supplement this response.

28

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

4

23.     Please produce for inspection and copying all documents showing the tax revenues funding operations of the MCSO jails for the current fiscal year.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

24.     Please produce for inspection and copying all documents showing expenditures by the MCSO for the current fiscal year.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

25.     Please produce for inspection and copying all studies, analyses, reports on expenditures associated with the MCSO's arresting, transporting, and/or jailing persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

26.   Please produce for inspection and copying all documents reflecting appropriations by the Maricopa County Board of Supervisors for the operations of the MCSO for the current fiscal year.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

27.   Please produce for inspection and copying all documents showing tax revenues funding operations of the MCAO for the current fiscal year.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

28.   Please produce for inspection and copying all documents showing expenditures by the MCAO for the current fiscal year.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

29.   Please produce for inspection and copying all studies, analyses, reports on expenditures associated with the MCAO's prosecuting persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

30.   Please produce for inspection and copying all documents reflecting appropriations by the Maricopa County Board of Supervisors for the operations of the MCAO for the current fiscal year.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

6

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

31.    Please produce for inspection and copying transcripts, recordings, minutes, motions, and resolutions of the Maricopa County Board of Supervisors addressing the MARICOPA CONSPIRACY POLICY.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

## INTERROGATORIES

6.    Unless stated in YOUR responses to plaintiffs' requests for admissions, with respect to each request for admission you do not unequivocally make, please state each fact and reason supporting YOUR refusal to make the requested admission.

**RESPONSE:**

As to Requests for Admission Nos. 74-75, those Requests are denied because under Arizona law, the Maricopa County Board of Supervisors is not charged with the legal authority to enforce the Arizona Criminal Code, including A.R.S. § 13-2319, (Arizona's Human Smuggling statute) or with the authority and duty to make prosecutorial decisions as to whom to charge and what charges to actually prosecute against individual suspects.

**DATED** this 16th day of December, 2011.

SCHMITT SCHNECK SMYTH CASEY &
EVEN, P.C.



Timothy J. Casey, Esq.
1221 East Osborn Rd., Suite 105
Phoenix, Arizona 85014
Counsel for the Defendant Joseph M. Arpaio

## CERTIFICATE OF SERVICE

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

1

2       I hereby certify that on December 16, 2011, the foregoing document was sent via
        regular mail to the following persons:

3       Peter A. Schey
        Carlos Holguin

4       CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
        256 South Occidental Blvd.

5       Los Angeles, California 90057
        Co-Counsel for Plaintiffs

6       Dan Ballecer

7       1095 East Indian School Road
        Phoenix, Arizona 85014
        Co-Counsel for Plaintiffs

8

9       Antonio Bustamante
        1001 North Central Ave., Suite 660

10      Phoenix, Arizona 85014
        Co-Counsel for Plaintiffs

11

12      *Eileen Henry*

13      Eileen Henry, Paralegal
        SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFICATION

STATE OF ARIZONA                     )
                                     )  ss.
COUNTY OF MARICOPA                   )

Honorable Joseph M. Arpaio, being duly sworn, deposes and states:

I am the duly elected Sheriff for Maricopa County, and I understand that in that capacity I have been named as a defendant in the matter styled:  *We Are America, et al., v. Maricopa County Board of Supervisors, et al, No. CV06-2816-PHX-RCB.*  I have reviewed the following documents: (a) the Answers to Plaintiffs' First Set of Interrogatories directed to me; and (b) the Plaintiffs' Supplemental Interrogatories directed to me.  Based on that review, I hereby state that some of the matters stated therein are within my direct and personal knowledge but that other matters stated therein are not within my direct and personal knowledge but are within my general supervisory knowledge; as to those matters set fort in my general supervisory knowledge, the facts stated therein have been assembled by authorized employees of the Maricopa County Sheriff's Office ("MCSO"); and I am informed that the facts stated therein are rue and correct to the best of the personal knowledge and belief of the authorized employees of the MCSO.

Hon. Joseph M. Arpaio

SUBSCRIBED AND SWORN to before me this *15th* day of December, 2011.

Notary Public

My commission expires:

OFFICIAL SEAL
THERESA B. COOMBS
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Aug. 14, 2014

84

Exhibit 12

1  Timothy J. Casey (#013492)
   SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
2  1221 East Osborn Road, Suite 105
   Phoenix, AZ 85014-5540
3  Telephone: (602) 277-7000
   Facsimile:  (602) 277-8663
4  timcasey@azbarristers.com
   Counsel for Defendants Maricopa County Board of
5  Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek,
   Max Wilson, and Mary Rose Wilcox, Joseph Arpaio,
6  Maricopa County Sheriff and Defendant Maricopa County
   Attorney William Montgomery
7

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| We Are America, et al., | Cause No. CV06-2816-PHX-RCB |
| Plaintiffs, | |
| v. | **DEFENDANT MARICOPA COUNTY ATTORNEY WILLIAM MONTGOMERY'S RESPONSES TO PLAINTIFFS' SUPPLEMENTAL REQUEST FOR ADMISSIONS, PRODUCTION OF DOCUMENTS AND INTERROGATORIES** |
| Maricopa County Board of Supervisors, et al., | |
| Defendants. | |
| | Requests for Admissions 62-75; Requests for Documents 22-31; Interrogatory 6. |

Defendant Maricopa County Attorney William Montgomery ("MCA Montgomery") hereby responds to Plaintiffs' Supplemental Request for Admissions, Production of Documents and Interrogatories as follows:

## PREFATORY OBJECTIONS

A.      MCA Montgomery objects to the definitions, instructions, and/or requirements set forth by the Plaintiffs in their discovery requests to the extent they attempt to impose duties upon this defendant beyond that which are required by Rules 33, 34, and 36, Federal Rules of Civil Procedure.  MCA Montgomery states that these Responses are provided pursuant to the Federal Rules of Civil Procedure.

B.      MCA Montgomery objects to the definitions of the terms "YOU" and "YOUR" as set forth in Plaintiffs' Definitions and as used in this discovery.  The definitions

1   are over-broad and improperly seek from this Answering Defendant information from other

2   agencies and persons of Maricopa County that are beyond the personal knowledge and

3   information of this Answering Defendant.  Accordingly, when MCA Montgomery responds

4   to discovery requests with the terms "YOU" and "YOUR," Plaintiffs are hereby placed on

5   express notice that MCA Montgomery is responding on behalf of himself, the Maricopa

6   County Attorney's Office ("MCAO") under his elected leadership, and in good-faith reliance

7   on information and understanding of the historical practice of the MCAO under its two

8   immediate predecessor county attorneys, Richard M. Romley and Andrew P. Thomas.

9        C.     MCA Montgomery objects to the use of the term "Maricopa Conspiracy

10  Policy."  The term is vague, ambiguous, and argumentative as used by Plaintiffs.  As such, it

11  is subject to many different interpretations and definitions.  Moreover, Answering Defendant

12  has made reasonable inquiry and the information he knows or can readily obtain indicates

13  that there is no such policy.  Accordingly, this Answering Defendant objects to each use of

    the terms "Maricopa Conspiracy Policy."

14       D.     Each of these Prefatory Objections are incorporated into each Response and

15  particularized objection stated in response to Plaintiffs' specific discovery request set forth

16  below as if full stated therein.

17

18                        **REQUESTS FOR ADMISSIONS**

19       62.    Admit that the Maricopa County Sheriff's Office (MCSO) spends tax revenues

20  to jail persons arrested for conspiring to transport themselves in violation of A.R.S. § 13-

21  2319.

22             **ADMIT** _____          **DENY** _____

    **RESPONSE**:

23
24        This Request is not directed to this Answering Defendant and, therefore, he is unable
          to admit or deny the Request.

25       63.    Admit that the MCSO spends tax revenue to train MCSO deputies to detect

26  and arrest persons who conspire to transport themselves in violation of A.R.S. § 13-2319.

27             **ADMIT** _____          **DENY** _____

28

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

                                    2

**RESPONSE**:

> This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

64. Admit that the MCSO spends tax revenue to transport persons arrested for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

> This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

65. Admit that the expense of operating MCSO jails is covered, in whole or in part, by revenues derived from taxes levied upon Maricopa county property owners and/or other county taxpayers.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

> This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

66. Admit that the expense of training MCSO deputies to detect and arrest persons who conspire to transport themselves in violation of A.R.S. § 13-2319 is covered, in whole or in part, by revenues derived from taxes levied upon Maricopa county property owners and/or other county taxpayers.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

> This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

67. Admit that the expense of MCSO's transporting persons arrested for conspiring to transport themselves in violation of A.R.S. § 13-2319 is covered, in whole or in part, by revenues derived from taxes levied upon Maricopa County property owners and/or other county taxpayers.

**ADMIT** _____          **DENY** _____

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C. Professional Corporation

**RESPONSE**:

This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

68.   Admit that the Maricopa County Attorney's Office (MCAO) spends tax revenues to prosecute persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**ADMIT __X___**          **DENY _____**

69.   Admit that the MCAO spends tax revenue to train personnel to prosecute persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**ADMIT __X___**          **DENY _____**

70.   Admit that the MCAO spends tax revenue to defend the MARICOPA CONSPIRACY POLICY.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

MCA Montgomery objects to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

71.   Admit that the Maricopa County Board of Supervisors appropriates funds for the operations of the MCSO.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

This Request is not directed to this Answering Defendant and, therefore, he is unable to admit or deny the Request.

72.   Admit that the Maricopa County Board of Supervisors appropriates funds for the operations of the MCAO.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

4

89

1          **ADMIT __X____**        **DENY _____**

2          73.    Admit that the Maricopa County Board of Supervisors has authority to oversee

3  the operations of the MCSO.

4          **ADMIT _____**        **DENY _____**

5  **RESPONSE**:

6      This Request is not directed to this Answering Defendant and, therefore, he is unable
to admit or deny the Request.

7

8         74.    Admit that the Maricopa County Board of Supervisors has authority to oversee

9  the operations of the MCAO.

10          **ADMIT _____**        **DENY __X____**

11         75.    Admit that the Maricopa County Board of Supervisors supports, acquiesces in,
and/or condones the MARICOPA CONSPIRACY POLICY.

12          **ADMIT _____**        **DENY _____**

13  **RESPONSE**:

14      This Request is not directed to this Answering Defendant and, therefore, he is unable
to admit or deny the Request.

15

16               **REQUESTS FOR PRODUCTION OF DOCUMENTS**

17         22.    Please produce for inspection and copying all documents showing tax revenues

18  funding operations of the MCSO for the current fiscal year.

