1  Timothy J. Casey (013492)
   SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.
2  1221 East Osborn Road, Suite 105
   Phoenix, Arizona 85014-5540
3  Telephone:  602-277-7000
   Facsimile:   602-277-8663
4  timcasey@azbarristers.com
   Counsel for Defendants Maricopa County Board of
5  Supervisors, Fulton Brock, Don Stapley, Andrew Kunasek,
   Max Wilson, and Mary Rose Wilcox, and Joseph M. Arpaio,
6  Maricopa County Sheriff, and William G. Montgomery,
   Maricopa County Attorney
7

8              **IN THE UNITED STATES DISTRICT COURT**

9              **IN AND FOR THE DISTRICT OF ARIZONA**

10

11  We Are America, et al.,                        Cause No. CV06-2816-PHX-RCB

                        Plaintiffs,
12
                                                   **DEFENDANTS' RESPONSE IN**
    v.                                             **OPPOSITION TO PLAINTIFFS'**
13                                                 **MOTION FOR SUMMARY JUDGMENT**

    Maricopa County Board of Supervisors, et
14  al.,

15                      Defendants.                (Oral Argument Requested)

16

17

18       Defendants respectfully submit this Response in opposition to Plaintiffs' Motion for

19  Summary Judgment (Dkt#121).

20       Plaintiffs have failed to prove, as a matter of law, that Defendants' policy of charging

21  and prosecuting persons for the state crime of conspiracy under A.R.S. § 13-1003 to violate

22  Arizona's human smuggling statute, A.R.S.  § 13-2319, (referred to in this Response as "the

23  Policy" or "Defendants' Policy") is field or conflict preempted by federal immigration law.

24  The Policy is not preempted because it does not attempt to regulate immigration, does not

25
26  intrude into a field exclusively occupied by congressional action, and it does not conflict

27  with the federal Immigration and Nationality Act ("INA").  Plaintiffs, therefore, are not
28

entitled to judgment in their favor, and the Court should deny their Motion and grant the

Defendants' pending Motion for Summary Judgment (Dkt#119).

This Response is supported by the following Memorandum of Points and Authorities,

the Defendants' Rule 56(e)(2), F.R.C.P., and Rule 56.1(b). L.R.C.P., Response to Plaintiffs'

Statement of Facts and Controverting Statements of Facts concurrently filed this date,

Defendants' pending Summary Judgment Motion (Dkt#119) and supporting Statement of

Facts (Dkt#120), the Court's entire file in this matter, and any oral argument the Court may

wish to hear.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PLAINTIFFS' HEAVY RELIANCE ON THE *ARIZONA* DECISION IS MISTAKEN.

Plaintiffs argue that the Policy "is an unconstitutional effort to regulate international

migration, which impermissibly conflicts with the administration of federal immigration law

and policy and unlawfully regulates in an area fully occupied by federal law." (Motion at

p.1:20 to p. 2:1).  In support of this argument, Plaintiffs rely heavily on the recent Supreme

Court decision in *Arizona v. United States*, 132 S. Ct. 2492 (2012) which they assert, as to

S.B. 1070, § 3 "is wholly indistinguishable from the" Policy.  (Motion at p. 2:2-9).

Plaintiffs' reliance on *Arizona* is misplaced.

The *Arizona* decision as to its ruling on S.B. 1070, § 3 is distinguishable.  First, the

purposes behind the Policy and S.B. 1070, § 3 are quite different.  S.B. 1070, § 3 was an

attempt by Arizona to directly govern alien registration status.  S.B. 1070, § 3 had the

express legislative purpose of dealing with illegal immigration through the state co-

regulating with the federal government a specific aspect of federal immigration (i.e., alien

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

registration).  However, anything to do with alien registration has long been held an

exclusively federal task.  132 S. Ct. at 2501-02 quoting from *Hines v. Davidowitz*, 312 U.S.

52, 66-67 (1941) (discussing federal alienage requirements and ruling that states could not

"curtail or complement federal law or to enforce additional or auxiliary regulations.").

Moreover, S.B. 1070, § 3 was specifically intended to "[d]iscourage and deter the unlawful

entry and presence of aliens and economic activity by persons unlawfully present in the

United States.  The law's provisions establish state policy of attrition through enforcement."

132 S. Ct at 2497 (internal citations and quotations omitted).  The central problem with S.B.

1070, § 3, therefore, was that "[f]ederal governance of immigration and alien status is

extensive and complex."  132 S. Ct. at 2498.

