CENTER FOR HUMAN RIGHTS AND CONSTITUTIONAL LAW
Carlos Holguin (Cal. Bar No. 90754)
Peter A. Schey (Cal. Bar No. 58232)
256 S. Occidental Blvd.
Los Angeles, CA  90057
Telephone:  213.388.8693
Facsimile:  213.386.9484
Email: crholguin@centerforhumanrights.org
pschey@centerforhumanrights.org

H. Michael Clyde (Az. Bar No. 009647)
PERKINS COIE BROWN & BAIN P.A.
2901 N. Central Avenue, Suite 2000
Phoenix, AZ  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
Email: MClyde@perkinscoie.com

Attorneys for Plaintiffs

*Additional counsel listed on continuation page*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| WE ARE AMERICA/SOMOS AMERICA COALITION OF ARIZONA; *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MARICOPA COUNTY BOARD OF SUPERVISORS, *et al.*,<br><br>Defendants. | No. CV06-2816-PHX-RCB<br><br>PLAINTIFFS' REPLY TO OPPOSITION TO SUMMARY JUDGMENT.<br><br>Hon. Robert C. Broomfield<br><br>Oral Argument Requested |

/ / /

*Plaintiffs counsel continued:*

    RAY VELARDE (TX BAR # 20539950)
    LULAC NATIONAL LEGAL ADVISER
    1216 Montana
    El Paso, TX 79902
    Telephone: (915) 373-6003
    Email: rayvelarde2003@yahoo.com


    DAN BALLECER (AZ BAR #15616)
    1095 E. Indian School Road
    Phoenix, AZ 85014
    Telephone: (602) 277-0044
    Facsimile: (602) 277-1097
    Email: dballecer@cox.net


    ANTONIO BUSTAMANTE (AZ BAR #7256)
    1001 N. Central Avenue Suite 660
    Phoenix, AZ 85014
    Telephone: (602) 277-0044
    Facsimile: (602) 277-1097
    Email: antonio_b@qwest.net


    *Attorneys for Plaintiffs*

Center for Human Rights &
Constitutional Law Foundation

REPLY TO OPPOSITION TO SUMMARY JUDGMENT

I    INTRODUCTION

Plaintiffs seek summary judgment granting class-wide declaratory and injunctive relief against defendants' admitted policy and practice of criminalizing non-smuggler migrants for conspiracy to transport themselves in purported violation of Ariz. Rev. Stat. § 13-2319 ("MMCP"). Plaintiffs, with strong support in recent Ninth Circuit and Supreme Court decisions involving analogous provisions of S.B. 1070, contend the MMCP is as an unconstitutional effort to regulate international migration, which impermissibly conflicts with the federal law and policy and unlawfully regulates in an area the Immigration and Nationality Act, 8 U.S.C. §§ 1101, *et seq*. (INA), fully occupies.

In their opening brief (Dkt. 121) and opposition to defendants' cross-motion for summary judgment (Dkt. 126), plaintiffs showed that *Arizona v. United States*, __ U.S. __; 132 S. Ct. 2492; 183 L. Ed. 2d 351 (2012), and its progeny, *Ga. Latino Alliance for Human Rights v. Governor*, 691 F.3d 1250 (11th Cir. 2012) (*GLAHR*); *United States v. Alabama*, 691 F.3d 1269 (11th Cir. 2012), doom defendants' challenged policy. Defendants' efforts to distinguish these recent decisions require one to read these authoritative precedents in the most contorted and illogical manner possible, as if the plain language the courts used to express themselves shouldn't be believed. Summary judgment should issue for plaintiffs.

I    DEFENDANTS' INTENT CANNOT SAVE THE MMCP FROM BEING FIELD- AND CONFLICT-PREEMPTED.

Defendants first attempt to distinguish *Arizona* on the ground that in enacting S.B. 1070 the Arizona legislature "specifically intended to '[d]iscourage and deter the unlawful

entry and presence of aliens …, '" whereas here defendants are solely concerned with "enforcing Arizona's criminal code." Opposition at 5. Defendants would thus have the Court hold the MMCP is saved merely because they profess total indifference to unauthorized immigration.

As the First Amended Complaint notes, this is hardly the position defendants took when they initiated the MMCP. Defendants initiated the MMCP in order to regulate international migration and because, as former County Attorney Andrew Thomas stated, defendants are "frustrated … [with the] problem of illegal immigration that the government [of Mexico] is directly fomenting," and because, as defendant ARPAIO stated, "[t]here are [too] many illegals trying to make it into [Maricopa] county …" Gary Grado, *Thomas Rips Mexico in Illegals' Arrest Case*, East Valley Tribune (Mesa, Ariz), March 25, 2006; Maricopa County Sheriff's Office Press Release, *Sheriff Calls out Posse to Stem Illegal Immigration into Maricopa County*, May 2, 2006. Defendants' current amnesia not withstanding, the MMCP is an attempt by defendants to control undocumented migration, a purely federal function.