19  **RESPONSE:**

20      This Answering Defendant lacks documents responsive to this Request.

21

22         23.    Please produce for inspection and copying all documents showing the tax

23  revenues funding operations of the MCSO jails for the current fiscal year.

24  **RESPONSE:**

25      This Answering Defendant lacks documents responsive to this Request.

26

27         24.    Please produce for inspection and copying all documents showing expenditures

28  by the MCSO for the current fiscal year.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

25.   Please produce for inspection and copying all studies, analyses, reports on expenditures associated with the MCSO's arresting, transporting, and/or jailing persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

26.   Please produce for inspection and copying all documents reflecting appropriations by the Maricopa County Board of Supervisors for the operations of the MCSO for the current fiscal year.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

27.   Please produce for inspection and copying all documents showing tax revenues funding operations of the MCAO for the current fiscal year.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

28.   Please produce for inspection and copying all documents showing expenditures by the MCAO for the current fiscal year.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if

1
2
3

Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

4    29.    Please produce for inspection and copying all studies, analyses, reports on
5 expenditures associated with the MCAO's prosecuting persons for conspiring to transport
6 themselves in violation of A.R.S. § 13-2319.
7 **RESPONSE:**

8
9

This Answering Defendant is currently conducting a reasonable and diligent search for documents potentially responsive to this Request.  If and when responsive document are found, if any, this Answering Defendant will supplement this Request.

10
11
12

30.    Please produce for inspection and copying all documents reflecting appropriations by the Maricopa County Board of Supervisors for the operations of the MCAO for the current fiscal year.

13 **RESPONSE:**

14
15
16
17
18

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence.  In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

19
20
21

31.    Please produce for inspection and copying transcripts, recordings, minutes, motions, and resolutions of the Maricopa County Board of Supervisors addressing the MARICOPA CONSPIRACY POLICY.

22 **RESPONSE:**

23    This Answering Defendant lacks documents responsive to this Request.

24                    **INTERROGATORIES**

25    6.    Unless stated in YOUR responses to plaintiffs' requests for admissions, with
26 respect to each request for admission you do not unequivocally make, please state each fact
27 and reason supporting YOUR refusal to make the requested admission.

28

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

7

**RESPONSE:**

    As to Requests for Admission Nos. 74-75, those Requests are denied because they call for speculation about the Board's position on an unknown, undefined, and argumentative the policy as used by the Plaintiffs that does not exist, and under Arizona law, the Board is neither charged with the legal authority to enforce the Arizona Criminal Code, including A.R.S. § 13-2319, (Arizona's Human Smuggling statute) nor with the authority and duty to make prosecutorial decisions as to whom to charge and what charges to actually prosecute against individual suspects.

    **DATED** this 9th day of January, 2012.

        SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

        Timothy J. Casey, Esq.
        1221 East Osborn Rd., Suite 105
        Phoenix, Arizona 85014
        Counsel for Defendant Maricopa County Attorney
        William Montgomery

## CERTIFICATE OF SERVICE

    I hereby certify that on January 9, 2012, the foregoing document was sent via regular mail to the following persons:

Peter A. Schey
Carlos Holguin
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Blvd.
Los Angeles, California 90057
Co-Counsel for Plaintiffs

Dan Ballecer
1095 East Indian School Road
Phoenix, Arizona 85014
Co-Counsel for Plaintiffs

Antonio Bustamante
1001 North Central Ave., Suite 660
Phoenix, Arizona 85014
Co-Counsel for Plaintiffs

Eileen Henry, Paralegal,
SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

93

## VERIFICATION

STATE OF ARIZONA        )
                                   ) ss.

COUNTY OF MARICOPA    )

       Honorable William Montgomery, being duly sworn, deposes and states:

       I am the duly elected County Attorney for Maricopa County, and I understand that in that capacity I have been named as a defendant in the matter styled: *We Are America, et al., v. Maricopa County Board of Supervisors, et al, No. CV06-2816-PHX-RCB.* I have reviewed the following documents: (a) the Answers to Plaintiffs' First Set of Interrogatories directed to me; and (b) the Plaintiffs' Supplemental Interrogatories directed to me. Based on that review, I hereby state that some of the matters stated therein are within my direct and personal knowledge but that other matters stated therein are not within my direct and personal knowledge but are within my general supervisory knowledge; as to those matters set fort in my general supervisory knowledge, the facts stated therein have been assembled by authorized employees of the Maricopa County Attorney's Office ("MCAO"); and I am informed that the facts stated therein are true and correct to the best of the personal knowledge and belief of the authorized employees of the MCAO.

                                              Hon. William Montgomery

SUBSCRIBED AND SWORN to before me this _9th_ day of January, 2012.

                                              Notary Public

My commission expires:

OFFICIAL SEAL
JOSEPH PHILLIP DOMANICO JR.
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 19, 2013

# Exhibit 13

1   Timothy J. Casey (#013492)
    SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
2   1221 East Osborn Road, Suite 105
    Phoenix, AZ 85014-5540
3   Telephone: (602) 277-7000
    Facsimile: (602) 277-8663
4   timcasey@azbarristers.com
    Counsel for Defendants Maricopa County Board of
5   Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek,
    Max Wilson, and Mary Rose Wilcox, Joseph Arpaio,
6   Maricopa County Sheriff and Defendant Maricopa County
    Attorney William Montgomery
7
                IN THE UNITED STATES DISTRICT COURT
8
                IN AND FOR THE DISTRICT OF ARIZONA
9
10  We Are America, et al.,              Cause No. CV06-2816-PHX-RCB

11                 Plaintiffs,

12  v.                                   **DEFENDANT JOSEPH M. ARPAIO'S
                                         RESPONSES TO PLAINTIFFS' FIRST
13  Maricopa County Board of Supervisors, et   REQUEST FOR ADMISSIONS,
    al.,                                 PRODUCTION OF DOCUMENTS AND
14                                       INTERROGATORIES**

                   Defendants.
15                                       Requests for Admissions 1-61;
                                         Requests for Documents 1-21;
16                                       Interrogatories 1-5.

17
        Defendant Maricopa County Sheriff Joseph M. Arpaio ("Arpaio") hereby responds to
18
    Plaintiffs' First Set of Requests for admissions, Production of Documents and Interrogatories
19
    as follows:
20
                          **PREFATORY OBJECTIONS**
21
        A.    Arpaio objects to the definitions, instructions, and/or requirements set forth by
22
    the Plaintiffs in their discovery requests to the extent they attempt to impose duties upon this
23
    defendant beyond that which are required by Rules 33, 34, and 36, Federal Rules of Civil
24
    Procedure.  Arpaio states that these Responses are provided pursuant to the Federal Rules of
25
    Civil Procedure.
26
        B.    Arpaio objects to the definitions of the terms "YOU" and "YOUR" as set forth
27
    in Plaintiffs' Definitions and as used in this discovery.  The definitions are over-broad and
28
    improperly seeds from this Answering Defendant information from other agencies and

persons of Maricopa County that are beyond the personal knowledge and information of this Answering Defendant.  Accordingly, when Arpaio responds to discovery requests with the terms "YOU" and "YOUR," Plaintiffs are hereby placed on express notice that Arpaio is responding on behalf of himself, the Maricopa County Sheriff's Office ("MCSO") under his elected leadership, and in good-faith reliance on information provided to him by authorized personnel of the MCSO.

## REQUESTS FOR ADMISSIONS

1.    Admit YOUR policy and practice is to detain, arrest, and prosecute persons for conspiring to transport themselves in violation of A.R.S. § 13-2319, notwithstanding that such persons have neither transported nor conspired to transport any other person.

      **ADMIT** _____        **DENY** _____

**RESPONSE**:

> Without waiving the objections stated below, Arpaio admits only that the MCSO historically has detained or arrested persons based on probable cause that they conspiring to transport themselves in violation of A.R.S. § 13-2319 but denies that the MCSO has a policy and practice to "prosecute persons".  The MCSO does not make prosecutorial decisions.

> Arpaio objects to this Request because it is compound in nature in that it seeks admission or denial on three different subject matters (i.e., detention, arrest, and prosecution), and because it assumes and/or ignores facts.  Finally, the Request is argumentative and misleading as currently phrased.

2.    Admit YOU arrested Raul Vixtha Bomaye for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

      **ADMIT** __X____        **DENY** _____

3.    Admit YOU arrested Javier Romero Encino for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

      **ADMIT** __X____        **DENY** _____

4.    Admit YOU arrested Rosa Flor Diaz Godinez for conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

      **ADMIT** __X____        **DENY** _____

2

5.     Admit YOU arrested Adriana Rodriguez Espiritu for conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT __X___**          **DENY _____**

6.     Admit that the sole criminal charge YOU have brought against Raul Vixtha Bomaye is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

7.     Admit that the sole criminal charge YOU have brought against Javier Romero Encino is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

8.     Admit that the sole criminal charge YOU have brought against Rosa Flor Diaz Godinez is conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport herself in violation of A.R.S. § 13-2319.

9.     Admit that the sole criminal charge YOU have brought against Adriana Rodriguez Espiritu is conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport herself in violation of A.R.S. § 13-2319.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

3

10.     Admit YOU have no reason to believe that Raul Vixtha Bomaye transported anyone else for gain in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

11.     Admit YOU have no reason to believe that Javier Romero Encino transported anyone else for gain in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

12.     Admit YOU have no reason to believe that Rosa Flor Diaz Godinez transported anyone else for gain in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport herself in violation of A.R.S. § 13-2319.

13.     Admit YOU have no reason to believe that Adriana Rodriguez Espiritu transported anyone else for gain in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport herself in violation of A.R.S. § 13-2319.

14.     Admit YOU arrested Juan Manuel Cortez Cuellar in or about September 2006 for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** \_\_X\_\_\_          **DENY** _____

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

4

15.     Admit YOU arrested Hugo Enrique Sanchez Diego in or about September 2006 for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

ADMIT __X____          DENY _____

16.     Admit that the sole criminal charge YOU have brought against Juan Manuel Cortez Cuellar is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

17.     Admit that the sole criminal charge YOU have brought against Hugo Enrique Sanchez Diego is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

18.     Admit YOU have no reason to believe that Juan Manuel Cortez Cuellar transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

19.     Admit YOU have no reason to believe that Hugo Enrique Sanchez Diego transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

Arpaio admits only that the MCSO, based on probable cause, charged this person with conspiring to transport himself in violation of A.R.S. § 13-2319.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

5

1

2

3          20.     Admit that aliens who enter the United States without authorization may

4    nonetheless be entitled to obtain lawful status pursuant to federal law.

5                        **ADMIT** _____              **DENY** _____

6    <u>**RESPONSE**</u>:

7            This Answering Defendant has made reasonable inquiry and the information he
             knows or can readily obtain is insufficient to enable him to admit or deny this
8            Request.