In sharp contrast, the purpose of the Policy is solely about enforcing Arizona's

criminal code.  *See* Dkt#120 at ¶¶ 18-20 and 27-28; *see also* Defendants' Controverting

Statement of Facts at ¶ 11 (Controverting Plaintiffs' argument that the Policy has the express

aim of criminalizing foreign nationals).   The legislative intent behind the two statutes

comprising the Policy is no different:

> The language of the conspiracy and human smuggling statutes in effect at the time of
> Appellant's offense is clear and unambiguous, and those statutes, read together,
> plainly allow the person smuggled to be convicted of conspiracy to commit human
> smuggling.  The two statutes, read together, demonstrate the legislature's intent to
> prohibit (1) conspiring with others (2) to transport for profit or commercial purpose
> persons who are not United States citizens or otherwise unlawfully in Arizona.
> Arizona Revised Statutes § 13-1006(B) (2001) expressly provides that a person may
> commit conspiracy to commit an offense- in this case human smuggling – even if he
> cannot be convicted of the offense itself.

*State v. Barragan-Sierra*, 196 P.3d 879, 886 (Ariz. Ct. App. 2008).

The Policy has nothing to do with the regulation or co-regulation of immigration.  *See*

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

Dkt#120 at ¶¶ 18-20 and 27-28.   The regulation of immigration **"is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain**…." *De Canas v. Bica*, 424 U.S. 351, 355 (1976).  (emphasis added).   The Policy does not govern, or address, who should or should not be admitted to the country.  It does not govern or even set forth the conditions under which a legal entrant may remain.  The Policy neither "curtail[s] or complement[s] federal law [n]or [does it]… enforce additional or auxiliary regulations."  132 S. Ct. at 25002 quoting from *Hines,* 312 U.S. 66-67.  Plaintiffs have provided no admissible evidence establishing otherwise.

While Plaintiffs prefer to cite to a purported statement made in December 2007 by former Maricopa County Attorney Andrew Thomas regarding his anti-illegal immigration goals for the Policy, the undisputed sworn testimony in this case establishes that the Defendants' Policy is about crime and not immigration.  *See* Dkt#120 at ¶¶ 18-20 and 27-28.  Plaintiffs' reliance on Exhibit No. 6 (Dkt#121-2 at p. 224), therefore, is unavailing.  *See* Defendants' Controverting Statement of Facts at ¶ 6.  Plaintiffs chose not to depose Mr. Thomas to learn whether the apparent draft of a proposed "*News Release*" dated December 2, 2007 was ever actually issued, was factually correct, and/or accurately reflected his intent for the Policy during that time period.  Even if Mr. Thomas were to affirm the statements contained within the 2007 draft news release, Plaintiffs have provided no witness testimony establishing that Mr. Thomas's purported statement from 2007 is the purpose or intent behind the Policy under current County Attorney Mr. Montgomery.  On the other hand, the undisputed testimony shows the Policy is about enforcing Arizona's criminal code. *See*

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

1   Dkt#120 at ¶¶ 18-20 and 27-28.

2   Second, the *Arizona* decision does not suggest, let alone hold, that the INA precludes

3
4   the states from enforcing their criminal codes against people simply because those people are

5   illegal migrants.  The absence of such law is understandable.  A "state has a vital interest in

6   the enforcement of its criminal laws." *Pennzoil Co. v. Texaco, Inc*., 481 U.S. 1, 13 (1987).

7   "In areas of traditional state regulation, [courts] assume that a federal statute has not

8
9   supplanted state law unless Congress has made such an intention clear and manifest." *Bates*

10  *v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (internal quotes omitted).  To hold

11  otherwise would make it impossible for any state to ever arrest, charge, and prosecute an

12  illegal migrant for committing a state crime that touched directly or indirectly upon an aspect

13
14  of the INA because such action would, according to Plaintiff's argument, necessarily

15  somehow interfere with the comprehensive regulatory scheme of the INA by being an

16  "additional or auxiliary" regulation of immigration.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470,

17  565 (1996) ("[T]he historic police powers of the States were not to be superseded by the

18
19  Federal Act unless that was the clear and manifest purpose of Congress."); *see also Wyeth v.*

20  *Levine*, 555 U.S. 555, 565 (2009)(same); *Arizona*, 132 S. Ct. at 2501 (same).