Although defendants' prior statements—and common knowledge amongst anyone who follows current events—show that defendants are anything but indifferent to unauthorized immigration, defendants' subjective intent is nevertheless irrelevant to whether the MMCP is field- or conflict-preempted. As this Court earlier observed, "Regardless of Defendants' subjective views, their opinions alone do not transform their policies and official conduct into an impermissible regulatory scheme …." Order, September 21, 2007

Center for Human Rights & Constitutional Law Foundation

(Dkt. 43) at 10-11.[1] *Equally so*, nor can defendants' opinions salvage a regulatory scheme that conflicts with and intrudes into an area fully occupied by federal law.

In *Arizona*, the Supreme Court did *not* strike down S.B. 1070 § 3 because the legislature had the wrong subjective intent. It held the statute field- and conflict-preempted because —

> *States may not enter, in any respect, an area the Federal Government has reserved for itself*.... Permitting the State to impose its own penalties for the federal offenses here would conflict with the careful framework Congress adopted. Were § 3 to come into force, the State would have the power to bring criminal charges against individuals for violating a federal law *even in circumstances where federal officials in charge of the comprehensive scheme determine that prosecution would frustrate federal policies*.

132 S. Ct. 2502-03 (citations omitted; emphasis added).

In *GLAHR*, the court did *not* disapprove a state statute making it a crime to transport an unauthorized entrant for gain because state lawmakers had the wrong intent. The court held the statute field-preempted because "[l]ike the federal registration scheme addressed in *Arizona*, Congress has provided a 'full set of standards' to govern the unlawful transport and movement of aliens [and] comprehensively addresses criminal penalties for these actions…." 691 F.3d at 1264. It held the statute conflict-preempted because it presented —

> an obstacle to the execution of the federal statutory scheme and challenges federal supremacy in the realm of immigration. By confining the prosecution of federal immigration crimes to federal court, Congress limited the power to pursue those cases to the appropriate United States Attorney. … As officers of the Executive Branch, U.S. Attorneys for the most part exercise their discretion in a manner consistent with the established enforcement priorities of the Administration they serve. The terms of section 7, however, are not conditioned on respect for the federal concerns or the

---

[1] Defendants' own preoccupation with their subjective intent is itself remarkably newfound. In their opening brief supporting their own motion summary judgment (Dkt. 119) filed only a little over a month ago, defendants insisted that "[e]ven if … Thomas and Arpaio had the subjective intent at one time to use the Policy to thwart illegal immigration, … such subjective intent is irrelevant…" *Id*. at 5 n4.

Center for Human Rights & Constitutional Law Foundation

priorities that Congress has explicitly granted executive agencies the authority to establish.

*Id*. at 1265-66.

The court emphasized that "*[e]ach time a state enacts its own parallel to the INA, the federal government loses 'control over enforcement' of the INA*, thereby 'further detract[ing] from the integrated scheme of regulation created by Congress.'" *Id*. at 1266 (emphasis added).

In *United States v. Alabama, supra*, the court did not enjoin an Alabama statute that "criminalize[d] transporting, attempting to transport, or conspiring to transport an alien 'in furtherance of the unlawful presence of the alien in the United States' [and]… engag[ing] in 'conspiracy to be so transported,'" 691 F.3d at 1277, because the state legislature wanted to regulate immigration. It disapproved that statute as field-preempted because "Alabama is prohibited from enacting concurrent state legislation in this field of federal concern." *Id*. at 1287. It held the statute conflict-preempted because *it penalized conspiracy to transport oneself*, which specifically conflicts with federal law:

> First, the criminalization of an alien's "conspiracy to be transported," Ala. Code § 31-13-13(a)(3), by its text, appears to prohibit an unlawfully present alien from even agreeing to be a passenger in a vehicle. *This provision cannot coexist with § 1324(a), as unlawfully present aliens who are transported "are not criminally responsible for smuggling under 8 U.S.C. § 1324."* … Because [this] provision[] mandates enforcement of "additional or auxiliary regulations" that the INA does not contemplate, [it is] conflict preempted.

*Id*. at 1288 (emphasis supplied).