9

10         21.     Admit you have no ability to determine whether an individual you arrest for

     conspiring to violate A.R.S. § 13-2319 is eligible to obtain lawful status pursuant to federal

11   law.

12                        **ADMIT** _____              **DENY** _____

13   <u>**RESPONSE**</u>:

14           This Answering Defendant has made reasonable inquiry and the information he
             knows or can readily obtain is insufficient to enable him to admit or deny this
15           Request.

16

17         22.     Admit you have no authority to determine whether an individual you arrest for

18   conspiring to violate A.R.S. § 13-2319 is eligible for lawful status pursuant to federal

19   immigration law.

20                        **ADMIT** _____              **DENY** _____

21   <u>**RESPONSE**</u>:

22           This Answering Defendant has made reasonable inquiry and the information he
             knows or can readily obtain is insufficient to enable him to admit or deny this
23           Request.

24

25         23.     Admit that pursuant to the Maricopa Conspiracy Policy an alien lacking lawful

     federal immigration status at the time he or she agrees to be transported for gain is guilty of

26   conspiring to violate A.R.S. § 13-2319 if he or she is not a lawful permanent resident alien or

27

28

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

6

101

1  otherwise lawfully in Arizona at the time the offense is completed notwithstanding that he or

2  she may subsequently obtain lawful federal immigration status.

3  ADMIT _____   DENY _____

4  **RESPONSE**:

5  Without waving the objections stated below, Arpaio admits only that in recent history
the MCSO has arrested persons, based on probable cause, who are unlawfully present

6  in the United States with conspiracy to violate A.R.S. § 13-2319 regardless of the

7  persons' subsequent immigration status under federal law.

8  This Request is objectionable as to the use of the term "guilty." Jurors determine guilt
or innocence, while the MCSO may arrest a person for conspiracy to violate A.R.S. §

9  13-2319. The Request is also argumentative in that it assumes hypothetically that any

10  person who was unlawfully present in the United States and that was charged with
conspiracy to violate A.R.S. § 13-2319 had his or her immigration status under federal

11  law changed after such charging.

12

13  24.   Admit that pursuant to the MARICOPA CONSPIRACY POLICY an alien who is not

14  a lawful permanent resident alien or otherwise lawfully in Arizona and who agrees to be

transported for gain is guilty of conspiring to violate A.R.S. § 13-2319 even if such

15  agreement or transportation is not in furtherance of the alien's violation of federal law.

16  ADMIT _____   DENY _____

17  Without waving the objections stated below, Arpaio admits only that in recent history
the MCSO has arrested persons, based on probable cause, who are unlawfully present

18  in the United States with conspiracy to violate A.R.S. § 13-2319 regardless of the

19  persons' subsequent immigration status under federal law.

20  This Request is objectionable as to the use of the term "guilty." Jurors determine guilt

21  or innocence, while the MCSO may arrest a person for conspiracy to violate A.R.S. §
13-2319. The Request is also argumentative in that it assumes hypothetically that any

22  person who was unlawfully present in the United States and that was charged with

23  conspiracy to violate A.R.S. § 13-2319 had his or her immigration status under federal
law changed after such charging.

24

25  25.   Admit that federal officials charged with the enforcement of federal

26  immigration law have objected to YOUR detaining, arresting, and/or prosecuting persons for

27  conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

28  ADMIT _____   DENY _____

**RESPONSE**:

> Without waiving the objection set for below, the MCSO does not make prosecutorial decisions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request at this time.

> This Request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

26.   Admit that federal officials charged with the enforcement of federal immigration law have discouraged YOU from detaining, arresting, and/or prosecuting persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

> Without waiving the objection set for below, the MCSO does not make prosecutorial decisions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request at this time.

> This Request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

27.   Admit that at the time YOU arrested Raul Vixtha Bomaye you had no reason to believe he had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

ADMIT __X___          DENY _____

28.   Admit that at the time YOU arrested Javier Romero Encino YOU had no reason to believe that he had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

ADMIT __X___          DENY _____

29.   Admit that at the time YOU arrested Rosa Flor Diaz Godinez YOU had no reason to believe that she had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

8

103

1            ADMIT __X____       DENY _____

2      30.   Admit that at the time YOU arrested Adriana Rodriguez Espiritu you had no

3 reason to believe that she had previously been convicted of a felony in the United States and

4 had been deported from or left the United States after such conviction.

5            ADMIT __X____       DENY _____

6      31.   Admit that at the time YOU arrested Raul Vixtha Bomaye YOU had not received

7 confirmation from the U.S. Department of Homeland Security, including U.S. Immigration

8 and Customs Enforcement, that he was an alien illegally present in the United States.

9            ADMIT _____       DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he
knows or can readily obtain is insufficient to enable him to admit or deny this Request
at this time. After March 27, 2007, members of the MCSO were certified by the
Department of Homeland Security and ICE to serve as 287(g) certified officers and to
enforce immigration law, which allowed the 287(g) certified deputies the ability to
computer check whether a particular person was lawfully present in the United States.

15      32.   Admit that at the time YOU arrested Javier Romero Encino YOU had not

16 received confirmation from the U.S. Department of Homeland Security, including U.S.

17 Immigration and Customs Enforcement, that he was an alien illegally present in the United

18 States.

19            ADMIT _____       DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he
knows or can readily obtain is insufficient to enable him to admit or deny this Request
at this time. After March 27, 2007, members of the MCSO were certified by the
Department of Homeland Security and ICE to serve as 287(g) certified officers and to
enforce immigration law, which allowed the 287(g) certified deputies the ability to
computer check whether a particular person was lawfully present in the United States.

25      33.   Admit that at the time YOU arrested Rosa Flor Diaz Godinez YOU had not

26 received confirmation from the U.S. Department of Homeland Security, including U.S.

27 Immigration and Customs Enforcement, that she was an alien illegally present in the United

28 States.

SCHMITT SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

104

1          **ADMIT** _____          **DENY** _____

2  **RESPONSE**:

3       This Answering Defendant has made reasonable inquiry and the information he
         knows or can readily obtain is insufficient to enable him to admit or deny this Request
4        at this time. After March 27, 2007, members of the MCSO were certified by the
         Department of Homeland Security and ICE to serve as 287(g) certified officers and to
5        enforce immigration law, which allowed the 287(g) certified deputies the ability to
6        computer check whether a particular person was lawfully present in the United States.

7       34.    Admit that at the time YOU arrested Adriana Rodriguez Espiritu YOU had not

8  received confirmation from the U.S. Department of Homeland Security, including U.S.

9  Immigration and Customs Enforcement, that she was an alien illegally present in the United

10  States.

11          **ADMIT** _____          **DENY** _____

12  **RESPONSE**:

13       This Answering Defendant has made reasonable inquiry and the information he
         knows or can readily obtain is insufficient to enable him to admit or deny this Request
14       at this time. After March 27, 2007, members of the MCSO were certified by the
         Department of Homeland Security and ICE to serve as 287(g) certified officers and to
15       enforce immigration law, which allowed the 287(g) certified deputies the ability to
16       computer check whether a particular person was lawfully present in the United States.

17

18       35.    Admit that at the time YOU arrested Juan Manuel Cortez Cuellar YOU had no

19  reason to believe that he had previously been convicted of a felony in the United States and

20  been deported from or left the United States after such conviction.

21          **ADMIT** __X__          **DENY** _____

22       36.    Admit that at the time YOU arrested Hugo Enrique Sanchez Diego YOU had no

23  reason to believe that he had previously been convicted of a felony in the United States and

24  been deported from or left the United States after such conviction.

25          **ADMIT** __X__          **DENY** _____

26       37.    Admit that at the time YOU arrested Juan Manuel Cortez Cuellar YOU had not

27  received confirmation from the U.S. Department of Homeland Security, including U.S.

28

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

1  Immigration and Customs Enforcement, that he was an alien illegally present in the United

2  States.

3              **ADMIT** _____        **DENY** _____

4  **RESPONSE**:

5       This Answering Defendant has made reasonable inquiry and the information he
     knows or can readily obtain is insufficient to enable him to admit or deny this Request
6     at this time. After March 27, 2007, members of the MCSO were certified by the
     Department of Homeland Security and ICE to serve as 287(g) certified officers and to
7     enforce immigration law, which allowed the 287(g) certified deputies the ability to
8     computer check whether a particular person was lawfully present in the United States.

9       38.    Admit that at the time YOU arrested Hugo Enrique Sanchez Diego YOU had not

10  received confirmation from the U.S. Department of Homeland Security, including U.S.

11  Immigration and Customs Enforcement, that he was an alien illegally present in the United

12  States.

13              **ADMIT** _____        **DENY** __X____

14  **RESPONSE**:

15      This Answering Defendant has made reasonable inquiry and the information he
     knows or can readily obtain is insufficient to enable him to admit or deny this Request
16     at this time. After March 27, 2007, members of the MCSO were certified by the
     Department of Homeland Security and ICE to serve as 287(g) certified officers and to
17     enforce immigration law, which allowed the 287(g) certified deputies the ability to
18     computer check whether a particular person was lawfully present in the United States.

19      39.    Admit YOU have no written agreement with the United States Attorney General

20  or Department of Homeland Security pursuant to which YOU are authorized to investigate,

21  apprehend, or detain aliens in the United States.

22              **ADMIT** _____        **DENY** __X____

23  **RESPONSE**:

24      This Answering Defendant has made reasonable inquiry and the information he
     knows or can readily obtain is insufficient to enable him to admit or deny this Request
25     at this time. After March 27, 2007, members of the MCSO were certified by the
     Department of Homeland Security and ICE to serve as 287(g) certified officers and to
26     enforce immigration law, which allowed the 287(g) certified deputies the ability to
27     computer check whether a particular person was lawfully present in the United States.

28

40.   Admit that neither the United States Attorney General or Department of Homeland Security have determined that YOU are qualified to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States.

ADMIT _____          DENY __X____

**RESPONSE**:

After March 27, 2007, members of the MCSO were certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce immigration law, which allowed the 287(g) certified deputies the ability to computer check whether a particular person was lawfully present in the United States. At the time pertinent to this discovery, members of the MCSO were trained and certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce immigration law pursuant to a Memorandum of Agreement with the federal government.

41.   Admit that neither the United States Attorney General or Department of Homeland Security have issued a written certification that YOUR officers or employees have received adequate training regarding the enforcement of relevant federal immigration laws.

ADMIT _____          DENY __X____

**RESPONSE**:

After March 27, 2007, members of the MCSO were certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce immigration law, which allowed the 287(g) certified deputies the ability to computer check whether a particular person was lawfully present in the United States.