21  Third, unlike S.B. 1070, § 3, there is nothing in the Policy that interferes or conflicts

22  with the "broad discretion exercised by immigration officials" as to the removal of aliens.

23
24  *Arizona*, 132 S. Ct. at 2499.  The Policy is not a regulation of immigration as defined by *De*

25  *Canas.*  The Policy does not determine who should be admitted to the United States.  The

26  Policy does not prescribe conditions under which a legal entrant may remain.  While the INA

27  contains provisions describing the circumstances under which migrants may be detained,

28

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

5

those relate to detentions for immigration violations, not state criminal charges.  Ultimately, under the Policy, the Defendants do not directly facilitate the removal of migrants who are in the country illegally, and they do not make immigration status decisions that bind the federal government.  *Cf.* Order dated December 9, 2009 (Dkt#47 in *Angel Lopez-Valenzuela, et al. v. Maricopa County, et al*., United States District Court for the District of Arizona, No. CV 08-660-PHX-SRB (dismissing Plaintiffs' federal preemption claim on the non-bondable status of illegal aliens as a matter of law), on appeal to the Ninth Circuit, No. 11-16487.

Based on these distinctions alone, Plaintiffs are not entitled to summary judgment in their favor.

## II.      THERE IS NO FIELD OR CONFLICT PREEMPTION UNDER *DE CANAS.*

Plaintiffs next argue that the INA already "contains detailed provisions addressing criminal alien smuggling" and therefore the Policy is field and conflict preempted because it "impermissibly supplements comprehensive federal regulation of conspiracies to transport unauthorized entrants" and "actually conflicts with federal law and policy." (Motion at p. 7:18-24 and p. 14:1-2).  This argument is not persuasive for several reasons.

First, Plaintiffs' argument about field and conflict preemption is internally and logically inconsistent.  If the INA already comprehensively addresses "criminal alien smuggling" as Plaintiffs contend, then it reasons under their argument that Arizona's Human Smuggling Statute, A.R.S. § 13-2319, by itself, necessarily must be field or conflict preempted.  That, however, is not what Plaintiffs argue in this litigation.  Nor is it what they ask the Court to enjoin.  (See Dkt#45).  Plaintiffs make it clear in their Motion that they do not challenge the constitutionality of A.R.S. § 13-2319 and do not claim that it is field or

conflict preempted.  (Motion at p. 14, fn. 12).   Plaintiffs have waived any right to challenge § 13-2319 in this litigation.

Plaintiffs appear to describe § 13-2319 as neither unconstitutional nor preempted by arguing that it is "directed against actual *smugglers* without regard to citizenship or immigration status." (Motion at p. 14, fn. 12) (emphasis in original).  But their distinction about the smuggler's citizenship or immigration status is illusory under their own preemption argument.  Section 13-2319F(3), for example, expressly concerns the smuggler's transportation of  human beings that are unlawfully present in the United States.  Federal statute 8 U.S.C. § 1324(a)(A) (ii)-(iv) likewise expressly concerns the transportation of human beings that are unlawfully present in the United States.  If the Policy is field or conflict preempted, then how can Plaintiffs not challenge in this lawsuit the constitutionality of § 13-2319?

Defendants respectfully submit that the reason Plaintiffs have not challenged, and do not challenge, the constitutionality or preemption of § 13-2319 is because the statute -- and the Policy -- are completely harmonious with the federal law, 8 U.S.C. § 1324(a)(1)(A)(ii)-(iv) and the states' application of their criminal laws to illegal migrants who violate state law is not an area or field fully historically occupied by federal law.  In other words, neither § 13-2319 nor the Policy constitute "additional or auxiliary regulations" that would be prohibited under *Arizona*.   Similarly, unlike a state law penalizing the clear federal task of "alien registration" (i.e., S.B. 1070, § 3,) a state law penalizing the crime of human smuggling and conspiracy to commit the same is not a regulation in an area fully occupied by federal law.