In *Valle del Sol, et al. v. Whiting, et al.*, No. CV 10-1061-PHX-SRB (D. Ariz., September 5, 2012) (order granting in part and denying in part motion for preliminary injunction), Plaintiffs' Supplemental Exhibits Re: Cross-Motions for Summary Judgment,

October 29, 2012, Exhibit 8 (Dkt. 126-3), the court did not disapprove Arizona's statute making it a crime to transport an alien in furtherance of the alien's unlawful presence because the legislature had the wrong thoughts. The court enjoined enforcement of the statute because it imposed criminal penalties on conduct already regulated by the INA:

> The Court follows the reasoning of the Eleventh Circuit Court of Appeals with respect to analogous provisions of Georgia and Alabama law and concludes that A.R.S. § 13-2929 is field and conflict preempted. Federal immigration law creates a comprehensive system to regulate the transportation, concealment, movement, or harboring of unlawfully present people in the United States. … Therefore, the Court finds that A.R.S. § 13-2929 is field preempted.
>
> A.R.S. § 13-2929 also "presents an obstacle to the execution of the federal statutory scheme and challenges federal supremacy in the realm of immigration." By vesting enforcement discretion with state officials rather than federal officials, A.R.S. § 13-2929 conflicts with federal law and is preempted.

*Id*. at 8-9 (citations omitted).

Defendants next argue that nothing in *Arizona* precludes a state from enforcing its criminal laws against illegal immigrants. Opposition at 5. Defendants' argument is a palpable straw man and is neither here nor there.

What *Arizona* and its progeny hold is that *a local government may not impose criminal penalties on conduct that is already regulated by 8 U.S.C. § 1324*, particularly where local officials seeks to impose liability or penalties greater than those federal law prescribes. As *Alabama* holds, penalizing persons for conspiring to transport themselves "cannot coexist with [8 U.S.C.] § 1324(a), as unlawfully present aliens who are transported "'are not criminally responsible for smuggling under 8 U.S.C. § 1324.'" 691 F.3d at 1288.

Defendants lastly seek to distinguish *Arizona* on the grounds that "unlike S.B. 1070, § 3, there is nothing in the Policy that interferes or conflicts with the 'broad discretion

exercised by immigration officials' as to the removal of aliens.'" Opposition at 5. Defendants' *ipse dixit* is no substitute for coherent analysis.

On the one hand, defendants' absolute disregard for federal immigration law and policy is the cornerstone of their defense in the case at bar. *E.g.*, Motion for Summary Judgment (Dkt. 119) at 6 ("the undisputed sworn testimony in this case establishes that the Defendants' Policy is *solely about enforcing Arizona's criminal code …*" (emphasis in original)). Having insisted that federal law, policy and discretion are irrelevant, defendants are hardly in a position to deny that their actions conflict with federal law, policy, or discretion.

More importantly, the MMCP *does* in fact conflict with federal law. By penalizing conspiracy to transport oneself, defendants go far beyond 8 U.S.C. § 1324; in so doing they not only intrude into an area fully occupied by federal law, but, as all the foregoing authorities make clear, operate in conflict with federal law.

III   PLAINTIFFS' RESTRAINT IN DECLINING TO CHALLENGE THE WHOLE OF ARIZ. REV. STAT. § 13-2319 CANNOT SAVE THE MMCP FROM BEING FIELD- OR CONFLICT-PREEMPTED.

Defendants' next attempt to circumvent *Arizona*, *GLAHR*, *Alabama*, and *Valle del Sol*, is perhaps their most curious. They argue that if the MMCP is field- or conflict-preempted, then so must be § 13-2319. Opposition at 6. Unless the Court is prepared to strike down § 13-2319 itself, defendants seem to suggest, it must let the MMCP go unchecked. Opposition at 7. The rather obvious answers to defendants' argument are three.

First, plaintiffs are not alien smugglers, and they have no wish to defend smugglers.

*See* Deposition of Sharon Zapata, August 30, 2012, Plaintiffs' Exhibit 10, Dkt. 126-2 at 61-62 (smugglers "make money off of taking advantage of persons who are in desperate need.").

Second, far and away the most egregious interference with federal law and policy here is not § 13-2319 itself—which appears relatively little-used against actual smugglers—but the MMCP, under which defendants, utterly alone among all Arizona law enforcement officials, admit to having arrested more than 1,800 non-smuggler migrants merely for allegedly arranging transport for themselves, something that is simply not a crime under federal law. Plaintiffs' Statement of Facts in Support of Motion for Summary Judgment (Dkt. 121-1) (SOF) at ¶ 3.

Third, plaintiffs are aware of no authority—and defendants cite none—for the immoderate claim that a litigant must challenge a state statute *in toto* even if he or she has been injured only by maverick county officials' eccentric and distorted application of that statute. Whether § 13-2319 is facially constitutional is not before this Court. The question here is whether defendants' applying that statute against non-smuggler migrants conflicts with or intrudes into an area fully occupied by federal law. Plaintiffs are clearly entitled to challenge defendants' policy as conflict- and field-preempted regardless of § 13-2319's facial constitutionality.

Defendants next appear to suggest that regardless of whether the MMCP is field-preempted, conflict-preemption exists if and only if there is evidence of particular instances in which actual conflicts with federal law and policy have occurred. Opposition at 9. Apart from the fact that such evidence *is* abundant,[2] defendants offer no authority—and plaintiffs

---

[2] *See* discussion *post* at p.9.