42.   Admit that in carrying out the Maricopa Conspiracy Policy YOU are not under the direction and supervision of either the United States Attorney General or Department of Homeland Security.

ADMIT _____          DENY __X____

**RESPONSE**:

After March 27, 2007, members of the MCSO were certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce

12

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

immigration law, which allowed the 287(g) certified deputies the ability to computer check whether a particular person was lawfully present in the United States.

At the time pertinent to this discovery, members of the MCSO were trained and certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce immigration law pursuant to a Memorandum of Agreement with the federal government.

43.    Admit that regulating international immigration is a matter committed to the exclusive prerogative of the federal government.

**ADMIT __X*___       DENY _____**

**RESPONSE**:

\* After March 27, 2007, members of the MCSO were certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce immigration law, which allowed the 287(g) certified deputies the ability to computer check whether a particular person was lawfully present in the United States.

At the time pertinent to this discovery, members of the MCSO were trained and certified by the Department of Homeland Security and ICE to serve as 287(g) certified officers and to enforce immigration law pursuant to a Memorandum of Agreement with the federal government.

44.    Admit YOU believe that federal officials charged with the enforcement of federal immigration law are unwilling or unable to control effectively the unauthorized entry of aliens into Arizona.

**ADMIT __X____       DENY _____**

45.    Admit that YOUR objective in adopting and implementing the MARICOPA CONSPIRACY POLICY is to deter unauthorized aliens from entering or remaining in Arizona.

**ADMIT _____       DENY _____**

**RESPONSE**:

Arpaio admits only that one of his objectives in enforcing all Arizona laws against persons, including those persons engaged in violation of A.R.S. § 13-2319, is to deter such persons from committing further unlawful or criminal activity.

SCHMITT, SCHNECK, SMITH &
HERROD, P.C.
Professional
Corporation

108

46.    Admit that YOUR objective in adopting and implementing the MARICOPA CONSPIRACY POLICY is to "combat[] the epidemic of illegal immigration."

ADMIT _____        DENY _____

**RESPONSE**:

Arpaio admits only that one of his objectives in enforcing all Arizona laws against persons, including those persons engaged in violation of A.R.S. § 13-2319, is to deter such persons from committing further unlawful or criminal activity including illegal immigration.

47.    Admit YOU have no evidence that the Maricopa Conspiracy Policy has in fact deterred unauthorized aliens from entering or remaining in the United States.

ADMIT __X____        DENY _____

48.    Admit YOU have no evidence that the MARICOPA CONSPIRACY POLICY has in fact deterred unauthorized aliens from entering or remaining in Arizona.

ADMIT __X____        DENY _____

49.    Admit YOU have no evidence showing that the MARICOPA CONSPIRACY POLICY has in fact deterred unauthorized aliens from entering or remaining in states other than Arizona.

ADMIT __X____        DENY _____

50.    Admit that the MARICOPA CONSPIRACY POLICY encourages unauthorized aliens to enter through and remain in states other than Arizona.

ADMIT _____        DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

51.    Admit you have no evidence that the MARICOPA CONSPIRACY POLICY has in fact deterred unauthorized aliens from entering or remaining in Maricopa County.

ADMIT __X____        DENY _____

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

14

52.   Admit you have no evidence that the MARICOPA CONSPIRACY POLICY has in fact deterred unauthorized aliens from entering or remaining in Arizona counties other than Maricopa.

ADMIT __X____         DENY _____

53.   Admit that the MARICOPA CONSPIRACY POLICY encourages unauthorized aliens to enter through and remain in Arizona counties other than Maricopa.

ADMIT _____         DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

54.   Admit YOU have no evidence showing that in enacting H.B. 2539 the Arizona legislature intended to impose criminal penalties on persons who agree to pay someone to transport themselves, and no one else.

ADMIT _____         DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

55.   Admit that Rep. Jonathan Paton was the principal sponsor of H.B. 2539.

ADMIT _____         DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

56.   Admit that Rep. Paton has stated publicly that he never intended that H.B. 2539 would result in persons being arrested and prosecuted for conspiring to transport themselves, and no one else.

ADMIT _____         DENY _____

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

**RESPONSE**:

 This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

 57. Admit YOU know of no other county in Arizona that detains, arrests, and prosecutes persons for conspiring to transport themselves, and no one else.

    **ADMIT __X___**   **DENY _____**

 58. Admit that Maricopa County Sheriff's deputies may not detain an individual except upon reasonable suspicion to believe that he or she may have committed an act declared punishable as a crime by an authorized legislative body.

    **ADMIT __X___**   **DENY _____**

 59. Admit that Maricopa County Sheriff's deputies may not arrest an individual except upon probable cause to believe that he or she has committed an act declared punishable as a crime by an authorized legislative body.

    **ADMIT __X___**   **DENY _____**

 60. Admit that YOU use funds derived from state tax receipts to detain, arrest, and/or prosecute persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

    **ADMIT __X___**   **DENY _____**

 61. Admit that YOU use funds derived from Maricopa County tax receipts to detain, arrest, and/or prosecute persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

    **ADMIT __X___**   **DENY _____**

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

16

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.      Please produce inspection and copying all DOCUMENTS relating to Raul Vixtha Bomaye, Javier Romero Encino, Rosa Flor Diaz Godinez, Adriana Rodriguez Espiritu, Juan Manuel Cortez Cuellar, and/or Hugo Enrique Sanchez Diego.

**RESPONSE:**

   *See* attached records


2.      Please produce inspection and copying all DOCUMENTS describing the rationale for, and/or the purposes, objectives, or aims of detaining, arresting, and/or prosecuting persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

**RESPONSE:**

   *See* attached records


3.      Please produce for inspection and copying all communications between the Maricopa County Attorney's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding aliens not lawfully present in the United States. This request excludes communications relating to aliens charged with or convicted of crimes other than conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

   This Answering Defendants lacks documents responsive to this Request.

4.      Please produce for inspection and copying all communications between the Maricopa County Attorney's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding the MARICOPA CONSPIRACY POLICY or any aspect thereof.

**RESPONSE:**

   This Answering Defendants lacks documents responsive to this Request.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

17

5.     Please produce for inspection and copying all communications between the Maricopa County Attorney's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding individuals detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

    This Answering Defendants lacks documents responsive to this Request.

6.     Please produce for inspection and copying all communications between the Maricopa County Sheriff's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding aliens not lawfully present in the United States. This request excludes communications relating to aliens charged with or convicted of crimes other than conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

    This Answering Defendant is producing all shift summaries from 2007 to present (there are no shift summaries for year 2006) given that ICE was copied, and received all such documents from the MCSO.

    All requests for ICE 213 reports (ICE report/booking) are the exclusive property of the federal government and therefore Plaintiffs will need to seek documents responsive to this request.

    No responsive documents exist as to MCSO enforcement of A.R.S. § 13-2319.

7.     Please produce for inspection and copying all communications between the Maricopa County Sheriff's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding the MARICOPA CONSPIRACY POLICY or any aspect thereof.

**RESPONSE:**

    This Answering Defendant is producing all shift summaries from 2007 to present (there are no shift summaries for year 2006) given that ICE was copied, and received all such documents from the MCSO.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

18

113

All requests for ICE 213 reports (ICE report/booking) are the exclusive property of the federal government and therefore Plaintiffs will need to seek documents responsive to this request.

No responsive documents exist as to MCSO enforcement of A.R.S. § 13-2319.

8. Please produce for inspection and copying all communications between the Maricopa County Sheriff's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding individuals detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Answering Defendant is producing all shift summaries from 2007 to present (there are no shift summaries for year 2006) given that ICE was copied, and received all such documents from the MCSO.

All requests for ICE 213 reports (ICE report/booking) are the exclusive property of the federal government and therefore Plaintiffs will need to seek documents responsive to this request.

No responsive documents exist as to MCSO enforcement of A.R.S. § 13-2319.

9. Please produce for inspection and copying all billing statements, invoices, financial reports, and budgets reflecting outlays for housing persons detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

114

10.     Please produce for inspection and copying all warrants, banking records, invoices, financial reports, and budgets reflecting reimbursement or payments YOU have received from the federal government for costs of housing persons detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

11.     Please produce for inspection and copying all communications between YOU and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding federal officials' housing persons detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, pending disposition of such conspiracy charges.

**RESPONSE:**

This Answering Defendant is producing all shift summaries from 2007 to present (there are no shift summaries for year 2006) given that ICE was copied, and received all such documents from the MCSO.

All requests for ICE 213 reports (ICE report/booking) are the exclusive property of the federal government and therefore Plaintiffs will need to seek documents responsive to this request.

No responsive documents exist as to MCSO enforcement of A.R.S. § 13-2319.

12.     Please produce for inspection and copying each DOCUMENT referring or relating to each individual detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S § 13-2319.

**RESPONSE:**

*See* attached.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

20

13.   Please produce for inspection and copying all DOCUMENTS reflecting or referencing each individual detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, who was thereafter deported or removed from the United States, and whose return to the United States for court proceedings or to testify as witness YOU have arranged or requested.

**RESPONSE:**

All requests for ICE 213 reports (ICE report/booking) are the exclusive property of the federal government and therefore Plaintiffs will need to seek documents responsive to this request.

No responsive documents exist as to MCSO enforcement of A.R.S. § 13-2319.

14.   Please produce for inspection and copying all training materials, field and operations manual sections, and other documents instructing, guiding or directing Maricopa County Sheriff's deputies on detaining, arresting, and/or booking aliens for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

See attached documents

15.   Please produce for inspection and copying all radio logs, text messages, email, and other communications between Maricopa County Sheriff's deputies and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding persons stopped, detained, and/or arrested on suspicion of conspiring to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Answering Defendant is producing all shift summaries from 2007 to present (there are no shift summaries for year 2006) given that ICE was copied, and received all such documents from the MCSO.

All requests for ICE 213 reports (ICE report/booking) are the exclusive property of the federal government and therefore Plaintiffs will need to seek documents responsive to this request.

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

21

116

No responsive documents exist as to MCSO enforcement of A.R.S. § 13-2319.

16.    Please produce for inspection and copying all operations manual sections and other documents prescribing, describing or reflecting the procedures Maricopa County Sheriff's deputies follow in booking, processing, housing, and/or releasing persons arrested on suspicion of conspiring to violate A.R.S. § 13-2319.

**RESPONSE:**

See attached documents.

17.    Please produce for inspection and copying all studies, reports, statistical compilations, and other documents evidencing the effect, if any, the MARICOPA CONSPIRACY POLICY has had on (i) the incidence of alien smuggling, (ii) on the size of the population of unauthorized aliens in the United States, and/or (iii) on the number of unauthorized aliens entering the United States.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

18.    Please produce for inspection and copying grand jury transcripts relating to each individual against whom the Maricopa County Attorney's office has sought an indictment for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, whether or not an indictment was returned.