There is no "specific indication in either the wording or the legislative history of the

SCHMITT, SCHNECK, SMYTH & HERROD, P.C.
Professional
Corporation

7

INA… that Congress intended to preclude even harmonious state regulation touching on aliens in general." *De Canas*, 424 U.S. at 358. "Where coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal preemption becomes a less persuasive one." *New York Dept. of Social Services v. Dublino*, 413 U.S. 405, 421 (1973); *see also cf. Hines v. Davidowitz*, 312 U.S. 52 (1941) (states may pass laws which aid federal power); *Arizona*, 132 S. Ct. at 2510-11 (upholding SB 1070's Section 2(B) as not in conflict with federal law and thus not preempted); *cf. Gonzales v. City of Peoria*, 722 F.2d 468, 474-75 (9th Cir. 1983) (local law enforcement can enforce federal immigration criminal statutes); 8 U.S.C § 1324(c) (permitting local law enforcement officer to arrest for violations of federal criminal INA law).

Because the Plaintiffs do not challenge the constitutionality or preemption of § 13-2319, their argument rings hollow that the Policy is, in itself, field and conflict preempted. The application of § 13-1003 to § 13-2319 is not materially different than the federal immigration crime of a person "engage[ing] in any conspiracy" to violate 8 U.S.C § 1324(a)(1)(v)(I) ("…engages in any conspiracy to commit any of the preceding…"). The Policy and federal immigration conspiracy-smuggling law (i.e., 8 U.S.C § 1324(a)(1)(v)(I)) are, therefore, completely harmonious. *De Canas*, 424 U.S. at 358; *Dublino*, 413 U.S. at 421; *Arizona*, 132 S. Ct. at 2510-11. Moreover, states may prosecute an act which constitutes both a federal and state offense under the state's police power without impinging on federal jurisdiction. *Pennsylvania v. Nelson*, 350 U.S. 497, 500-01 (1956). Neither field

nor conflict preemption is inappropriate. [1]

Second, Plaintiffs' conflict preemption claim requires the Court "to determine whether, **under the circumstances of this particular case**, [the Policy] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67 (emphasis added).   There is no record of such an obstacle. Despite years for discovery, Plaintiffs have submitted no evidence establishing that "under the circumstances of this particular case," the Policy has frustrated or stood as an obstacle to Congress' full purposes and objective in enacting the INA.  The absence of such evidence is important.  State enforcement activities that do not conflict with, or impair, federal regulatory interests are permitted as a matter of law.  *Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta*, 458 U.S. 141, 153 (1982); *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142 (1963).

To prove that a conflict or impairment exists between federal and state law, Plaintiffs must have presented admissible evidence proving that compliance with both the federal immigration scheme and the Policy is impossible, or that the Policy is an obstacle to effectuating federal law.  "Such a conflict arises when compliance with both federal and state regulation is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purpose and objective of Congress." *De La Cuesta*, 458 U.S. at 153 (citations omitted).  Plaintiffs have failed to present such evidence, and it is

_____

[1]  Under *Georgia Latino Alliance for Human Rights, et al. v. Governor of Georgia, et al.*,, 2012 U.S. App. LEXIS 17514 (August 20, 2012) ("*GLAHR*") and *United States v. Governor of Alabama*, 2012 U.S. App. LEXIS 17516 (August 20, 2012) cited by Plaintiffs, it appears that the same three judge panel that issued those opinions would find § 13-2319 field preempted.  But, Plaintiffs here concede that § 13-2319 is neither unconstitutional nor preempted, or at least do not challenge § 13-2319 as the plaintiffs challenged the statutes in *GLAHR* or *Alabama*.  Additionally, unlike the Policy which solely deals with violations of criminal law, the challenged statutes in each of the foregoing cases were expressly intended to address the problem of illegal immigration within the respective states by criminalizing certain interactions with illegal migrants and allowing the states to co-regulate certain aspect of federal immigration law.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

9

inappropriate to assume that the Policy creates a conflict with federal law. *See cf. Fox v. Washington*, 236 U.S. 273, 277 (1915) ("So far as statutes fairly may be construed in such a way to avoid doubtful constitutional questions they should be so construed…."). There simply is no evidence during the Policy's history that there has been any conflict between federal immigration law and the Policy. More specifically, Plaintiffs offer no evidence that the Policy conflicts with, or has conflicted with, 8 U.S.C. § 1324(a)(1)(A)(ii)-(iv). There also is no evidence of an imminent possibility of conflict between federal immigration law and the Policy. Absent clear proof of conflicts between federal and state law, it is inappropriate to find preemption. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 310 (1988).