-7-

Center for Human Rights &
Constitutional Law Foundation

know of none—for the notion that conflict-preemption cannot appear on the face of defendants' challenged policy itself.

To the contrary, in *Arizona*, the district court enjoined S.B. 1070 "even before the law has gone into effect." 132 S. Ct. at 2510. Since the law had yet to be applied, the court could hardly have had evidence of the law's having created specific conflicts in actual application.

Similarly in *GLAHR,* the plaintiffs "filed a preenforcement constitutional challenge" to the parallel state criminal statute, 691 F.3d at 1256-57, which the district court enjoined, again without any way of having evidence of specific conflict in actual application.

Again in *Alabama*, "[b]efore the challenged provisions became effective, the United States filed suit seeking to enjoin them on the ground that they are an impermissible attempt to regulate immigration and are, therefore, preempted by federal law. Around the same time, a group of private plaintiffs filed a separate preenforcement challenge…" to the parallel state criminal statute. 691 F.3d at 1279. Again, the court struck down the state statute without any evidence of actual conflict in particular instances of application possibly being available.

In all events, evidence of actual conflicts between federal law and the MMCP *is* abundant in the case at bar.

First, defendants profess to care nothing about federal immigration law, priorities, policy or discretion; they accordingly make *no* effort to *avoid* conflicts with federal authorities:

> Q. … Does [the Maricopa County Attorney's] office take into account federal officials' exercise of discretion in favor of letting an unauthorized entrant remain here when determining whether to bring charges against that individual for conspiracy to violate 13-2319?
> A. My office's duty is to execute the laws of the State of Arizona. If there's a reasonable likelihood of conviction on the element of the offense, then charges will be

> brought.
> Q. Even if federal officials indicate that that is not what they would prefer to happen?
> A. My office has a duty to the citizens of the State of Arizona. We are a separate jurisdiction from the federal government.
> Q.  So the federal government's preferences are irrelevant to the discharge of your office's obligations to bring criminal charges against individuals who have conspired to violate 13-2319; is that fair to say?…
> THE WITNESS:  I think I've already answered that question.

Deposition of Vicki Kratovil, August 23, 2012, Plaintiffs' Exhibit 4, Dkt. 121-2 at 166-67.

More importantly, defendants admit to having convicted 1,357 non-smuggler migrants for conspiracy to violate § 13-2319. SOF ¶ 4. Since a non-smuggler's arranging to transport him- or herself is not a federal crime, the uncontroverted evidence shows defendants to have acted in actual conflict with federal law *at least* 1,357 times. In sum, defendants' demand for evidence of actual conflicts is both legally unjustified and easily satisfied by the uncontroverted record.

Defendants' finally argue that Congress has not comprehensively addressed criminal transport of unauthorized entrants.

Plaintiffs have previously shown that several courts, including the United States Supreme Court, have held that the criminal provisions of the INA *are* comprehensive and manifest an intent to exclude parallel state regulation. *See Arizona,* 132 S. Ct. 2502 ("The federal statutory directives provide a full set of standards governing alien registration, *including the punishment for noncompliance.* … Where Congress occupies an entire field, as it has in the field of alien registration, even complementary state regulation is impermissible." (emphasis added)); *GLAHR*, 691 F.3d at 1264 (federal law "provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens"); *Alabama*, 691 F.3d at 1286-87 (same, including penalties for

Center for Human Rights & Constitutional Law Foundation

conspiracy to transport oneself).

There is little cause to repeat those arguments here. All recent authorities show that the MMCP is both field- and conflict-preempted.

IV    CONCLUSION

Defendants' opposition to summary judgment boils down to one idea: federal immigration law, policy, and discretion are irrelevant, and the MMCP should therefore be upheld despite an unbroken line of decisions enjoining states against mimicking the INA's criminal provisions. Such parallel local regulation is both field- and conflict-preempted as a matter of law.

Defendants' policy and practice are clearly preempted; the MMCP should be declared unconstitutional and enjoined forthwith.

November 19, 2012.
    CENTER FOR HUMAN RIGHTS AND
    CONSTITUTIONAL LAW

    Carlos R. Holguín
    Peter A. Schey

    By s/ Carlos Holguín
        Carlos Holguín

    s/ Peter Schey
    Peter Schey

    256 S. Occidental Blvd.
    Los Angeles, CA  90057

    Attorneys for Plaintiffs

1

**CERTIFICATE OF SERVICE**

2

3    ☒    I hereby certify that on November 19, 2012, I electronically transmitted the

4   attached document to the following CM/ECF registrants:  Timothy James Casey,

5   timcasey@azbarristers.com.

6

7

s/ Carlos Holguin

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28