**RESPONSE:**

This Answering Defendant lacks documents responsive to this Request.

19.    Please produce for inspection and copying all cost projections, financial reports, budgets, and other documents reflecting the costs of prosecuting persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

20.    Please produce for inspection each DOCUMENT constituting, referring or in any way relating to Defendants' policies regarding the retention and destruction of DOCUMENTS, including each DOCUMENT referring or in any way relating to Michael Clyde's letter of November 29, 2006 to Brock, F.; Stapley, D.; Kunasek, A.; Wilson, M.; Wilcox, R.; Arpaio, J.; and Thomas, A.

**RESPONSE:**

Will supplement.

21.    Please produce for inspection and copying each DOCUMENT not otherwise requested herein that any Defendant contends supports or relates to any claim or defense in this action.

**RESPONSE:**

This Answering Defendant objects to this Request on the grounds that it is overbroad, vague, and ambiguous as currently phrased. Without waiving this objection, this Answering Defendant will produce documents in supplemental response to this Request if and when such documents are located and determined to be responsive to the Request and/or will produce the same with his Rule 26 disclosure and supplementations to the same.

## INTERROGATORIES

1.    Please state the name, age, date of arrest, booking number, and Superior Court case number for each individual whom YOU have charged with conspiring to transport him- or herself, and no other individual, in violation of A.R.S. § 13-2319.

**RESPONSE:**

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

23

Other than the information contained within the attached documents produced with this discovery response, this Answering Defendants lacks information responsive to this Request.

2.     With respect to each individual identified in response to Interrogatory No. 1, please state indicate the status or disposition of the charge against him or her: *i.e.,* whether the charge is pending, was voluntarily or involuntarily dismissed, resolved by a plea of guilty or *no lo contendre*; or whether the individual was found guilty or not guilty following trial.

**RESPONSE:**

This Answering Defendant lacks information responsive to this Request.

3.     With respect to each individual identified in response to Interrogatory No. 1, please state indicate whether he or she has appealed from a conviction for conspiracy to violate A.R.S. § 13-2319.

**RESPONSE:**

This Answering Defendant lacks information responsive to this Request.

4.     Please identify each individual detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, who was thereafter deported or removed from the United States, and whose return to the United States for court proceedings or to testify as witness YOU have arranged or requested.

**RESPONSE:**

Other than the information contained within the attached documents produced with this discovery response, this Answering Defendants lacks information responsive to this Request.

5.     Unless stated in YOUR responses to plaintiffs' requests for admissions, with respect to each request for admission you do not unequivocally make, please state each fact and reason supporting YOUR refusal to make the requested admission.

**RESPONSE:**

Please see each specific Request for Admission set forth above for answer to this Interrogatory.

24

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

**DATED** this 16th day of December, 2011.

SCHMITT SCHNECK SMYTH CASEY &
EVEN, P.C.

Timothy J. Casey, Esq.
1221 East Osborn Rd., Suite 105
Phoenix, Arizona 85014
Counsel for the Defendant Joseph M. Arpaio

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2011, the foregoing document was sent via regular mail to the following persons:

H. Michael Clyde
PERKINS COIE BROWN & BAIN P.A.
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Co-Counsel for Plaintiffs

Peter A. Schey
Carlos Holguin
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Blvd.
Los Angeles, California 90057
Co-Counsel for Plaintiffs

Dan Ballecer
1095 East Indian School Road
Phoenix, Arizona 85014
Co-Counsel for Plaintiffs

Antonio Bustamante
1001 North Central Ave., Suite 660
Phoenix, Arizona 85014
Co-Counsel for Plaintiffs

Eileen Henry, Paralegal,
SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

## VERIFICATION

STATE OF ARIZONA                )
                                ) ss.
COUNTY OF MARICOPA              )


Honorable Joseph M. Arpaio, being duly sworn, deposes and states:

I am the duly elected Sheriff for Maricopa County, and I understand that in that capacity I have been named as a defendant in the matter styled: *We Are America, et al., v. Maricopa County Board of Supervisors, et al, No. CV06-2816-PHX-RCB.* I have reviewed the following documents: (a) the Answers to Plaintiffs' First Set of Interrogatories directed to me; and (b) the Plaintiffs' Supplemental Interrogatories directed to me. Based on that review, I hereby state that some of the matters stated therein are within my direct and personal knowledge but that other matters stated therein are not within my direct and personal knowledge but are within my general supervisory knowledge; as to those matters set fort in my general supervisory knowledge, the facts stated therein have been assembled by authorized employees of the Maricopa County Sheriff's Office ("MCSO"); and I am informed that the facts stated therein are rue and correct to the best of the personal knowledge and belief of the authorized employees of the MCSO.


Hon. Joseph M. Arpaio


SUBSCRIBED AND SWORN to before me this 15th day of December, 2011.


Notary Public


My commission expires:

OFFICIAL SEAL
THERESA B. COOMBS
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires Aug. 14, 2014

121

Exhibit 14

1   Timothy J. Casey (#013492)
    SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
2   1221 East Osborn Road, Suite 105
    Phoenix, AZ 85014-5540
3   Telephone: (602) 277-7000
    Facsimile:  (602) 277-8663
4   timcasey@azbarristers.com
    Counsel for Defendants Maricopa County Board of
5   Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek,
    Max Wilson, and Mary Rose Wilcox, Joseph Arpaio,
6   Maricopa County Sheriff and Defendant Maricopa County
    Attorney William Montgomery

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **IN AND FOR THE DISTRICT OF ARIZONA**

10  | We Are America, et al., | Cause No. CV06-2816-PHX-RCB |

11  Plaintiffs,

12  v.                                          **DEFENDANT MARICOPA COUNTY
                                                ATTORNEY WILLIAM
13  Maricopa County Board of Supervisors, et    MONTGOMERY'S RESPONSES TO
    al.,                                        PLAINTIFFS' FIRST REQUEST FOR
                                                ADMISSIONS, PRODUCTION OF
14                                              DOCUMENTS AND
    Defendants.                                 INTERROGATORIES
15
16                                              Requests for Admissions 1-61;
                                                Requests for Documents 1-21;
17                                              Interrogatories 1-5.

18
19          Defendant Maricopa County Attorney William Montgomery ("MCA Montgomery")
20  hereby responds to Plaintiffs' First Set of Requests for Admissions, Production of
21  Documents and Interrogatories as follows:

                            **PREFATORY OBJECTIONS**
22
            A.      MCA Montgomery objects to the definitions, instructions, and/or requirements
23  set forth by the Plaintiffs in their discovery requests to the extent they attempt to impose
24  duties upon this defendant beyond that which are required by Rules 33, 34, and 36, Federal
25  Rules of Civil Procedure.  MCA Montgomery states that these Responses are provided
26  pursuant to the Federal Rules of Civil Procedure.
27          B.      MCA Montgomery objects to the definitions of the terms "YOU" and
28  "YOUR" as set forth in Plaintiffs' Definitions and as used in this discovery.  The definitions

SCHMITT, SCHNECK, SMYTH
CASEY & EVEN, P.C.
Professional
Corporation

123

are over-broad and improperly seek from this Answering Defendant information from other agencies and persons of Maricopa County that are beyond the personal knowledge and information of this Answering Defendant. Accordingly, when MCA Montgomery responds to discovery requests with the terms "YOU" and "YOUR," Plaintiffs are hereby placed on express notice that MCA Montgomery is responding on behalf of himself, the Maricopa County Attorney's Office ("MCAO") under his elected leadership, and in good-faith reliance on information and understanding of the historical practice of the MCAO under its two immediate predecessor county attorneys, Richard M. Romley and Andrew P. Thomas.

C.    MCA Montgomery objects to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

D.    Each of these Prefatory Objections are incorporated into each Response and particularized objection stated in response to Plaintiffs' specific discovery request set forth below as if full stated therein.

## REQUESTS FOR ADMISSIONS

1.    Admit YOUR policy and practice is to detain, arrest, and prosecute persons for conspiring to transport themselves in violation of A.R.S. § 13-2319, notwithstanding that such persons have neither transported nor conspired to transport any other person.

ADMIT _____          DENY _____

**RESPONSE**:

Without waiving the objections stated below, MCA Montgomery admits only that the Maricopa County Attorney's Office ("MCAO") historically has prosecuted persons for conspiring to transport themselves in violation of A.R.S. § 13-2319 but denies that the MCAO has a policy and practice "to detain" or "arrest" persons. The MCAO does not make arrests or detentions.

MCA Montgomery objects to this Request because it is compound in nature in that it seeks admission or denial on three different subject matters (i.e., detention, arrest, and

2

prosecution), and because it assumes and/or ignores facts. Finally, the Request is argumentative and misleading as currently phrased.

2.     Admit YOU arrested Raul Vixtha Bomaye for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY__X____**

**RESPONSE**:

The MCAO does not make arrests or detentions.

3.     Admit YOU arrested Javier Romero Encino for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY__X____**

**RESPONSE**:

The MCAO does not make arrests or detentions.

4.     Admit YOU arrested Rosa Flor Diaz Godinez for conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY__X____**

**RESPONSE**:

The MCAO does not make arrests or detentions.

5.     Admit YOU arrested Adriana Rodriguez Espiritu for conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** _____          **DENY__X____**

**RESPONSE**:

The MCAO does not make arrests or detentions.

6.     Admit that the sole criminal charge YOU have brought against Raul Vixtha Bomaye is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT__X____**          **DENY** _____

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C. Professional Corporation

7.     Admit that the sole criminal charge YOU have brought against Javier Romero Encino is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

ADMIT __X____          DENY _____

8.     Admit that the sole criminal charge YOU have brought against Rosa Flor Diaz Godinez is conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

ADMIT __X____          DENY _____

9.     Admit that the sole criminal charge YOU have brought against Adriana Rodriguez Espiritu is conspiring to transport herself, and no one else, in violation of A.R.S. § 13-2319.

ADMIT __X____          DENY _____

10.    Admit YOU have no reason to believe that Raul Vixtha Bomaye transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

11.    Admit YOU have no reason to believe that Javier Romero Encino transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

12.    Admit YOU have no reason to believe that Rosa Flor Diaz Godinez transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

4

Request.

13.   Admit YOU have no reason to believe that Adriana Rodriguez Espiritu transported anyone else for gain in violation of A.R.S. § 13-2319.