Third, the regulation of crime within a state is a state's traditional concern and can be preempted only upon a showing of "clear and manifest congressional intent" as required by *De Canas.* "The central concern of the INA is with the terms and conditions of admission to the country and the subsequent treatment of aliens **lawfully** in the country. The comprehensiveness of the INA scheme for regulation of immigration and naturalization, without more cannot be said to draw in the [regulation of criminal activities involving the smuggling of aliens] as 'plainly within… [that] central aim of federal regulation." *Id.* at 359 (emphasis added). In fact, "states possess broad authority under their police powers to regulate" criminal activities within their borders "to protect" citizens "within the state." *Id.* at 356; *see also Pennzoil*, 481 U.S. at 13 (state has a vital interest in the enforcement of its criminal laws). Plaintiffs have offered no evidence or authority showing that Congress had a "clear and manifest" intent to prohibit states from enforcing its own criminal laws against

illegal migrants, including when those migrants are involved in human smuggling or their

own smuggling.  Arguably, Plaintiffs decision not to challenge § 13-2319 is an implicit

recognition of the absence of such a clear and manifest congressional intent.  "Our

precedents establish that a ***high threshold must be met*** if a state law is to be pre-empted for

conflicting with the purposes of a federal act."  *Chamber of Commerce of United States of*

*America v. Whiting*, 131 S. Ct. 1968, 1992 (2011) (emphasis added).

Fourth, Plaintiffs' preemption argument as to the Policy is a facial challenge.  A facial

challenge is "the most difficult challenge to mount successfully" because "the challenger

must establish that *no set of circumstances exists under which the [Policy] would be valid.*

*United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Anderson v. Edwards*, 514 U.S.

143, 155, n. 6 (1995) (applying the *Salerno* standard in a preemption case).

Finally, when faced with a remarkably similar conflict preemption challenge as

presented here, the Arizona Court of Appeals held in *State v. Barragan-Sierra*, 196 P.3d 879,

890 (Ariz. Ct. App. 2008) that the application of § 13-1003 to § 13-2319 is not conflict

preempted.  The court held:

> Appellant has failed to persuade us that Arizona's human smuggling law is preempted
> because the law "stands as an obstacle" to the INA.  To the extent that § 13-2319
> affects immigration policy, if at all, we note that the States do have some authority to
> act with respect to illegal aliens, at least to where such action mirrors federal
> objectives and furthers a legitimate state goal.  We have no difficulty finding that
> Arizona's human smuggling law furthers, by a classic exercise of its police power, the
> legitimate state interest of attempting to curb the culture of lawlessness that has arisen
> around this activity.  Nor do we find that § 13-2319 conflicts with federal law, or
> stands as an obstacle to the accomplishment of Congress's purposes and objectives.
> Rather, to a large extent, Arizona's objectives mirror federal objectives.

*Id*.

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

11

III.    **CONCLUSION**

For the reasons set forth above and in Defendants' pending Summary Judgment

Motion (Dkt#119) and supporting Statement of Facts (Dkt#120), the Court should deny

Plaintiffs' Motion and grant the Defendants' Motion.

**RESPECTFULLY SUBMITTED** this 30th day of October, 2012.

SCHMITT SCHNECK SMYTH CASEY &
EVEN, P.C.

By: *s/Timothy J. Casey*
Timothy J. Casey, Esq.
1221 East Osborn Rd., Suite 105
Phoenix, Arizona 85014
Counsel for the Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2012, I electronically transmitted the attached
document to the Clerk's Office using the CM/ECF System for filing and transmittal of a
Notice of Electronic Filing to the following CM/ECF registrants:

The Honorable Robert C. Broomfield
United States District Court
401 West Washington Street, SPC 61
Suite 626
Phoenix, Arizona 85003-2158

H. Michael Clyde
PERKINS COIE BROWN & BAIN P.A.
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Co-Counsel for Plaintiffs

Peter A. Schey
Carlos Holguin
CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
256 South Occidental Blvd.
Los Angeles, California 90057
Co-Counsel for Plaintiffs

Dan Ballecer
1095 East Indian School Road
Phoenix, Arizona 85014

Antonio Bustamante
1001 North Central Ave., Suite 660
Phoenix, Arizona 85014
Co-Counsel for Plaintiffs

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

12

1

*s/Eileen Henry*

2

Eileen Henry, Paralegal,
SCHMITT SCHNECK SMYTH CASEY & EVEN, P.C.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHMITT, SCHNECK, SMYTH &
HERROD, P.C.
Professional
Corporation

13