**ADMIT** _____        **DENY** _____

**RESPONSE**:

> This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

14.   Admit YOU arrested Juan Manuel Cortez Cuellar in or about September 2006 for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** _____        **DENY** __X____

**RESPONSE**:

> The MCAO does not make arrests or detentions.

15.   Admit YOU arrested Hugo Enrique Sanchez Diego in or about September 2006 for conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** _____        **DENY** __X____

**RESPONSE**:

> The MCAO does not make arrests or detentions.

16.   Admit that the sole criminal charge YOU have brought against Juan Manuel Cortez Cuellar is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** __X____        **DENY** _____

17.   Admit that the sole criminal charge YOU have brought against Hugo Enrique Sanchez Diego is conspiring to transport himself, and no one else, in violation of A.R.S. § 13-2319.

**ADMIT** __X____        **DENY** _____

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C.
Professional
Corporation

127

18.   Admit YOU have no reason to believe that Juan Manuel Cortez Cuellar transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY ___X___

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

19.   Admit YOU have no reason to believe that Hugo Enrique Sanchez Diego transported anyone else for gain in violation of A.R.S. § 13-2319.

ADMIT _____          DENY __X____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

20.   Admit that aliens who enter the United States without authorization may nonetheless be entitled to obtain lawful status pursuant to federal law.

ADMIT _____          DENY _____

**RESPONSE**:

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request. This Request also exceeds the scope of the Answering Defendant's jurisdiction and legal authority.

21.   Admit you have no ability to determine whether an individual you arrest for conspiring to violate A.R.S. § 13-2319 is eligible to obtain lawful status pursuant to federal law.

ADMIT _____          DENY _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request. This Request also exceeds the scope of the Answering Defendant's jurisdiction and legal authority.

6

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

22.     Admit you have no authority to determine whether an individual you arrest for conspiring to violate A.R.S. § 13-2319 is eligible for lawful status pursuant to federal immigration law.

                    ADMIT _____              DENY _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request. This Request also exceeds the scope of the Answering Defendant's jurisdiction and legal authority.

23.     Admit that pursuant to the Maricopa Conspiracy Policy an alien lacking lawful federal immigration status at the time he or she agrees to be transported for gain is guilty of conspiring to violate A.R.S. § 13-2319 if he or she is not a lawful permanent resident alien or otherwise lawfully in Arizona at the time the offense is completed notwithstanding that he or she may subsequently obtain lawful federal immigration status.

                    ADMIT _____              DENY _____

**RESPONSE**:

Without waving the objections stated below, MCA Montgomery admits only that in recent history the MCAO has charged persons who are unlawfully present in the United States with conspiracy to violate A.R.S. § 13-2319 regardless of the persons' subsequent immigration status under federal law.

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy." This Request also is objectionable as to the use of the term "guilty." Jurors determine guilt or innocence, while the MCAO may charge a person with conspiracy to violate A.R.S. § 13-2319. The Request is also argumentative in that it assumes hypothetically that any person who was unlawfully present in the United States and that was charged with conspiracy to violate A.R.S. § 13-2319 had his or her immigration status under federal law changed after such charging. Finally, this request seems to call for speculation.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

24.     Admit that pursuant to the MARICOPA CONSPIRACY POLICY an alien who is not a lawful permanent resident alien or otherwise lawfully in Arizona and who agrees to be transported for gain is guilty of conspiring to violate A.R.S. § 13-2319 even if such agreement or transportation is not in furtherance of the alien's violation of federal law.

ADMIT _____          DENY _____

**RESPONSE**:

Without waving the objections stated below, MCA Montgomery admits only that in recent history the MCAO has charged persons who are unlawfully present in the United States with conspiracy to violate A.R.S. § 13-2319.

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy." This Request also is objectionable as to the use of the term "guilty." Jurors determine guilt or innocence, while the MCAO may charge a person with conspiracy to violate A.R.S. § 13-2319. The Request is also vague and ambiguous as to the unclear and undefined phrase "even if such agreement or transportation is not in furtherance of the alien's violation of federal law." Finally, this request seems to call for speculation.

25.     Admit that federal officials charged with the enforcement of federal immigration law have objected to YOUR detaining, arresting, and/or prosecuting persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

**RESPONSE**:

Without waiving the objection set for below, the MCAO does not make arrests or detentions. In addition, this Answering Defendant denies this Request as to him and his leadership of the MCAO. As to his predecessor, Andrew P. Thomas, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

This Request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN P.C
Professional
Corporation

130

26.     Admit that federal officials charged with the enforcement of federal immigration law have discouraged YOU from detaining, arresting, and/or prosecuting persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

ADMIT _____          DENY _____

RESPONSE:

Without waiving the objection set for below, the MCAO does not make arrests or detentions. In addition, this Answering Defendant denies this Request as to him and his leadership of the MCAO. As to his predecessor, Andrew P. Thomas, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

This Request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

27.     Admit that at the time YOU arrested Raul Vixtha Bomaye you had no reason to believe he had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

ADMIT _____          DENY _____

RESPONSE:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

28.     Admit that at the time YOU arrested Javier Romero Encino YOU had no reason to believe that he had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

ADMIT _____          DENY _____

RESPONSE:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

9

29.     Admit that at the time YOU arrested Rosa Flor Diaz Godinez YOU had no reason to believe that she had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

30.     Admit that at the time YOU arrested Adriana Rodriguez Espiritu you had no reason to believe that she had previously been convicted of a felony in the United States and had been deported from or left the United States after such conviction.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

31.     Admit that at the time YOU arrested Raul Vixtha Bomaye YOU had not received confirmation from the U.S. Department of Homeland Security, including U.S. Immigration and Customs Enforcement, that he was an alien illegally present in the United States.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

32.     Admit that at the time YOU arrested Javier Romero Encino YOU had not received confirmation from the U.S. Department of Homeland Security, including U.S. Immigration and Customs Enforcement, that he was an alien illegally present in the United States.

**ADMIT** _____          **DENY** _____

SCHMITT, SCHNECK, SMYTH,
CASLY & EVEN, P.C.
Professional
Corporation

10

132

**RESPONSE**:

The MCAO does not make arrests or detentions.  In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

33.    Admit that at the time YOU arrested Rosa Flor Diaz Godinez YOU had not received confirmation from the U.S. Department of Homeland Security, including U.S. Immigration and Customs Enforcement, that she was an alien illegally present in the United States.

**ADMIT** _____        **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions.  In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

34.    Admit that at the time YOU arrested Adriana Rodriguez Espiritu YOU had not received confirmation from the U.S. Department of Homeland Security, including U.S. Immigration and Customs Enforcement, that she was an alien illegally present in the United States.

**ADMIT** _____        **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions.  In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

35.    Admit that at the time YOU arrested Juan Manuel Cortez Cuellar YOU had no reason to believe that he had previously been convicted of a felony in the United States and been deported from or left the United States after such conviction.

**ADMIT** _____        **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions.  In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

36.    Admit that at the time YOU arrested Hugo Enrique Sanchez Diego YOU had no reason to believe that he had previously been convicted of a felony in the United States and been deported from or left the United States after such conviction.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

37.    Admit that at the time YOU arrested Juan Manuel Cortez Cuellar YOU had not received confirmation from the U.S. Department of Homeland Security, including U.S. Immigration and Customs Enforcement, that he was an alien illegally present in the United States.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

38.    Admit that at the time YOU arrested Hugo Enrique Sanchez Diego YOU had not received confirmation from the U.S. Department of Homeland Security, including U.S. Immigration and Customs Enforcement, that he was an alien illegally present in the United States.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

The MCAO does not make arrests or detentions. In addition, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to prosecutions.

39.    Admit YOU have no written agreement with the United States Attorney General or Department of Homeland Security pursuant to which YOU are authorized to investigate, apprehend, or detain aliens in the United States.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

12

134

1              **ADMIT   X_____         DENY _____**

2

3        40.   Admit that neither the United States Attorney General or Department of

4    Homeland Security have determined that YOU are qualified to perform a function of an

5    immigration officer in relation to the investigation, apprehension, or detention of aliens in

6    the United States.

7              **ADMIT   X_____         DENY _____**

8

9        41.   Admit that neither the United States Attorney General or Department of

10   Homeland Security have issued a written certification that YOUR officers or employees have

11   received adequate training regarding the enforcement of relevant federal immigration laws.

12             **ADMIT   X_____       DENY _____**

13       42.   Admit that in carrying out the Maricopa Conspiracy Policy YOU are not under

14   the direction and supervision of either the United States Attorney General or Department of

15   Homeland Security.

16             **ADMIT _____         DENY _____**

17   **RESPONSE**:

18         This Request is objectionable as to the use of the term "Maricopa Conspiracy
     Policy." The term is vague, ambiguous, and argumentative as used by

19   Plaintiffs. As such, it is subject to many different interpretations and
     definitions. Moreover, Answering Defendant has made reasonable inquiry and

20   the information he knows or can readily obtain indicates that there is no such
     policy. Accordingly, this Answering Defendant objects to each use of the

21   terms "Maricopa Conspiracy Policy." With waiving these objections, this
     Answering Defendant admits and declares that as an elected official in the

22   executive branch of a separate sovereign he is not under the direction and
     supervision of either the United States Attorney General or Department of

23   Homeland Security.

24

25       43.   Admit that regulating international immigration is a matter committed to the

26   exclusive prerogative of the federal government.

27             **ADMIT _____         DENY _____**

28

**RESPONSE**:

> This Request is objectionable as to the use of the term "exclusive prerogative" because it is vague, ambiguous, and argumentative as used by Plaintiffs. Moreover, the compound and complex nature of the issue is objectionable. This Answering Defendant is aware that litigation regarding this issue is pending in the United States Supreme Court.

44.     Admit YOU believe that federal officials charged with the enforcement of federal immigration law are unwilling or unable to control effectively the unauthorized entry of aliens into Arizona.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

> This Answering Defendant admits only that it subjectively appears at the current time that the federal government as been unable, for whatever reason, to completely or substantially prevent the unauthorized entry of illegal aliens into Arizona and Maricopa County in recent years. As to the federal government's "unwilling[ness] or "[inability]" to "control effectively" unauthorized entry of illegal aliens into Arizona, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this part of the Request.

> This Request is objectionable because it does not define the vague, ambiguous, and argumentative term "control effectively."

> This Request is also objectionable in that it is compound and seeks an answer to two separate questions (i.e., willingness and ability). In addition, this Request seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

45.     Admit that YOUR objective in adopting and implementing the MARICOPA CONSPIRACY POLICY is to deter unauthorized aliens from entering or remaining in Arizona.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

> This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant

14

objects to each use of the terms "Maricopa Conspiracy Policy."

This Answering Defendant denies this Request as to himself, and states that as to his predecessor Andrew P. Thomas that Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to the subjective intent or goal of former Maricopa County Attorney Andrew P. Thomas. The objective of the MCAO is to hold people accountable for criminal conduct, including criminal conduct that is the result of illegal immigration.

46.    Admit that YOUR objective in adopting and implementing the MARICOPA CONSPIRACY POLICY is to "combat[] the epidemic of illegal immigration."

            **ADMIT** _____            **DENY** _____

**RESPONSE**:

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Answering Defendant denies this Request as to himself, and states that as to his predecessor Andrew P. Thomas that Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request as to the subjective intent or goal of former Maricopa County Attorney Andrew P. Thomas. The objective of the MCAO is to hold people accountable for criminal conduct, including criminal conduct that is the result of illegal immigration.

If Plaintiff will provide a copy of the document in which the quoted remarks are contained, this Answering Defendant will agree to promptly consider the same, conduct reasonably inquiry, and determine whether a supplementation is necessary or appropriate to this Request.

47.    Admit YOU have no evidence that the Maricopa Conspiracy Policy has in fact deterred unauthorized aliens from entering or remaining in the United States.

            **ADMIT** _____            **DENY** _____

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C.
Professional
Corporation

**RESPONSE**:

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Request is also vague and ambiguous as to the undefined term "evidence... has in fact deterred unauthorized aliens from entering or remaining in the United States."

48.    Admit YOU have no evidence that the MARICOPA CONSPIRACY POLICY has in fact deterred unauthorized aliens from entering or remaining in Arizona.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Request is also vague and ambiguous as to the undefined term "evidence... has in fact deterred unauthorized aliens from entering or remaining in Arizona."

49.    Admit YOU have no evidence showing that the MARICOPA CONSPIRACY POLICY has in fact deterred unauthorized aliens from entering or remaining in states other than Arizona.

**ADMIT** _____          **DENY** _____

**RESPONSE**:

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Request is also vague and ambiguous as to the undefined term "evidence... has

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C. Professional Corporation

16

1  in fact deterred unauthorized aliens from entering or remaining in states other than
2  Arizona."

3      50.    Admit that the MARICOPA CONSPIRACY POLICY encourages unauthorized
4  aliens to enter through and remain in states other than Arizona.

5              **ADMIT** _____          **DENY** _____

6  **RESPONSE**:

7      This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy."
       The term is vague, ambiguous, and argumentative as used by Plaintiffs.  As such, it is
8      subject to many different interpretations and definitions.  Moreover, Answering
       Defendant has made reasonable inquiry and the information he knows or can readily
9      obtain indicates that there is no such policy.  Accordingly, this Answering Defendant
10     objects to each use of the terms "Maricopa Conspiracy Policy."

11     This Answering Defendant has made reasonable inquiry and the information he
       knows or can readily obtain is insufficient to enable him to admit or deny this
12     Request.

13

14     51.    Admit you have no evidence that the MARICOPA CONSPIRACY POLICY has in
15  fact deterred unauthorized aliens from entering or remaining in Maricopa County.

16             **ADMIT** _____          **DENY** _____

17  **RESPONSE**:

18     This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy."
       The term is vague, ambiguous, and argumentative as used by Plaintiffs.  As such, it is
19     subject to many different interpretations and definitions.  Moreover, Answering
       Defendant has made reasonable inquiry and the information he knows or can readily
20     obtain indicates that there is no such policy.  Accordingly, this Answering Defendant
21     objects to each use of the terms "Maricopa Conspiracy Policy

22     This Answering Defendant has made reasonable inquiry and the information he
       knows or can readily obtain is insufficient to enable him to admit or deny this
23     Request.

24

25     52.    Admit you have no evidence that the MARICOPA CONSPIRACY POLICY has in
26  fact deterred unauthorized aliens from entering or remaining in Arizona counties other than
    Maricopa.
27
               **ADMIT** _____          **DENY** _____
28

**RESPONSE**:

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Request is also vague and ambiguous as to the undefined term "evidence... has in fact deterred unauthorized aliens from entering or remaining in Arizona counties other than Maricopa."

53.    Admit that the MARICOPA CONSPIRACY POLICY encourages unauthorized aliens to enter through and remain in Arizona counties other than Maricopa.

ADMIT _____         DENY _____

**RESPONSE**:

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Request is also objectionable because it vague, ambiguous, speculative, and argumentative as phrased.

This Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

54.    Admit YOU have no evidence showing that in enacting H.B. 2539 the Arizona legislature intended to impose criminal penalties on persons who agree to pay someone to transport themselves, and no one else.

ADMIT __X____         DENY _____

This Request is objectionable because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the Request is argumentative and misleading in that it fails to address Arizona's criminal

conspiracy statute and whether the Arizona legislature intended to forbid the application of Arizona's criminal conspiracy statute to H.B. 2539.

55.     Admit that Rep. Jonathan Paton was the principal sponsor of H.B. 2539.

**ADMIT __X___**          **DENY _____**

56.     Admit that Rep. Paton has stated publicly that he never intended that H.B. 2539 would result in persons being arrested and prosecuted for conspiring to transport themselves, and no one else.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

Without waiving the objection set forth below, this Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain is insufficient to enable him to admit or deny this Request.

This Request is objectionable because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Moreover, the Request is argumentative and misleading in that it fails to address Arizona's criminal conspiracy statute and whether Rep. Paton addressed, let alone intended to forbid, the application of Arizona's criminal conspiracy statute to H.B. 2539. Finally, this Request is objectionable because H.B. 2539 does not reflect solely the intent of the principal sponsor given that it takes more than one vote for a bill to pass and, therefore, the collective intent of the legislature should be considered.

57.     Admit YOU know of no other county in Arizona that detains, arrests, and prosecutes persons for conspiring to transport themselves, and no one else.

**ADMIT _____**          **DENY _____**

**RESPONSE**:

Without waiving the objection set forth below, the MCAO does not make arrests or detentions. In addition, this Answering Defendant admits only that he is unaware of any other county attorney in the State of Arizona that is prosecuting persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

This Request is objectionable because it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

19

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

58.   Admit that Maricopa County Sheriff's deputies may not detain an individual except upon reasonable suspicion to believe that he or she may have committed an act declared punishable as a crime by an authorized legislative body.

ADMIT __X____         DENY _____

59.   Admit that Maricopa County Sheriff's deputies may not arrest an individual except upon probable cause to believe that he or she has committed an act declared punishable as a crime by an authorized legislative body.

ADMIT __X____         DENY _____

60.   Admit that YOU use funds derived from state tax receipts to detain, arrest, and/or prosecute persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

ADMIT _____         DENY _____

**RESPONSE**:

Without waiving the objection set forth below, this Answering Defendant admits only that the MCAO receives, through Maricopa County as a state subdivision, state tax receipts that are ultimately used to fund MCAO statutorily prescribed duties, including the prosecution of persons that are charged with violating state law.

This Request is overbroad as to the terms 'detain" and "arrest" because the MCAO does not make detentions or arrests.

61.   Admit that YOU use funds derived from Maricopa County tax receipts to detain, arrest, and/or prosecute persons for conspiring to transport themselves, and no one else, in violation of A.R.S. § 13-2319.

**RESPONSE**:

Without waiving the objection set forth below, this Answering Defendant admits only that the MCAO receives from Maricopa County tax receipts that are ultimately used to fund MCAO statutorily prescribed duties, including the prosecution of persons that are charged with violating state law.

This Request is overbroad as to the terms 'detain" and "arrest" because the MCAO does not make detentions or arrests.

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C. Professional Corporation

20

1

## REQUESTS FOR PRODUCTION OF DOCUMENTS

2     1.     Please produce for inspection and copying all DOCUMENTS relating to Raul

3 Vixtha Bomaye, Javier Romero Encino, Rosa Flor Diaz Godinez, Adriana Rodriguez

4 Espiritu, Juan Manuel Cortez Cuellar, and/or Hugo Enrique Sanchez Diego.

5 **RESPONSE:**

6     This Answering Defendant is currently conducting a reasonable and diligent search
      for documents potentially responsive to this Request.  If and when responsive
7     documents are found, if any, this Answering Defendant will supplement this Request.

8

9     2.     Please produce for nspection and copying all DOCUMENTS describing the

10 rationale for, and/or the purposes, objectives, or aims of detaining, arresting, and/or

11 prosecuting persons for conspiring to transport themselves, and no one else, in violation of

A.R.S. § 13-2319.

12 **RESPONSE:**

13    This Answering Defendant is currently conducting a reasonable and diligent search
      for documents potentially responsive to this Request.  If and when responsive
14    documents are found, if any, this Answering Defendant will supplement this Request.

15

16     3.     Please produce for inspection and copying all communications between the

17 Maricopa County Attorney's office and the United States Department of Homeland Security,

18 including United States Immigration and Customs Enforcement, regarding aliens not

19 lawfully present in the United States. This request excludes communications relating to

20 aliens charged with or convicted of crimes other than conspiracy to transport themselves and

21 no one else in violation of A.R.S. § 13-2319.

22 **RESPONSE:**

23    This Request seeks documents that are not relevant and not reasonably calculated to
      lead to the discovery of admissible evidence.  In addition, this Request is overly broad
24    and unduly burdensome in its scope and the manpower and time it would take to
      search for potentially responsive documents. With the foregoing objection stated, if
25    Plaintiffs will set forth in writing the factual and legal basis that they believe makes
      this Request pertinent to the issues in this litigation, this Answering Defendant will
26    agree to timely consider the same and determine whether to supplement this response.

27

28

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

21

143

4.    Please produce for inspection and copying all communications between the Maricopa County Attorney's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding the MARICOPA CONSPIRACY POLICY or any aspect thereof.

**RESPONSE:**

This Request is objectionable as to the use of the term "Maricopa Conspiracy Policy." The term is vague, ambiguous, and argumentative as used by Plaintiffs. As such, it is subject to many different interpretations and definitions. Moreover, Answering Defendant has made reasonable inquiry and the information he knows or can readily obtain indicates that there is no such policy. Accordingly, this Answering Defendant objects to each use of the terms "Maricopa Conspiracy Policy."

This Answering Defendant is currently conducting a reasonable and diligent search for documents potentially responsive to this Request. If and when responsive document are found, if any, this Answering Defendant will supplement this Request.

5.    Please produce for inspection and copying all communications between the Maricopa County Attorney's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding individuals detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Answering Defendant is currently conducting a reasonable and diligent search for documents potentially responsive to this Request. If and when responsive document are found, if any, this Answering Defendant will supplement this Request.

6.    Please produce for inspection and copying all communications between the Maricopa County Sheriff's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding aliens not lawfully present in the United States. This request excludes communications relating to aliens charged with or convicted of crimes other than conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

144

**RESPONSE:**

> This Request is not directed to this Answering Defendant or the MCAO and, therefore, no response is required.

7.   Please produce for inspection and copying all communications between the Maricopa County Sheriff's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding the MARICOPA CONSPIRACY POLICY or any aspect thereof.

**RESPONSE:**

> This Request is not directed to this Answering Defendant or the MCAO and, therefore, no response is required.

8.   Please produce for inspection and copying all communications between the Maricopa County Sheriff's office and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding individuals detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

> This Request is not directed to this Answering Defendant or the MCAO and, therefore, no response is required.

9.   Please produce for inspection and copying all billing statements, invoices, financial reports, and budgets reflecting outlays for housing persons detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

> This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The MCAO does not make arrests, detain, or house persons. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

23

145

10.     Please produce for inspection and copying all warrants, banking records, invoices, financial reports, and budgets reflecting reimbursement or payments YOU have received from the federal government for costs of housing persons detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

> This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. The MCAO does not make arrests, detain, or house persons. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

11.     Please produce for inspection and copying all communications between YOU and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding federal officials' housing persons detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, pending disposition of such conspiracy charges.

**RESPONSE:**

> This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

12.     Please produce for inspection and copying each DOCUMENT referring or relating to each individual detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S § 13-2319.

**RESPONSE:**

> This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

13.     Please produce for inspection and copying all DOCUMENTS reflecting or referencing each individual detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, who was thereafter deported or removed from the United States, and whose return to the United States for court proceedings or to testify as witness YOU have arranged or requested.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

14.     Please produce for inspection and copying all training materials, field and operations manual sections, and other documents instructing, guiding or directing Maricopa County Sheriff's deputies on detaining, arresting, and/or booking aliens for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Request is not directed to this Answering Defendant or the MCAO and therefore no response is required.

15.     Please produce for inspection and copying all radio logs, text messages, email, and other communications between Maricopa County Sheriff's deputies and the United States Department of Homeland Security, including United States Immigration and Customs Enforcement, regarding persons stopped, detained, and/or arrested on suspicion of conspiring to transport themselves and no one else in violation of A.R.S. § 13-2319.

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C. Professional Corporation

147

**RESPONSE:**

> This Request is not directed to this Answering Defendant or the MCAO and therefore no response is required.

16.     Please produce for inspection and copying all operations manual sections and other documents prescribing, describing or reflecting the procedures Maricopa County Sheriff's deputies follow in booking, processing, housing, and/or releasing persons arrested on suspicion of conspiring to violate A.R.S. § 13-2319.

**RESPONSE:**

> This Request is not directed to this Answering Defendant or the MCAO and therefore no response is required.

17.     Please produce for inspection and copying all studies, reports, statistical compilations, and other documents evidencing the effect, if any, the MARICOPA CONSPIRACY POLICY has had on (i) the incidence of alien smuggling, (ii) on the size of the population of unauthorized aliens in the United States, and/or (iii) on the number of unauthorized aliens entering the United States.

**RESPONSE:**

> This Answering Defendant is currently conducting a reasonable and diligent search for documents potentially responsive to this Request. If and when responsive document are found, if any, this Answering Defendant will supplement this Request.

18.     Please produce for inspection and copying grand jury transcripts relating to each individual against whom the Maricopa County Attorney's office has sought an indictment for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, whether or not an indictment was returned.

**RESPONSE:**

> This Answering Defendant states that grand jury transcripts are protected from disclosure by the law of the State of Arizona and not subject to discovery.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

26

19.    Please produce for inspection and copying all cost projections, financial reports, budgets, and other documents reflecting the costs of prosecuting persons for conspiring to transport themselves in violation of A.R.S. § 13-2319.

**RESPONSE:**

This Request seeks documents that are not relevant and not reasonably calculated to lead to the discovery of admissible evidence. In addition, this Request is overly broad and unduly burdensome in its scope and the manpower and time it would take to search for potentially responsive documents. With the foregoing objection stated, if Plaintiffs will set forth in writing the factual and legal basis that they believe makes this Request pertinent to the issues in this litigation, this Answering Defendant will agree to timely consider the same and determine whether to supplement this response.

20.    Please produce for inspection each DOCUMENT constituting, referring or in any way relating to Defendants' policies regarding the retention and destruction of DOCUMENTS, including each DOCUMENT referring or in any way relating to Michael Clyde's letter of November 29, 2006 to Brock, F.; Stapley, D.; Kunasek, A.; Wilson, M.; Wilcox, R.; Arpaio, J.; and Thomas, A.

**RESPONSE:**

This Answering Defendant refers Plaintiffs to the records retention policy produced by Defendant Maricopa County and the Board of Supervisors.

21.    Please produce for inspection and copying each DOCUMENT not otherwise requested herein that any Defendant contends supports or relates to any claim or defense in this action.

**RESPONSE:**

This Answering Defendant objects to this Request on the grounds that it is overbroad, vague, and ambiguous as currently phrased. Without waiving this objection, this Answering Defendant will produce documents in supplemental response to this Request if and when such documents are located and determined to be responsive to the Request and/or will produce the same with his Rule 26 disclosure and supplementations to the same.

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

27

**INTERROGATORIES**

1.     Please state the name, age, date of arrest, booking number, and Superior Court case number for each individual whom YOU have charged with conspiring to transport him- or herself, and no other individual, in violation of A.R.S. § 13-2319.

**RESPONSE:**

Without waiving the objection stated below, this Answering Defendant will supplement this Answer when it has information responsive to this Request.

This Interrogatory seeks information that is overbroad, irrelevant, and not reasonably calculated to lead to the discovery of information because it seeks information on persons other than the originally named plaintiffs.

2.     With respect to each individual identified in response to Interrogatory No. 1, please state indicate the status or disposition of the charge against him or her: *i.e.,* whether the charge is pending, was voluntarily or involuntarily dismissed, resolved by a plea of guilty or *no lo contendre*; or whether the individual was found guilty or not guilty following trial.

**RESPONSE:**

Without waiving the objection stated below, this Answering Defendant will supplement this Answer when it has information responsive to this Request.

This Interrogatory seeks information that is overbroad, irrelevant, and not reasonably calculated to lead to the discovery of information because it seeks information on persons other than the originally named plaintiffs.

3.     With respect to each individual identified in response to Interrogatory No. 1, please state indicate whether he or she has appealed from a conviction for conspiracy to violate A.R.S. § 13-2319.

**RESPONSE:**

Without waiving the objection stated below, this Answering Defendant states that the requested information is publicly available from the Arizona Court of Appeals and the Arizona Attorney General's Office that handles direct appeals. A defendant's opening brief is publicly filed with the Arizona Court of Appeals, not the Maricopa County Superior Court. Only a Notice of Appeal is filed with the Maricopa County Superior Court. Plaintiffs are, therefore, referred to the information contained within the publicly available documentation.

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C.
Professional
Corporation

28

This Interrogatory seeks information that is overbroad, irrelevant, and not reasonably calculated to lead to the discovery of information because it seeks information on persons other than the originally named plaintiffs.

4.    Please identify each individual detained, arrested, and/or prosecuted for conspiracy to transport themselves and no one else in violation of A.R.S. § 13-2319, who was thereafter deported or removed from the United States, and whose return to the United States for court proceedings or to testify as witness YOU have arranged or requested.

**RESPONSE:**

The MCAO does not arrest or detain persons and therefore lacks documents responsive to this request. As for prosecutions, this Answering Defendants is unable to locate information responsive to this Interrogatory.

5.    Unless stated in YOUR responses to plaintiffs' requests for admissions, with respect to each request for admission you do not unequivocally make, please state each fact and reason supporting YOUR refusal to make the requested admission.

**RESPONSE:**

Please see each specific Request for Admission set forth above for answer to this Interrogatory.

**DATED** this 9th day of January, 2012.

SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

Timothy J. Casey, Esq.
1221 East Osborn Rd., Suite 105
Phoenix, Arizona 85014
Counsel for the Defendant Maricopa County
Attorney William Montgomery

SCHMITT, SCHNECK, SMYTH,
CASEY & EVEN, P.C.
Professional
Corporation

29

1

## CERTIFICATE OF SERVICE

2

    I hereby certify that on January 9th, 2012, the foregoing document was sent via regular mail to the following persons:

3

4    Peter A. Schey
Carlos Holguin
5    CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Blvd.
Los Angeles, California 90057
6    Co-Counsel for Plaintiffs

7    Dan Ballecer
1095 East Indian School Road
8    Phoenix, Arizona 85014
Co-Counsel for Plaintiffs

9

Antonio Bustamante
10    1001 North Central Ave., Suite 660
Phoenix, Arizona 85014
11    Co-Counsel for Plaintiffs

12    *Eileen Henry*

13    Eileen Henry, Paralegal,
SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHMITT, SCHNECK, SMYTH, CASEY & EVEN, P.C.
Professional Corporation

30

## VERIFICATION

STATE OF ARIZONA          )
                          ) ss.
COUNTY OF MARICOPA        )

Honorable William Montgomery, being duly sworn, deposes and states:

I am the duly elected County Attorney for Maricopa County, and I understand that in that capacity I have been named as a defendant in the matter styled: *We Are America, et al., v. Maricopa County Board of Supervisors, et al, No. CV06-2816-PHX-RCB*. I have reviewed the following documents: (a) the Answers to Plaintiffs' First Set of Interrogatories directed to me; and (b) the Plaintiffs' Supplemental Interrogatories directed to me. Based on that review, I hereby state that some of the matters stated therein are within my direct and personal knowledge but that other matters stated therein are not within my direct and personal knowledge but are within my general supervisory knowledge; as to those matters set fort in my general supervisory knowledge, the facts stated therein have been assembled by authorized employees of the Maricopa County Attorney's Office ("MCAO"); and I am informed that the facts stated therein are true and correct to the best of the personal knowledge and belief of the authorized employees of the MCAO.

_____
Hon. William Montgomery

SUBSCRIBED AND SWORN to before me this _9th_ day of January, 2012.

_____
Notary Public

My commission expires:

OFFICIAL SEAL
JOSEPH PHILLIP DOMANICO JR.
NOTARY PUBLIC - State of Arizona
MARICOPA COUNTY
My Comm. Expires April 19, 2013

153

1

**CERTIFICATE OF SERVICE**

2          ☒          I hereby certify that on October 29, 2012, I electronically transmitted the

3    attached document to the following CM/ECF registrants:  Timothy James Casey,

4    timcasey@azbarristers.com.

5

6

7                                              s/ Carlos Holguin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Center for Human Rights &
Constitutional Law Foundation

-v-